SUSAN L. GERMAISE (SBN 176595)
sgermaise@mcguirewoods.com
McGUIREWOODS LLP
1800 Century Park East, 8th Floor
Los Angeles, California 90067
Telephone:     (310) 315-8200

TODD MULLINS (*Admitted Pro Hac Vice*)
tmullins@mcguirewoods.com
McGUIREWOODS LLP
2001 K Street, N.W.
Washington, D.C. 20006-1040
Telephone:     (202) 857-1752

ALLISON D. CHARNEY (*Admitted Pro Hac Vice*)
acharney@mcguirewoods.com
McGUIREWOODS LLP
1345 Avenue of the Americas, 7th Floor
New York, New York 10105
Telephone:     (212) 548-2166

Attorneys for Defendant DANIEL BRIN

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL ENERGY REGULATORY COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> BARCLAYS BANK PLC; DANIEL BRIN; SCOTT CONNELLY; KAREN LEVINE; and RYAN SMITH <br><br> Defendants. | CASE NO. 2:13-cv-02093-TLN-DAD <br><br> DANIEL BRIN'S ANSWER TO COMPLAINT <br><br> Courtroom:     2 <br> Presiding:      Hon. Troy L. Nunley <br><br> **JURY TRIAL DEMANDED** |

Daniel Brin, by and through his undersigned counsel, states as follows his Answer and Affirmative Defenses (the "Answer") to the Petition For An Order Affirming the Federal Energy Regulatory Commission's July 16, 2013 Order Assessing Civil Penalties Against Barclays Bank PLC, Daniel Brin, Scott Connelly, Karen Levine, and Ryan Smith (the "Complaint") filed by the Plaintiff, Federal Energy Regulatory Commission ("FERC" or "Plaintiff" or the "Commission").

By way of a general response, all allegations are denied unless specifically admitted, and any factual averment is admitted only as to the specific facts and not as to any conclusions, characterizations, implications or speculations that are contained in the averment or in the Complaint as a whole.  This response is incorporated, to the extent appropriate, into each numbered paragraph of this Answer.

To the extent the paragraphs of the Complaint are grouped under headings, Brin responds generally that such headings do not contain factual assertions, and therefore no response is required.  To the extent a response is deemed necessary, Brin denies any allegations contained in each heading in the Complaint.

Brin denies all of the Complaint's allegations unless expressly admitted herein and denies that FERC is entitled to any relief.

Answering the numbered paragraphs of the Complaint, Brin states as follows:

1.    Brin denies the allegations in Paragraph 1.

2.    Brin denies the allegations in Paragraph 2.

3.    Brin admits that this matter involves proceedings pursuant to FPA Section 31(d)(3)(B), 16 U.S.C. § 823b(d)(3)(B) under which Defendants have a statutory right to require FERC to file an action in a "district court of the United States" for *de novo* determinations of both the facts and the legal basis for FERC's case, but denies any characterization by FERC regarding the nature of this proceeding pursuant to the FPA.  Brin admits that on July 16, 2013, FERC issued an Order Assessing Civil Penalties (the "OACP"), but denies its validity and rejects FERC's attempt to incorporate and adopt it by reference in the Complaint.  Brin further denies all allegations and legal conclusions contained in the OACP and submits that the OACP was not the

result of any formal or even informal adjudicative process.  FERC presents its positions on legal issues as "legal findings" and its view of the facts as "factual findings" when both are subject to this Court's independent *de novo* determination. FERC's legal and factual determinations solely reflect the views of FERC that must be established at trial.  Brin denies the remaining allegations in Paragraph 3.

4.     Brin lacks knowledge or information sufficient to form a belief regarding the truth of the allegations regarding the non-public investigation, but admits that Brin gave testimony on September 21, 2010, and September 22, 2010 to FERC Enforcement Staff, and that the OACP is attached to the Complaint.

5.     Brin admits that he elected the procedures of FPA Section 31(d)(3), 16 U.S.C. § 823b(d)(3), and avers that the statute speaks for itself and no response is required.   The remaining allegations in Paragraph 5 constitute legal conclusions to which no response is required. To the extent a factual claim is made, Brin denies all allegations.  Brin repeats and incorporates Paragraph 3 of his Answer.

6.     Brin admits that FERC purports to bring this action pursuant to FPA Section 31(d)(3)(B), 16 U.S.C. § 823b(d)(3)(B), for an Order Affirming the Commission's Order Assessing Civil Penalties against Barclays Bank PLC, Daniel Brin, Scott Connelly, Karen Levine, and Ryan Smith, and repeats and incorporates Paragraph 3 of his Answer.

7.     Brin admits the allegations in Paragraph 7.

8.     Brin lacks knowledge or information sufficient to form a belief regarding the truth of all of the allegations in Paragraph 8, and the allegations are therefore denied, except as follows. Brin admits that Barclays had a West Power Desk in New York during some period of Brin's employment at Barclays and that Connelly headed the "North American Power Desk" or "U.S. Power Desk" with some supervisory role over the West Power Desk, directly or indirectly through others, during some of that period.  Brin admits the West Power Desk traded products that were sometimes referred to as "physical" and "financial" electricity products, but denies that this resulted in the physical delivery of electricity in this District.

9.      Brin currently resides in Longs, South Carolina.  Brin denies the allegations in the second sentence of Paragraph 9, but Brin admits that Brin was employed by Barclays between July 2006 and January 2011 and that he had multiple titles throughout the course of his employment.  Brin denies the allegations in sentence 3 of Paragraph 9, but admits that for certain functions he reported to Connelly.  Brin further states that the term "relevant time period" is vague and ambiguous because the Complaint does not define the terms and thus Brin lacks knowledge or information sufficient to form a belief regarding the truth of any allegations related to "relevant time period" and the allegations are therefore denied.

10.     Brin lacks knowledge or information sufficient to form a belief regarding the truth of the allegations regarding Connelly's residence, and the allegations are therefore denied, but admits that during some period of time, Connelly was employed by Barclays and for certain functions Brin reported to Connelly.

11.     Brin lacks knowledge or information sufficient to form a belief regarding the truth of the allegations regarding Levine's residence, and the allegations are therefore denied, but admits that during some period of time, Levine was employed by Barclays and for certain functions Levine reported to Connelly.

12.     Brin lacks knowledge or information sufficient to form a belief regarding the truth of the allegations regarding Smith's residence, and the allegations are therefore denied, but admits that during some period of time, Smith was employed by Barclays and for certain functions Smith reported to Connelly.

13.     Brin admits that the Energy Policy Act of 2005 amended the FPA and avers that otherwise the statute speaks for itself and no response is required.  To the extent a response is required, Brin denies all allegations and the Court is respectfully referred to the cited statutory provisions for a full and accurate description of their contents.

14.     Brin admits that the Commission promulgated the Anti-Manipulation Rule and states that the remaining allegations in Paragraph 14 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Brin denies all allegations.

15.     Brin states that the allegations in Paragraph 15 constitute legal conclusions to which no response is required. To the extent a response is required, Brin denies all allegations and the Court is respectfully referred to the cited statutory provisions for a full and accurate description of their contents.

16.     Brin admits that the FERC Office of Enforcement issued an Enforcement Staff Report and Recommendation ("Staff Report") dated October 31, 2012.  Brin denies the validity of the Staff Report and rejects FERC's attempt to incorporate and adopt it by reference in the Complaint on the grounds that such attempt violates the requirements of Fed. R. Civ. P. 8, 10 & 12(f).

17.     Brin admits that market participants entered into contracts to purchase and sell electricity products at trading locations in the Western United States, including MIDC, PV, NP-15 and SP-15, but otherwise lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 17, and the allegations are therefore denied.  Brin further states that the phrase "traded at different geographical trading locations" and the term "significant" are vague and ambiguous and thus Brin lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 17, and the allegations are therefore denied.

18.     Brin admits the allegations in Paragraph 18.

19.     Brin denies the allegations in Paragraph 19, except admits that electricity products could be traded as "peak" or "off-peak."

20.     Brin admits the allegations in Paragraph 20.

21.     Brin admits the first sentence of Paragraph 21.  Brin admits the second sentence of Paragraph 21 but denies any implication regarding when an obligation to deliver or receive electricity arises and denies any implication regarding the specific characteristics that distinguish physical from financial products.  Brin admits the third sentence of Paragraph 21.  Brin lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 21, which consists of analysis of a hypothetical situation, and the

allegations are therefore denied.

22.     Brin admits that the Intercontinental Exchange ("ICE") was an electronic trading platform that published a daily index.  Brin further admits that at times, Barclays' West Power Desk traded products on ICE and refers to the contractual terms of those products and instruments.  Brin lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22 and, therefore, denies the allegations.

23.     Brin denies the allegations in Paragraph 23, except admits that ICE published a separate daily index price for peak and off-peak electricity at numerous trading locations and other markets offered various instruments relating to electricity, and refers to the contractual terms of those instruments.

24.     Brin denies the allegations in Paragraph 24, except admits that ICE operated an electronic trading facility on which parties could enter into contracts to purchase and sell various day-ahead electricity related products, and refers to the specifications of those products for their complete and correct terms.

25.     Brin admits the allegations in the first sentence of Paragraph 25, except to the extent the allegations connote physical delivery.  Brin denies the remaining allegations in Paragraph 25, except admits that ICE operated an electronic trading facility on which parties could enter into contracts to purchase and sell various day-ahead electricity products, and refers to the specifications of those products for their complete and correct terms.

26.     Brin admits, as a general proposition, that financial positions do not entail physical obligations to deliver or receive electricity.  Brin denies all remaining allegations in Paragraph 26 as they depend on unspecified variables, are hypotheticals and are otherwise vague and ambiguous except that a net buyer or net seller of a swap can generally be said to be long or short the swap.

27.     Brin denies the allegations in Paragraph 27, except admits that ICE operated an electronic trading facility on which parties could enter into contracts to purchase and sell various products, some of which are sometimes referred to as "fixed price," and refers to the specifications of those products for their complete and correct terms.

28.     Brin admits that electricity traders who primarily traded the dailies market and positions less than a month in length are sometimes referred to in the electricity trading industry as "cash traders" and that electricity traders who traded for longer-dated positions are sometimes referred to as "term traders" but otherwise lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 28, and the allegations are therefore denied.

29.     Brin states that the term "spread" is vague, ambiguous and overbroad because it can have different meanings and thus Brin lacks knowledge or information sufficient to form a belief regarding the truth of the allegations regarding the frequency that market participants traded "spreads" and the allegations regarding the frequency that market participants traded "spreads" are therefore denied, but otherwise admits the allegations in Paragraph 29.

30.     Brin lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 30 because they depend upon unspecified variables, and the allegations are therefore denied but admits, in a spread, the leg that generally has a higher price is sometimes called the "premium" market in relation to the generally lower-priced leg, and that a trader can establish a spread position, "long" or "short," through a variety of means.

31.     Brin states that the term "generally" is vague and ambiguous and thus Brin lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 31, and the allegations are therefore denied.

32.     Brin states that the terms "generally" and "premium" are vague and ambiguous and thus Brin lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 32, and the allegations are therefore denied.

33.     Brin lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 33, which consist of analysis of a hypothetical situation, and the allegations are therefore denied.

34.     Brin lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 34, and the allegations are therefore denied.  Brin further denies

that he engaged in "potentially manipulative trading" or that he "may have been trading electricity uneconomically" and any further implication that his trading was unlawful in any way.

35.     Brin admits that Enforcement commenced an investigation of Barclays in July 2007 and he gave investigative testimony, but lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 35, and the allegations are therefore denied.

36.     Brin states that the allegations in Paragraph 36 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Brin denies all allegations.

37.     Brin states that the allegations in Paragraph 37 constitute legal conclusions, not specific to any individual, to which no response is required.  To the extent a factual claim is made, Brin denies all allegations.

38.     Brin states that the allegations in Paragraph 38 constitute legal conclusions, not specific to any individual, to which no response is required.  To the extent a factual claim is made, Brin denies all allegations.

39.     Brin states that the allegations in Paragraph 39 constitute legal conclusions, not specific to any individual, to which no response is required.  To the extent a factual claim is made, Brin denies all allegations.

40.     Brin admits that Brin and Enforcement were unable to reach a settlement, but Brin otherwise lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 40, and the allegations are therefore denied.  Brin denies the validity of the Staff Report and rejects FERC's attempt to incorporate and adopt it by reference in the Complaint on the grounds that such attempt violates the requirements of Fed. R. Civ. P. 8, 10 & 12(f).  Brin further denies all allegations and legal conclusions contained in the Staff Report.

41.     Brin denies the allegations in Paragraph 41, but admits that on October 31, 2012, the Commission issued an Order to Show Cause and Notice of Proposed Penalty, 141 FERC ¶ 61, 084 (2013) ("Order to Show Cause"), and denies any factual inferences or legal conclusions contained therein.

42.     Brin denies the allegations in Paragraph 42, except admits that he elected the procedures set forth in FPA Section 31(d)(3), 16 U.S.C. § 823b(d)(3).  Brin further states that the statutes referenced by FERC, FPA Section 31(d)(2), 16 U.S.C. § 823b(d)(2) and FPA Section 31(d)(3)(B), 16 U.S.C. § 823b(d)(3)(B) speak for themselves and no response is required.  To the extent a response is required, Brin denies all allegations related to FERC's interpretation of the statutes and the Court is respectfully referred to the cited statutory provisions for a full and accurate description of their contents.

43.     Brin admits the allegations in Paragraph 43.

44.     Brin admits that on July 16, 2013, FERC issued the OACP, but denies its validity and rejects FERC's attempt to incorporate and adopt it by reference in the Complaint.  Brin further denies all allegations and legal conclusions contained in the OACP and submits that the OACP was not the result of any formal or even informal adjudicative process.  FERC presents its positions on legal issues as "legal findings" and its view of the facts as "factual findings" when both are subject to this Court's independent *de novo* determination. FERC's legal and factual determinations solely reflect the views of FERC that must be established at trial.  Brin further denies all allegations contained within the OACP, purportedly attached to the Complaint as Exhibit 1.

45.     Paragraph 45 describes the OACP and no response is required.  To the extent a response is required, Brin denies any paraphrasing, summarizing, or characterization of the substance of the OACP and denies any factual inferences or legal conclusions contained therein.  Brin further denies that he is liable for damages, penalties, or any other relief sought in the Complaint.  Brin otherwise denies the allegations in Paragraph 45.

46.     Brin states that the allegations in Paragraph 46 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Brin denies all allegations.

47.     Brin admits that the West Power Desk traded a number of electricity products in the Western United States and Canada but otherwise denies the allegations in Paragraph 47.

48.     Brin admits the allegations contained in Paragraph 48 but states that there were

several seating configurations during the period 2006 through 2009 and the traders for the North American Power Desk were commingled.

49.     Brin lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 49, and the allegations are therefore denied.

50.     Brin admits the allegations in the first sentence of Paragraph 50 except for the allegation that Brin, Levine and Smith worked under Connelly's direction.   Brin denies the allegations in the second sentence of Paragraph 50.

51.     Brin denies the allegations in Paragraph 51 as the term "relationship" is vague, ambiguous and overly broad.  Brin admits that he worked at Mirant Corporation for a period of time when some combination of Connelly, Levine and Smith worked there as well.  Brin lacks knowledge or information sufficient to form a belief regarding the truth of the second sentence in Paragraph 51, and the allegations are therefore denied.

52.     Brin denies that Connelly was "instrumental" in Brin's recruitment to Barclays, but admits that Connelly was involved in his recruitment.   Brin lacks knowledge or information sufficient to form a belief as to the allegations regarding the recruitment of Levine and Smith, and the allegations are therefore denied.

53.     Brin states that the allegations in Paragraph 53 that trading "focused" on the locations MIDC, NP, SP and PV are vague and overbroad because the trading focused on other locations as well and thus Brin denies the allegations in Paragraph 53.

54.     Brin states that the allegations in Paragraph 54 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Brin denies all allegations. Brin repeats and incorporates Paragraph 3 of his Answer.

55.     Brin states that the allegations in Paragraph 55 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Brin denies all allegations. Brin repeats and incorporates Paragraph 3 of his Answer.

56.     Brin admits that Barclays did not own electricity generation resources or serve customer load during his employment at Barclays.  Brin further admits that Barclays' day-ahead

positions generally speaking had to be liquidated prior to delivery or receipt of the electricity, for example, by buying or selling an equal volume of electricity, which is referred to as "flattening." Brin denies all allegations in Paragraph 56 not expressly admitted.

57.     Brin denies the allegations in Paragraph 57.

58.     Brin denies the allegations in Paragraph 58.

59.     Brin denies the allegations in Paragraph 59.

60.     Brin denies the allegations in Paragraph 60.

61.     Brin denies the allegations in Paragraph 61.

62.     Brin denies the allegations in Paragraph 62.

63.     Brin denies the allegations in Paragraph 63.

64.     Brin denies the allegations in Paragraph 64, but admits that the traders occasionally communicated how to efficiently allocate trading responsibilities.

65.     Brin denies the allegations in Paragraph 65, but admits that the traders occasionally communicated how to efficiently allocate trading responsibilities.

66.     Brin admits that it was occasionally his role to inform other traders of Connelly's physical positions, but otherwise denies the allegations in Paragraph 66.

67.     Brin denies the allegations in Paragraph 67.

68.     Brin denies the allegations in Paragraph 68.

69.     Brin states that the allegations in Paragraph 69 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Brin denies all allegations and repeats and incorporates Paragraph 3 of his Answer.

70.     Brin denies the allegations in Paragraph 70 and repeats and incorporates Paragraph 3 of his Answer.

71.     Brin lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 71, and the allegations are therefore denied.

72.     Brin states that the allegations in Paragraph 72 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Brin denies all allegations.

73.    Brin admits that the quoted language in Paragraph 73 appears in the OACP and Staff Report and quotes an excerpt from a communication that purports to be from Smith, but Brin denies any paraphrasing, summarizing, or characterization of the substance of the Staff Report or OACP and denies any factual inferences or legal conclusions contained therein.  Brin repeats and incorporates Paragraph 3 and denies all remaining allegations in Paragraph 73.

74.    Brin states that the allegations in Paragraph 74 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Brin denies all allegations.

75.    Brin admits that the quoted language in Paragraph 75 appears in the OACP and Staff Report and quotes an excerpt from a communication that purports to be between Brin and a third party, but Brin denies any paraphrasing, summarizing, or characterization of the substance of the Staff Report or OACP and denies any factual inferences or legal conclusions contained therein. Brin repeats and incorporates Paragraph 3 and denies all remaining allegations in Paragraph 75.

76.    Brin denies the allegations in Paragraph 76.

77.    Brin lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 77 and the allegations are therefore denied.

78.    Brin denies the allegations in Paragraph 78, but admits, as a general proposition, that some BOM and prompt positions are financial positions that refer to the remainder of the month and the following month, respectively.

79.    Brin admits that the quoted language in Paragraph 79 appears in the OACP and Staff Report and quotes an excerpt from a communication that purports to be between Brin and Smith, but Brin denies any paraphrasing, summarizing, or characterization of the substance of the Staff Report or OACP and denies any factual inferences or legal conclusions contained therein. Brin repeats and incorporates Paragraph 3 and denies all remaining allegations in Paragraph 79.

80.    Brin denies the allegations in Paragraph 80.

81.    Brin lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 81 and the allegations are therefore denied.

82.    Brin states that the allegations in Paragraph 82 constitute legal conclusions to

1   which no response is required.  To the extent a factual claim is made, Brin denies all allegations.

2       83.   Brin lacks knowledge or information sufficient to form a belief regarding the truth

3   of the allegations in Paragraph 83 and the allegations are therefore denied.

4       84.   Brin lacks knowledge or information sufficient to form a belief regarding the truth

5   of the allegations in Paragraph 84 and the allegations are therefore denied.

6       85.   Brin admits that the quoted language in Paragraph 85 appears in the OACP and

7   Staff Report and quotes an excerpt from a communication that purports to be from Levine, but

8   Brin denies any paraphrasing, summarizing, or characterization of the substance of the Staff

9   Report or OACP and denies any factual inferences or legal conclusions contained therein.  Brin

10  repeats and incorporates Paragraph 3 of his Answer and denies all remaining allegations in

11  Paragraph 85.

12      86.   Brin denies the allegations in Paragraph 86.

13      87.   Brin lacks knowledge or information sufficient to form a belief regarding the truth

14  of the allegations in Paragraph 87 and the allegations are therefore denied.

15      88.   Brin lacks knowledge or information sufficient to form a belief regarding the truth

16  of the allegations in Paragraph 88 and the allegations are therefore denied.

17      89.   Brin lacks knowledge or information sufficient to form a belief regarding the truth

18  of the allegations in Paragraph 89 and the allegations are therefore denied.

19      90.   Brin admits that the quoted language in Paragraph 90 appears in the Staff Report

20  and quotes an excerpt from a communication that purports to be between Brin and a third party,

21  but Brin denies any paraphrasing, summarizing, or characterization of the substance of the Staff

22  Report and denies any factual inferences or legal conclusions contained therein.  Brin denies all

23  remaining allegations in Paragraph 90.

24      91.   Brin admits that the quoted language in Paragraph 91 appears in the Staff Report

25  and quotes an excerpt from a communication that purports to be between Brin and Smith, but Brin

26  denies any paraphrasing, summarizing, or characterization of the substance of the Staff Report and

27  denies any factual inferences or legal conclusions contained therein.  Brin denies all remaining

28

1  allegations in Paragraph 91.

2      92.    Brin admits that the quoted language in Paragraph 92 appears in the Staff Report

3  and quotes an excerpt from a communication that purports to be between Brin and Smith, but Brin

4  denies any paraphrasing, summarizing, or characterization of the substance of the Staff Report and

5  denies any factual inferences or legal conclusions contained therein.  Brin denies all remaining

6  allegations in Paragraph 92.

7      93.    Brin admits that the quoted language in Paragraph 93 appears in the Staff Report

8  and quotes an excerpt from a communication that purports to be between Brin and Smith, but Brin

9  denies any paraphrasing, summarizing, or characterization of the substance of the Staff Report and

10 denies any factual inferences or legal conclusions contained therein.  Brin denies all remaining

11 allegations in Paragraph 93.

12     94.    Brin lacks knowledge or information sufficient to form a belief regarding the truth

13 of the allegations in Paragraph 94 and the allegations are therefore denied.

14     95.    Brin denies the allegations in Paragraph 95.

15     96.    Brin admits that the quoted language in Paragraph 96 appears in the Staff Report,

16 and portions thereof in the OACP, and accurately quotes an excerpt from a July 6, 2007

17 publication of a newsletter called "The Friday Burrito," but Brin denies any paraphrasing,

18 summarizing, or characterization of the substance of the Staff Report or OACP and denies any

19 factual inferences or legal conclusions contained therein.  Brin repeats and incorporates Paragraph

20 3 of his Answer and denies all remaining allegations in Paragraph 96.

21     97.    Brin lacks knowledge or information sufficient to form a belief regarding the truth

22 of the allegations in Paragraph 97 and the allegations are therefore denied.

23     98.    Brin lacks knowledge or information sufficient to form a belief regarding the truth

24 of the allegations in Paragraph 98 and the allegations are therefore denied.

25     99.    Brin denies the allegations in Paragraph 99.

26     100.   Brin denies the allegations in Paragraph 100.

27     101.   Brin denies the allegations in Paragraph 101.

28

102.    Brin denies the allegations in Paragraph 102.

103.    Brin denies the allegations in Paragraph 103.

104.    Brin denies the allegations in Paragraph 104.

105.    Brin denies the allegations in Paragraph 105.

106.    Brin denies the allegations in Paragraph 106, except admits that he may have transferred positions to other traders' books, and that any transfers involving Connelly's books were authorized by Connelly.

107.    Brin denies the allegations in Paragraph 107.

108.    Brin denies the allegations in Paragraph 108 and refers to the documents purportedly referenced for their complete and accurate contents.  Brin further denies any paraphrasing, summarizing, or characterization of the documents, and any factual inferences or legal conclusions made by FERC based thereupon.

109.    Brin denies the allegations in Paragraph 109.  Regarding the quoted language, Brin refers to the purportedly quoted documents for their complete and accurate contents.  Brin avers that the documents speak for themselves and Brin denies any paraphrasing, summarizing, or characterization of the documents, and any factual inferences or legal conclusions made by FERC based thereupon.

110.    Brin denies the allegations in Paragraph 110.  Regarding the quoted language, Brin refers to the purportedly quoted transcript of the deposition of Mr. Gold for its complete and accurate contents.  Brin denies any paraphrasing, summarizing, or characterization of the statement and any factual inferences or legal conclusions made by FERC based upon the statement.

111.    Brin states that the allegations in Paragraph 111 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Brin denies all allegations. Brin repeats and incorporates Paragraph 3 of his Answer.

112.    Brin states that the allegations in Paragraph 112 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Brin denies all allegations.

Brin repeats and incorporates Paragraph 3 of his Answer.

113.   Brin lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 113, and the allegations are therefore denied.

114.   Brin states that the allegations in Paragraph 114 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Brin denies all allegations.

115.   Brin states that the allegations in Paragraph 115 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Brin denies all allegations.

116.   Brin admits that FERC issued the OACP, which purported to order Barclays to pay $435 million, Connelly to pay $15 million, Brin to pay $1 million, Levin to pay $1 million, and Smith to pay $1 million, but Brin denies the validity of the OACP and repeats and incorporates Paragraph 3 of his Answer.

117.   Brin states that the allegations in Paragraph 117 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Brin denies all allegations.

118.   Brin states that the allegations in Paragraph 118 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Brin denies all allegations.

119.   Brin states that the allegations in Paragraph 119 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Brin denies all allegations. Brin avers that the FPA Section 316A, 16 U.S.C. § 825o-1, speaks for itself and Brin denies any characterization of the statute by FERC.

120.   Brin states that the allegations in Paragraph 120 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Brin denies all allegations and restates and incorporates Paragraph 3 of his Answer.

121.   Brin states that the allegations in Paragraph 121 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Brin denies all allegations and restates and incorporates Paragraph 3 of his Answer.

122.   Brin states that the allegations in Paragraph 122 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Brin denies all allegations

DANIEL BRIN'S ANSWER AND AFFIRMATIVE DEFENSES

and restates and incorporates Paragraph 3 of his Answer.

123.    Brin states that the allegations in Paragraph 123 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Brin denies all allegations and restates and incorporates Paragraph 3 of his Answer.

124.    Brin admits that FERC demanded a jury trial on all issues so triable, but denies the remaining allegations.  Brin avers that it is statutorily entitled to have the matter adjudicated by a federal district court pursuant to sections 31(d)(1) and 31(d)(3)(A) of the FPA, 16 U.S.C. §§ 823b(d)(1), (3)(A).

125.    Brin restates, realleges, and reiterates its responses in all the preceding paragraphs as if fully set forth herein.

126.    Brin states that the allegations in Paragraph 126 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Brin denies all allegations.

127.    Brin denies the allegations in Paragraph 127.  Brin avers that FPA Section 31, 16 U.S.C. § 823b(d)(3)(B), speaks for itself and Brin denies any characterization of the statute by FERC.

## **DEFENSES**

Brin asserts the following affirmative and other defenses.  By alleging the defenses set forth below, Brin does not agree or concede that he bears the burden of proof or the burden of persuasion on any of these issues, whether in whole or in part.

### **First Defense**

### **(Lack of Subject Matter Jurisdiction)**

This Court lacks subject matter jurisdiction over this action pursuant to the FPA Section 31(d)(3)(B), 16 U.S.C. § 823b(d)(3)(B).  Section 31(d)(3)(B) of the FPA states in relevant part that "the Commission shall institute an action *in the appropriate district court* of the United States for an order affirming the assessment of [a] civil penalty."  16 U.S.C. § 823b(d)(3)(B) (emphasis added).  This Court is not the appropriate district court in which to bring this action because venue is not proper in this District.  Neither Brin nor any of the other individual defendants are

inhabitants of this District, Barclays does not have operations in this District, and the facts alleged in the complaint do not establish that "any act or transaction constituting the violation occurred" in this District.

## Second Defense

### (Improper Venue)

Venue is not proper in this District pursuant to FPA Section 317, since neither Brin nor any of the other individual defendants are inhabitants of this District, Barclays does not have operations in this District, and the facts alleged in the complaint do not establish that "any act or transaction constituting the violation occurred" in this District.

## Third Defense

### (Forum Non Conveniens)

FERC cannot pursue this action against Brin in this judicial district because there is a more appropriate forum available to the parties.  The Federal District Court for the Southern District of New York ("SDNY") is the more appropriate forum because, among other reasons, travel to New York, New York is easier for Brin, Barclays' headquarters for the Americas is located in New York, New York, nearby that court, and the court is significantly closer to Plaintiff as well. Moreover, the SDNY is more appropriate for the reasons discussed in the First and Second Affirmative Defenses, which are incorporated in this Third Affirmative Defense by reference.

## Fourth Defense

### (Lack of Personal Jurisdiction)

FERC's claims against Brin are barred because the Court lacks personal jurisdiction over Brin.  Brin denies that he is subject to personal jurisdiction in this Court because venue is improper.

## Fifth Defense

### (Failure to State a Claim)

The Complaint fails to state any claim upon which relief can be granted.

## Sixth Defense

DANIEL BRIN'S ANSWER AND AFFIRMATIVE DEFENSES

1 **(Statute of Limitations/Repose/Doctrine of Laches)**

2     FERC's claims are barred by the applicable statutes of limitations and/or repose and/or the

3 doctrine of laches.

4 **Seventh Defense**

5 **(Estoppel)**

6     FERC is barred from obtaining the relief sought in the Complaint by the doctrines of

7 waiver and estoppel.

8 **Eighth Defense**

9 **(Due Process)**

10     FERC's claims for statutory penalties against Brin violate the due process guarantee of the

11 Fourteenth Amendment to the U.S. Constitution.  Among other things, the Complaint presents

12 FERC's positions on legal issues as "legal findings" and its view of the facts as "factual findings"

13 when both are subject to this Court's independent *de novo* determination. FERC's legal and

14 factual determinations solely reflect the views of FERC that must be established at trial.

15 **Ninth Defense**

16 **(Compliance)**

17     At all times mentioned in the Complaint, every reasonable effort was made by Brin to, and

18 Brin did in fact, comply with all applicable statutes, regulations and/or ordinances under the

19 circumstances alleged, and any noncompliance, if existed at all, was justified under the

20 circumstances alleged.

21 **Tenth Defense**

22 **(Failure to Plead Fraud with Particularity)**

23     FERC has failed to plead fraud with particularity as required by Rule 9(b) of the Federal

24 Rules of Civil Procedure, and has failed to give Brin notice of any specific acts of fraud.

25 **Eleventh Defense**

26 **(Legal Fault of Others)**

27

28

Any purported injury or harm alleged was, either wholly or in part, the legal fault of persons, firms, corporations, or entities other than Brin and that legal fault reduces the percentage of responsibility, if any, which is to be borne by Brin.

## Twelfth Defense

### (Adopting Other Defenses)

Brin hereby adopts and incorporates by reference any and all other defenses asserted or to be asserted by any of the other Defendants in this Civil Action.

## DEFENSES RESERVED

Brin has insufficient knowledge and information upon which to form a belief as to whether additional defenses are available.  Brin reserves the right to amend this Answer to add additional defenses based on legal theories which may or will be divulged through clarification of the Complaint, through discovery, through change or clarification of the governing law or through further legal analysis of FERC's positions in this litigation.

## BRIN'S PRAYER FOR RELIEF

Wherefore, Brin respectfully requests that this Court enter judgment in its favor and against FERC and grant the following relief:

A.      A judgment dismissing with prejudice FERC's Complaint and denying all claims for relief against Brin therein;

B.      An order awarding Brin fees pursuant to 28 U.S.C. § 2412(d)(1)(A); and

C.      Such other and further relief as this Court may deem just and proper.

1

## <u>JURY DEMAND</u>

2          In accordance with Federal Rule of Civil Procedure 38, Defendant Daniel Brin requests a

3   trial by jury on all aspects of this case so triable.

4

5   **RESPECTFULLY SUBMITTED**

6   DATED:          June 17, 2015                    McGUIREWOODS LLP

7

8                                              By: /s/  Susan L. Germaise_____
                                                   Susan L. Germaise
9                                                  Todd Mullins
                                                   Allison Charney
10

11  Attorneys for Defendant Daniel Brin

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DANIEL BRIN'S ANSWER AND AFFIRMATIVE DEFENSES

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 17, 2015, a true and correct copy of Daniel Brin's Answer to Complaint was filed electronically in the Court's Electronic Filing System ("ECF"); thereby upon completion the ECF system automatically generated a Notice of Electronic Filing ("NEF") as service through CM/ECF to registered e-mail addresses of parties of record in the case.

<u>Attorneys for Federal Energy Regulatory Commission</u>
Emily Catherine Scruggs; emily.scruggs@ferc.gov
Maria Cristina Melendez; cristina.melendez@ferc.gov
Wesley James Heath; wesley.heath@ferc.gov
David A. Applebaum; David.Applebaum@ferc.gov

<u>Attorneys for Barclays Bank PLC:</u>
Gregory Markel; greg.markel@cwt.com
Jason M. Halper; jason.halper@cwt.com
Jay B. Kasner; jay.kasner@skadden.com
Jodi Avergun; jodi.avergun@cwt.com
Paul J. Pantano, Jr.; paul.pantano@cwt.com
Thomas J Nolan; Thomas.Nolan@Skadden.com
Dan M. Berkovitz; Dan.Berkovitz@wilmerhale.com
Heather Zachary; Heather.Zachary@wilmerhale.com
John N. Estes, III; john.estes@skadden.com
Jonathan G. Cedarbaum; Jonathan.Cedarbaum@wilmerhale.com
Mark C. Kalpin; Mark.Kalpin@wilmerhale.com
Patrick Fitzgerald; patrick.fitzgerald@skadden.com
Seth Paul Waxman; seth.waxman@wilmerhale.com
Steven R. Glaser, steven.glaser@skadden.com

<u>Attorneys for Karen Levine and Ryan Smith:</u>
Geoffrey Thomas Holtz; gholtz@morganlewis.com
James Bub Windle, bubwindle@paulhastings.com
Mark Everett McKeen; markmckeen@paulhastings.com
Michael L. Spafford, michaelspafford@paulhastings.com
Victoria L. T. Earls, victoriaearls@paulhastings.com

<u>Attorneys for Scott Connelly:</u>
Susan Lynn Germaise; sgermaise@mcguirewoods.com
Todd Mullins; tmullins@mcguirewoods.com
Allison Charney; acharney@mcguirewoods.com

By: /s/ Susan L. Germaise
Susan L. Germaise