SUSAN L. GERMAISE (SBN 176595)
sgermaise@mcguirewoods.com
McGUIREWOODS LLP
1800 Century Park East, 8th Floor
Los Angeles, California 90067
Telephone:     (310) 315-8200

TODD MULLINS (*Admitted Pro Hac Vice*)
tmullins@mcguirewoods.com
McGUIREWOODS LLP
2001 K Street, N.W.
Washington, D.C. 20006-1040
Telephone:     (202) 857-1752

ALLISON D. CHARNEY (*Admitted Pro Hac Vice*)
acharney@mcguirewoods.com
McGUIREWOODS LLP
1345 Avenue of the Americas, 7th Floor
New York, New York 10105
Telephone:     (212) 548-2166

Attorneys for Defendant SCOTT CONNELLY

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL ENERGY REGULATORY COMMISSION,<br><br>                    Plaintiff,<br><br>vs.<br><br>BARCLAYS BANK PLC; DANIEL BRIN; SCOTT CONNELLY; KAREN LEVINE; and RYAN SMITH<br><br>                    Defendants. | CASE NO. 2:13-cv-02093-TLN-DAD<br><br>SCOTT CONNELLY'S ANSWER TO COMPLAINT<br><br>Courtroom:          2<br>Presiding:          Hon. Troy L. Nunley<br><br>**JURY TRIAL DEMANDED** |

Scott Connelly, by and through his undersigned counsel, states as follows his Answer and Affirmative Defenses (the "Answer") to the Petition For An Order Affirming the Federal Energy Regulatory Commission's July 16, 2013 Order Assessing Civil Penalties Against Barclays Bank PLC, Daniel Brin, Scott Connelly, Karen Levine, and Ryan Smith (the "Complaint") filed by the Plaintiff, Federal Energy Regulatory Commission ("FERC" or "Plaintiff" or the "Commission").

By way of a general response, all allegations are denied unless specifically admitted, and any factual averment is admitted only as to the specific facts and not as to any conclusions, characterizations, implications or speculations that are contained in the averment or in the Complaint as a whole.  This response is incorporated, to the extent appropriate, into each numbered paragraph of this Answer.

To the extent the paragraphs of the Complaint are grouped under headings, Connelly responds generally that such headings do not contain factual assertions, and therefore no response is required.  To the extent a response is deemed necessary, Connelly denies any allegations contained in each heading in the Complaint.

Connelly denies all of the Complaint's allegations unless expressly admitted herein and denies that FERC is entitled to any relief.

Answering the numbered paragraphs of the Complaint, Connelly states as follows:

1.      Connelly denies the allegations in Paragraph 1.

2.      Connelly denies the allegations in Paragraph 2.

3.      Connelly admits that this matter involves proceedings pursuant to FPA Section 31(d)(3)(B), 16 U.S.C. § 823b(d)(3)(B) under which Defendants have a statutory right to require FERC to file an action in a "district court of the United States" for *de novo* determinations of both the facts and the legal basis for FERC's case, but denies any characterization by FERC regarding the nature of this proceeding pursuant to the FPA.  Connelly admits that on July 16, 2013, FERC issued an Order Assessing Civil Penalties (the "OACP"), but denies its validity and rejects FERC's attempt to incorporate and adopt it by reference in the Complaint.  Connelly further denies all allegations and legal conclusions contained in the OACP and submits that the OACP

was not the result of any formal or even informal adjudicative process.  FERC presents its positions on legal issues as "legal findings" and its view of the facts as "factual findings" when both are subject to this Court's independent *de novo* determination. FERC's legal and factual determinations solely reflect the views of FERC that must be established at trial.  Connelly denies the remaining allegations in Paragraph 3.

4.      Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations regarding the non-public investigation, but admits that Connelly gave investigative testimony on July 20, 2009, July 21, 2009, October 26, 2010, and October 27, 2010 to FERC Enforcement Staff and that the OACP is attached to the Complaint.

5.      Connelly admits that he elected the procedures of FPA Section 31(d)(3), 16 U.S.C. § 823b(d)(3), and avers that the statute speaks for itself and no response is required.   The remaining allegations in Paragraph 5 constitute legal conclusions to which no response is required. To the extent a factual claim is made, Connelly denies all allegations.  Connelly repeats and incorporates Paragraph 3 of his Answer.

6.      Connelly admits that FERC purports to bring this action pursuant to FPA Section 31(d)(3)(B), 16 U.S.C. § 823b(d)(3)(B), for an Order Affirming the Commission's Order Assessing Civil Penalties against Barclays Bank PLC, Daniel Brin, Scott Connelly, Karen Levine, and Ryan Smith, and repeats and incorporates Paragraph 3 of his Answer.

7.      Connelly admits the allegations in Paragraph 7.

8.      Connelly lacks knowledge or information sufficient to form a belief regarding the truth of all of the allegations in Paragraph 8, and the allegations are therefore denied, except as follows.  Connelly admits that Barclays had a West Power Desk in New York during Connelly's employment at Barclays from May 2006 to August 2009 and that Connelly headed the "North American Power Desk" or "U.S. Power Desk" with some supervisory role over the West Power Desk, directly or indirectly through others, during some of that period.  Connelly admits the West Power Desk traded products that were sometimes referred to as "physical" and "financial" electricity products, but denies that this resulted in the physical delivery of electricity in this

1  District.

2      9.     Connelly lacks knowledge or information sufficient to form a belief regarding the

3  truth of the allegations regarding Brin's residence, and the allegations are therefore denied, but

4  admits that during some period of time, Brin was employed by Barclays and for certain functions

5  Brin reported to Connelly.

6      10.    Connelly admits the allegations in the first sentence of Paragraph 10.  Connelly

7  denies the allegations in the second and third sentences of Paragraph 10, but admits that he was

8  employed by Barclays as Managing Director for North American Power from May 2006 to

9  August 2009 and that Connelly headed the "North American Power Desk" or "U.S. Power Desk"

10 with some supervisory role over the West Power Desk, directly or indirectly through others,

11 including but not limited to Defendants Brin, Levine and Smith during some of that period.

12 Connelly further states that the terms "personally headed" and "relevant time period" are vague

13 and ambiguous because the Complaint does not define the terms and thus Connelly lacks

14 knowledge or information sufficient to form a belief regarding the truth of any allegations related

15 to "personally headed" and "relevant time period" and the allegations are therefore denied.

16     11.    Connelly lacks knowledge or information sufficient to form a belief regarding the

17 truth of the allegations regarding Levine's residence, and the allegations are therefore denied, but

18 admits that during some period of time, Levine was employed by Barclays and for certain

19 functions Levine reported to Connelly.

20     12.    Connelly lacks knowledge or information sufficient to form a belief regarding the

21 truth of the allegations regarding Smith's residence, and the allegations are therefore denied, but

22 admits that during some period of time, Smith was employed by Barclays and for certain functions

23 Smith reported to Connelly.

24     13.    Connelly admits that the Energy Policy Act of 2005 amended the FPA and avers

25 that otherwise the statute speaks for itself and no response is required.  To the extent a response is

26 required, Connelly denies all allegations and the Court is respectfully referred to the cited statutory

27 provisions for a full and accurate description of their contents.

28

14.     Connelly admits that the Commission promulgated the Anti-Manipulation Rule and states that the remaining allegations in Paragraph 14 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Connelly denies all allegations.

15.     Connelly states that the allegations in Paragraph 15 constitute legal conclusions to which no response is required. To the extent a response is required, Connelly denies all allegations and the Court is respectfully referred to the cited statutory provisions for a full and accurate description of their contents.

16.     Connelly admits that the FERC Office of Enforcement issued an Enforcement Staff Report and Recommendation ("Staff Report") dated October 31, 2012.  Connelly denies the validity of the Staff Report and rejects FERC's attempt to incorporate and adopt it by reference in the Complaint on the grounds that such attempt violates the requirements of Fed. R. Civ. P. 8, 10 & 12(f).

17.     Connelly admits that market participants entered into contracts to purchase and sell electricity products at trading locations in the Western United States, including MIDC, PV, NP-15 and SP-15, but otherwise lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 17, and the allegations are therefore denied. Connelly further states that the phrase "traded at different geographical trading locations" and the term "significant" are vague and ambiguous and thus Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 17, and the allegations are therefore denied.

18.     Connelly admits the allegations in Paragraph 18.

19.     Connelly denies the allegations in Paragraph 19, except admits that electricity products could be traded as "peak" or "off-peak."

20.     Connelly admits the allegations in Paragraph 20.

21.     Connelly admits the first sentence of Paragraph 21.  Connelly admits the second sentence of Paragraph 21 but denies any implication regarding when an obligation to deliver or receive electricity arises and denies any implication regarding the specific characteristics that

distinguish physical from financial products.  Connelly admits the third sentence of Paragraph 21. Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 21, which consists of analysis of a hypothetical situation, and the allegations are therefore denied.

22.    Connelly admits that the Intercontinental Exchange ("ICE") was an electronic trading platform that published a daily index.  Connelly further admits that at times, Barclays' West Power Desk traded products on ICE and refers to the contractual terms of those products and instruments. Connelly lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22 and, therefore, denies the allegations.

23.    Connelly denies the allegations in Paragraph 23, except admits that ICE published a separate daily index price for peak and off-peak electricity at numerous trading locations and other markets offered various instruments relating to electricity, and refers to the contractual terms of those instruments.

24.    Connelly denies the allegations in Paragraph 24, except admits that ICE operated an electronic trading facility on which parties could enter into contracts to purchase and sell various day-ahead electricity related products, and refers to the specifications of those products for their complete and correct terms.

25.    Connelly admits the allegations in the first sentence of Paragraph 25, except to the extent the allegations connote physical delivery.  Connelly denies the remaining allegations in Paragraph 25, except admits that ICE operated an electronic trading facility on which parties could enter into contracts to purchase and sell various day-ahead electricity products, and refers to the specifications of those products for their complete and correct terms.

26.    Connelly admits, as a general proposition, that financial positions do not entail physical obligations to deliver or receive electricity.  Connelly denies all remaining allegations in Paragraph 26 as they depend on unspecified variables, are hypotheticals and are otherwise vague and ambiguous except that a net buyer or net seller of a swap can generally be said to be long or short the swap.

27.     Connelly denies the allegations in Paragraph 27, except admits that ICE operated an electronic trading facility on which parties could enter into contracts to purchase and sell various products, some of which are sometimes referred to as "fixed price," and refers to the specifications of those products for their complete and correct terms.

28.     Connelly admits that electricity traders who primarily traded the dailies market and positions less than a month in length are sometimes referred to in the electricity trading industry as "cash traders" and that electricity traders who traded for longer-dated positions are sometimes referred to as "term traders" but otherwise lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 28, and the allegations are therefore denied.

29.     Connelly states that the term "spread" is vague, ambiguous and overbroad because it can have different meanings and thus Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations regarding the frequency that market participants traded "spreads" and the allegations regarding the frequency that market participants traded "spreads" are therefore denied, but otherwise admits the allegations in Paragraph 29.

30.     Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 30 because they depend upon unspecified variables, and the allegations are therefore denied but admits, in a spread, the leg that generally has a higher price is sometimes called the "premium" market in relation to the generally lower-priced leg, and that a trader can establish a spread position, "long" or "short," through a variety of means.

31.     Connelly states that the term "generally" is vague and ambiguous and thus Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 31, and the allegations are therefore denied.

32.     Connelly states that the terms "generally" and "premium" are vague and ambiguous and thus Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 32, and the allegations are therefore denied.

33.     Connelly lacks knowledge or information sufficient to form a belief regarding the

truth of the allegations in Paragraph 33, which consist of analysis of a hypothetical situation, and the allegations are therefore denied.

34.     Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 34, and the allegations are therefore denied.  Connelly further denies that he engaged in "potentially manipulative trading" or that he "may have been trading electricity uneconomically" and any further implication that his trading was unlawful in any way.

35.     Connelly admits that Enforcement commenced an investigation of Barclays in July 2007 and he gave investigative testimony, but lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 35, and the allegations are therefore denied.

36.     Connelly states that the allegations in Paragraph 36 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Connelly denies all allegations.

37.     Connelly states that the allegations in Paragraph 37 constitute legal conclusions, not specific to any individual, to which no response is required.  To the extent a factual claim is made, Connelly denies all allegations.

38.     Connelly states that the allegations in Paragraph 38 constitute legal conclusions, not specific to any individual, to which no response is required.  To the extent a factual claim is made, Connelly denies all allegations.

39.     Connelly states that the allegations in Paragraph 39 constitute legal conclusions, not specific to any individual, to which no response is required.  To the extent a factual claim is made, Connelly denies all allegations.

40.     Connelly admits that Connelly and Enforcement were unable to reach a settlement, but Connelly otherwise lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 40, and the allegations are therefore denied.  Connelly denies the validity of the Staff Report and rejects FERC's attempt to incorporate and adopt it by reference in the Complaint on the grounds that such attempt violates the requirements of Fed. R. Civ. P. 8,

10 & 12(f).  Connelly further denies all allegations and legal conclusions contained in the Staff Report.

41.      Connelly denies the allegations in Paragraph 41, but admits that on October 31, 2012, the Commission issued an Order to Show Cause and Notice of Proposed Penalty, 141 FERC ¶ 61, 084 (2013) ("Order to Show Cause"), and denies any factual inferences or legal conclusions contained therein.

42.      Connelly denies the allegations in Paragraph 42, except admits that he elected the procedures set forth in FPA Section 31(d)(3), 16 U.S.C. § 823b(d)(3).  Connelly further states that the statutes referenced by FERC, FPA Section 31(d)(2), 16 U.S.C. § 823b(d)(2) and FPA Section 31(d)(3)(B), 16 U.S.C. § 823b(d)(3)(B) speak for themselves and no response is required.  To the extent a response is required, Connelly denies all allegations related to FERC's interpretation of the statutes and the Court is respectfully referred to the cited statutory provisions for a full and accurate description of their contents.

43.      Connelly admits the allegations in Paragraph 43.

44.      Connelly admits that on July 16, 2013, FERC issued the OACP, but denies its validity and rejects FERC's attempt to incorporate and adopt it by reference in the Complaint.  Connelly further denies all allegations and legal conclusions contained in the OACP and submits that the OACP was not the result of any formal or even informal adjudicative process.  FERC presents its positions on legal issues as "legal findings" and its view of the facts as "factual findings" when both are subject to this Court's independent *de novo* determination. FERC's legal and factual determinations solely reflect the views of FERC that must be established at trial.  Connelly further denies all allegations contained within the OACP, purportedly attached to the Complaint as Exhibit 1.

45.      Paragraph 45 describes the OACP and no response is required.  To the extent a response is required, Connelly denies any paraphrasing, summarizing, or characterization of the substance of the OACP and denies any factual inferences or legal conclusions contained therein.  Connelly further denies that he is liable for damages, penalties, or any other relief sought in the

Complaint.  Connelly otherwise denies the allegations in Paragraph 45.

46.     Connelly states that the allegations in Paragraph 46 constitute legal conclusions to which no response is required.   To the extent a factual claim is made, Connelly denies all allegations.

47.     Connelly admits that the West Power Desk traded a number of electricity products in the Western United States and Canada but otherwise denies the allegations in Paragraph 47.

48.     Connelly admits the allegations contained in Paragraph 48 but states that there were several seating configurations during the period 2006 through 2009 and the traders for the North American Power Desk were commingled.

49.     Connelly denies that he "was a member of senior management," but admits that he was employed by Barclays as Managing Director for North American Power from May 2006 to August 2009 and that Connelly headed the "North American Power Desk" or "U.S. Power Desk" with some supervisory role over the West Power Desk, directly or indirectly through others, during some of that period.  Connelly admits the allegations in the third sentence of Paragraph 49.

50.     Connelly admits the allegations in the first sentence of Paragraph 50 except for the allegation that Brin, Levine, and Smith worked under Connelly's direction.   Connelly further denies the allegations in the second sentence of Paragraph 50.

51.     Connelly denies the allegations in Paragraph 51 as the term "relationship" is vague, ambiguous and overly broad.  Connelly admits that he worked at Mirant Corporation for a period of time when some combination of Brin, Levine, and Smith worked there as well.   Connelly admits that he worked at Powerex Corporation for a period of time when Levine worked there as well.

52.     Connelly denies the allegation in Paragraph 52 that he was instrumental in recruiting Brin, Levine and Smith to Barclays.  Connelly admits that he had a role in recruiting Brin and that he knew Levine and Smith were being recruited, but denies the remaining allegations in Paragraph 52.

53.      Connelly states that the allegations in Paragraph 53 that trading "focused" on the

locations MIDC, NP, SP and PV are vague and overbroad because the trading focused on other locations as well and thus Connelly denies the allegations in Paragraph 53.

54.     Connelly states that the allegations in Paragraph 54 constitute legal conclusions to which no response is required.   To the extent a factual claim is made, Connelly denies all allegations.  Connelly repeats and incorporates Paragraph 3 of his Answer.

55.     Connelly states that the allegations in Paragraph 55 constitute legal conclusions to which no response is required.   To the extent a factual claim is made, Connelly denies all allegations.  Connelly repeats and incorporates Paragraph 3 of his Answer.

56.     Connelly admits that Barclays did not own electricity generation resources or serve customer load during his employment at Barclays.  Connelly further admits that Barclays' day-ahead positions generally speaking had to be liquidated prior to delivery or receipt of the electricity, for example, by buying or selling an equal volume of electricity, which is referred to as "flattening."  Connelly denies all allegations in Paragraph 56 not expressly admitted.

57.     Connelly denies the allegations in Paragraph 57.

58.     Connelly denies the allegations in Paragraph 58.

59.     Connelly denies the allegations in Paragraph 59.

60.     Connelly denies the allegations in Paragraph 60.

61.     Connelly denies the allegations in Paragraph 61.

62.     Connelly denies the allegations in Paragraph 62.

63.     Connelly denies the allegations in Paragraph 63.

64.     Connelly denies the allegations in Paragraph 64, but admits that the traders occasionally communicated how to efficiently allocate trading responsibilities.

65.     Connelly denies the allegations in Paragraph 65, but admits that the traders occasionally communicated how to efficiently allocate trading responsibilities.

66.     Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 66, and the allegations are therefore denied.

67.     Connelly denies the allegations in Paragraph 67.

68.     Connelly denies the allegations in Paragraph 68.

69.     Connelly states that the allegations in Paragraph 69 constitute legal conclusions to which no response is required.   To the extent a factual claim is made, Connelly denies all allegations and repeats and incorporates Paragraph 3 of his Answer.

70.     Connelly denies the allegations in Paragraph 70 and repeats and incorporates Paragraph 3 of his Answer.

71.     Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 71, and the allegations are therefore denied.

72.     Connelly states that the allegations in Paragraph 72 constitute legal conclusions to which no response is required.   To the extent a factual claim is made, Connelly denies all allegations.

73.     Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 73, and the allegations are therefore denied.

74.     Connelly states that the allegations in Paragraph 74 constitute legal conclusions to which no response is required.   To the extent a factual claim is made, Connelly denies all allegations.

75.     Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 75, and the allegations are therefore denied.

76.     Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 76 and the allegations are therefore denied.

77.     Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 77 and the allegations are therefore denied.

78.     Connelly denies the allegations in Paragraph 78, but admits, as a general proposition, that some BOM and prompt positions are financial positions that refer to the remainder of the month and the following month, respectively.

79.     Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 79 and the allegations are therefore denied.

80.     Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 80 and further states that the allegations constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Connelly denies all allegations.

81.     Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 81 and the allegations are therefore denied.

82.     Connelly states that the allegations in Paragraph 82 constitute legal conclusions to which no response is required.  To the extent a factual claim is made, Connelly denies all allegations.

83.     Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 83 and the allegations are therefore denied.

84.     Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 84 and the allegations are therefore denied.

85.     Connelly admits that the quoted language in Paragraph 85 appears in the OACP and Staff Report and quotes an excerpt from a communication that purports to be from Levine, but Connelly denies any paraphrasing, summarizing, or characterization of the substance of the Staff Report or OACP and denies any factual inferences or legal conclusions contained therein. Connelly repeats and incorporates Paragraph 3 of his Answer and denies all remaining allegations in Paragraph 85.

86.     Connelly denies the allegations in Paragraph 86.

87.     Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 87 and the allegations are therefore denied.

88.     Connelly admits that on February 28, 2007, Connelly traded MIDC peak dailies, but otherwise denies any implication of the import of this event or any purported impropriety, and further denies the remaining allegations in the first sentence of Paragraph 88.  Connelly admits that the quoted language in Paragraph 88 appears in the OACP and Staff Report and quotes an excerpt from a communication that purports to be between Connelly and a third party, but

Connelly denies any paraphrasing, summarizing, or characterization of the substance of the Staff Report or OACP and denies any factual inferences or legal conclusions contained therein. Connelly repeats and incorporates Paragraph 3 of his Answer and denies all remaining allegations in Paragraph 88.

89.     Connelly admits that the quoted language in Paragraph 89 appears in the OACP and Staff Report and quotes an excerpt from a communication that purports to be between Connelly and a third party, but Connelly denies any paraphrasing, summarizing, or characterization of the substance of the Staff Report or OACP and denies any factual inferences or legal conclusions contained therein.  Connelly repeats and incorporates Paragraph 3 of his Answer and denies all remaining allegations in Paragraph 89.

90.     Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 90 and the allegations are therefore denied.

91.     Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 91 and the allegations are therefore denied.

92.     Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 92 and the allegations are therefore denied.

93.     Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 93 and the allegations are therefore denied.

94.     Connelly lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 94 and the allegations are therefore denied.

95.     Connelly denies the allegations in Paragraph 95.

96.     Connelly admits that the quoted language in Paragraph 96 appears in the Staff Report, and portions thereof in the OACP, and accurately quotes an excerpt from a July 6, 2007 publication of a newsletter called "The Friday Burrito," but Connelly denies any paraphrasing, summarizing, or characterization of the substance of the Staff Report or OACP and denies any factual inferences or legal conclusions contained therein.  Connelly repeats and incorporates Paragraph 3 of his Answer and denies all remaining allegations in Paragraph 96.

97.     Connelly admits that on or around July 8, 2007, Connelly sent an email to Gary Ackerman discussing ICE trading volumes but Connelly denies any paraphrasing, summarizing, or characterization of the substance of the email and denies any factual inferences or legal conclusions made by FERC based upon the email.  Connelly denies all remaining allegations in Paragraph 97.

98.     Connelly denies the allegations in Paragraph 98, except admits he requested that if the author of "The Friday Burrito" chose to publish Connelly's comments that he do so anonymously.

99.     Connelly denies the allegations in Paragraph 99.

100.    Connelly denies the allegations in Paragraph 100.

101.    Connelly denies the allegations in Paragraph 101.

102.    Connelly denies the allegations in Paragraph 102.

103.    Connelly denies the allegations in Paragraph 103.

104.    Connelly denies the allegations in Paragraph 104.

105.    Connelly denies the allegations in Paragraph 105.

106.    Connelly denies the allegations in Paragraph 106, except admits that positions may have transferred between the traders' books, and that any transfers involving Connelly's books were authorized.

107.    Connelly denies the allegations in Paragraph 107.

108.    Connelly denies the allegations in Paragraph 108 and refers to the documents purportedly referenced for their complete and accurate contents.  Connelly further denies any paraphrasing, summarizing, or characterization of the documents, and any factual inferences or legal conclusions made by FERC based thereupon.

109.    Connelly denies the allegations in Paragraph 109.  Regarding the quoted language, Connelly refers to the purportedly quoted documents for their complete and accurate contents. Connelly avers that the documents speak for themselves and Connelly denies any paraphrasing, summarizing, or characterization of the documents, and any factual inferences or legal conclusions

1   made by FERC based thereupon.

2        110.    Connelly denies the allegations in Paragraph 110.  Regarding the quoted language,

3   Connelly refers to the purportedly quoted transcript of the deposition of Mr. Gold for its complete

4   and accurate contents.  Connelly denies any paraphrasing, summarizing, or characterization of the

5   statement and any factual inferences or legal conclusions made by FERC based upon the

6   statement.

7        111.    Connelly states that the allegations in Paragraph 111 constitute legal conclusions to

8   which no response is required.  To the extent a factual claim is made, Connelly denies all

9   allegations.  Connelly repeats and incorporates Paragraph 3 of his Answer.

10       112.    Connelly states that the allegations in Paragraph 112 constitute legal conclusions to

11  which no response is required.  To the extent a factual claim is made, Connelly denies all

12  allegations.  Connelly repeats and incorporates Paragraph 3 of his Answer.

13       113.    Connelly lacks knowledge or information sufficient to form a belief regarding the

14  truth of the allegations in Paragraph 113, and the allegations are therefore denied.

15       114.    Connelly states that the allegations in Paragraph 114 constitute legal conclusions to

16  which no response is required.  To the extent a factual claim is made, Connelly denies all

17  allegations.

18       115.    Connelly states that the allegations in Paragraph 115 constitute legal conclusions to

19  which no response is required.  To the extent a factual claim is made, Connelly denies all

20  allegations.

21       116.    Connelly admits that FERC issued the OACP, which purported to order Barclays to

22  pay $435 million, Connelly to pay $15 million, Brin to pay $1 million, Levin to pay $1 million,

23  and Smith to pay $1 million, but Connelly denies the validity of the OACP and repeats and

24  incorporates Paragraph 3 of his Answer.

25       117.    Connelly states that the allegations in Paragraph 117 constitute legal conclusions to

26  which no response is required.  To the extent a factual claim is made, Connelly denies all

27  allegations.

28

118.    Connelly states that the allegations in Paragraph 118 constitute legal conclusions to which no response is required.   To the extent a factual claim is made, Connelly denies all allegations.

119.    Connelly states that the allegations in Paragraph 119 constitute legal conclusions to which no response is required.   To the extent a factual claim is made, Connelly denies all allegations.   Connelly avers that the FPA Section 316A, 16 U.S.C. § 825o-1, speaks for itself and Connelly denies any characterization of the statute by FERC.

120.    Connelly states that the allegations in Paragraph 120 constitute legal conclusions to which no response is required.   To the extent a factual claim is made, Connelly denies all allegations and restates and incorporates Paragraph 3 of his Answer.

121.    Connelly states that the allegations in Paragraph 121 constitute legal conclusions to which no response is required.   To the extent a factual claim is made, Connelly denies all allegations and restates and incorporates Paragraph 3 of his Answer.

122.    Connelly states that the allegations in Paragraph 122 constitute legal conclusions to which no response is required.   To the extent a factual claim is made, Connelly denies all allegations and restates and incorporates Paragraph 3 of his Answer.

123.    Connelly states that the allegations in Paragraph 123 constitute legal conclusions to which no response is required.   To the extent a factual claim is made, Connelly denies all allegations and restates and incorporates Paragraph 3 of his Answer.

124.    Connelly admits that FERC demanded a jury trial on all issues so triable, but denies the remaining allegations.   Connelly avers that he is statutorily entitled to have the matter adjudicated by a federal district court pursuant to sections 31(d)(1) and 31(d)(3)(A) of the FPA, 16 U.S.C. §§ 823b(d)(1), (3)(A).

125.    Connelly restates, realleges, and reiterates its responses in all the preceding paragraphs as if fully set forth herein.

126.    Connelly states that the allegations in Paragraph 126 constitute legal conclusions to which no response is required.   To the extent a factual claim is made, Connelly denies all

1   allegations.

2        127.    Connelly denies the allegations in Paragraph 127.  Connelly avers that FPA Section

3   31, 16 U.S.C. § 823b(d)(3)(B), speaks for itself and Connelly denies any characterization of the

4   statute by FERC.

5

6   **DEFENSES**

7        Connelly asserts the following affirmative and other defenses.  By alleging the defenses set

8   forth below, Connelly does not agree or concede that he bears the burden of proof or the burden of

9   persuasion on any of these issues, whether in whole or in part.

10  **First Defense**

11  **(Lack of Subject Matter Jurisdiction)**

12       This Court lacks subject matter jurisdiction over this action pursuant to the FPA Section

13  31(d)(3)(B), 16 U.S.C. § 823b(d)(3)(B).  Section 31(d)(3)(B) of the FPA states in relevant part

14  that "the Commission shall institute an action *in the appropriate district court* of the United States

15  for an order affirming the assessment of [a] civil penalty."  16 U.S.C. § 823b(d)(3)(B) (emphasis

16  added).  This Court is not the appropriate district court in which to bring this action because venue

17  is not proper in this District.  Neither Connelly nor any of the other individual defendants are

18  inhabitants of this District, Barclays does not have operations in this District, and the facts alleged

19  in the complaint do not establish that "any act or transaction constituting the violation occurred" in

20  this District.

21  **Second Defense**

22  **(Improper Venue)**

23       Venue is not proper in this District pursuant to FPA Section 317, since neither Connelly

24  nor any of the other individual defendants are inhabitants of this District, Barclays does not have

25  operations in this District, and the facts alleged in the complaint do not establish that "any act or

26  transaction constituting the violation occurred" in this District.

27

28

**Third Defense**

**(Forum Non Conveniens)**

FERC cannot pursue this action against Connelly in this judicial district because there is a more appropriate forum available to the parties. The Federal District Court for the Southern District of New York ("SDNY") is the more appropriate forum because, among other reasons, travel to New York, New York is easier for Connelly, Barclays' headquarters for the Americas is located in New York, New York, nearby that court, and the court is significantly closer to Plaintiff as well. Moreover, the SDNY is more appropriate for the reasons discussed in the First and Second Affirmative Defenses, which are incorporated in this Third Affirmative Defense by reference.

**Fourth Defense**

**(Lack of Personal Jurisdiction)**

FERC's claims against Connelly are barred because the Court lacks personal jurisdiction over Connelly. Connelly denies that he is subject to personal jurisdiction in this Court because venue is improper.

**Fifth Defense**

**(Failure to State a Claim)**

The Complaint fails to state any claim upon which relief can be granted.

**Sixth Defense**

**(Statute of Limitations/Repose/Doctrine of Laches)**

FERC's claims are barred by the applicable statutes of limitations and/or repose and/or the doctrine of laches.

**Seventh Defense**

**(Estoppel)**

FERC is barred from obtaining the relief sought in the Complaint by the doctrines of waiver and estoppel.

### Eighth Defense

### (Due Process)

FERC's claims for statutory penalties against Connelly violate the due process guarantee of the Fourteenth Amendment to the U.S. Constitution.   Among other things, the Complaint presents FERC's positions on legal issues as "legal findings" and its view of the facts as "factual findings" when both are subject to this Court's independent *de novo* determination. FERC's legal and factual determinations solely reflect the views of FERC that must be established at trial.

### Ninth Defense

### (Compliance)

At all times mentioned in the Complaint, every reasonable effort was made by Connelly to, and Connelly did in fact, comply with all applicable statutes, regulations and/or ordinances under the circumstances alleged, and any noncompliance, if existed at all, was justified under the circumstances alleged.

### Tenth Defense

### (Failure to Plead Fraud with Particularity)

FERC has failed to plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure, and has failed to give Connelly notice of any specific acts of fraud.

### Eleventh Defense

### (Legal Fault of Others)

Any purported injury or harm alleged was, either wholly or in part, the legal fault of persons, firms, corporations, or entities other than Connelly and that legal fault reduces the percentage of responsibility, if any, which is to be borne by Connelly.

### Twelfth Defense

### (Adopting Other Defenses)

Connelly hereby adopts and incorporates by reference any and all other defenses asserted or to be asserted by any of the other Defendants in this Civil Action.

**DEFENSES RESERVED**

Connelly has insufficient knowledge and information upon which to form a belief as to whether additional defenses are available.  Connelly reserves the right to amend this Answer to add additional defenses based on legal theories which may or will be divulged through clarification of the Complaint, through discovery, through change or clarification of the governing law or through further legal analysis of FERC's positions in this litigation.

**CONNELLY'S PRAYER FOR RELIEF**

Wherefore, Connelly respectfully requests that this Court enter judgment in its favor and against FERC and grant the following relief:

A.      A judgment dismissing with prejudice FERC's Complaint and denying all claims for relief against Connelly therein;

B.      An order awarding Connelly fees pursuant to 28 U.S.C. § 2412(d)(1)(A); and

C.      Such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

In accordance with Federal Rule of Civil Procedure 38, Defendant Scott Connelly requests a trial by jury on all aspects of this case so triable.

**RESPECTFULLY SUBMITTED**

DATED:      June 17, 2015          McGUIREWOODS LLP

By: /s/ Susan L. Germaise_____
     Susan L. Germaise
     Todd Mullins
     Allison Charney

Attorneys for Defendant Scott Connelly

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2015, a true and correct copy of Scott Connelly's Answer to Complaint was filed electronically in the Court's Electronic Filing System ("ECF"); thereby upon completion the ECF system automatically generated a Notice of Electronic Filing ("NEF") as service through CM/ECF to registered e-mail addresses of parties of record in the case.

Attorneys for Federal Energy Regulatory Commission
Emily Catherine Scruggs; emily.scruggs@ferc.gov
Maria Cristina Melendez; cristina.melendez@ferc.gov
Wesley James Heath; wesley.heath@ferc.gov
David A. Applebaum; David.Applebaum@ferc.gov

Attorneys for Barclays Bank PLC:
Gregory Markel; greg.markel@cwt.com
Jason M. Halper; jason.halper@cwt.com
Jay B. Kasner; jay.kasner@skadden.com
Jodi Avergun; jodi.avergun@cwt.com
Paul J. Pantano, Jr.; paul.pantano@cwt.com
Thomas J Nolan; Thomas.Nolan@Skadden.com
Dan M. Berkovitz; Dan.Berkovitz@wilmerhale.com
Heather Zachary; Heather.Zachary@wilmerhale.com
John N. Estes, III; john.estes@skadden.com
Jonathan G. Cedarbaum; Jonathan.Cedarbaum@wilmerhale.com
Mark C. Kalpin; Mark.Kalpin@wilmerhale.com
Patrick Fitzgerald; patrick.fitzgerald@skadden.com
Seth Paul Waxman; seth.waxman@wilmerhale.com
Steven R. Glaser, steven.glaser@skadden.com

Attorneys for Karen Levine and Ryan Smith:
Geoffrey Thomas Holtz; gholtz@morganlewis.com
James Bub Windle, bubwindle@paulhastings.com
Mark Everett McKeen; markmckeen@paulhastings.com
Michael L. Spafford, michaelspafford@paulhastings.com
Victoria L. T. Earls, victoriaearls@paulhastings.com

Attorneys for Daniel Brin:
Susan Lynn Germaise; sgermaise@mcguirewoods.com
Todd Mullins; tmullins@mcguirewoods.com
Allison Charney; acharney@mcguirewoods.com

By: /s/ Susan L. Germaise_____
Susan L. Germaise