THOMAS J. NOLAN (SBN 66992)
Thomas.Nolan@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600

Attorneys for BARCLAYS BANK PLC

*Please see continuation page for a complete list of the parties and their respective counsel.*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL ENERGY REGULATORY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>BARCLAYS BANK PLC; DANIEL BRIN; SCOTT CONNELLY; KAREN LEVINE; and RYAN SMITH,<br><br>Defendants. | CASE NO.:  2:13-cv-02093-TLN-DAD<br><br>**DEFENDANTS' SUPPLEMENTARY BRIEFING IN OPPOSITION TO BIFURCATION**<br><br>Presiding:    Hon. Troy L. Nunley<br>Courtroom:   2<br>Trial Date:   None Set |

**CONTINUATION SHEET:  PARTIES AND THEIR RESPECTIVE COUNSEL**

STEVEN R. GLASER (Admitted *Pro Hac Vice*)
Steven.Glaser@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:     (212) 735-3000
Facsimile:      (212) 735-2000

PATRICK FITZGERALD (Admitted *Pro Hac Vice*)
Patrick.Fitzgerald@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
Telephone:     (312) 407-0700
Facsimile:      (312) 407-0411

JOHN N. ESTES III (Admitted *Pro Hac Vice*)
John.Estes@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone:     (202) 371-7000
Facsimile:      (202) 393-5760

GREGORY A. MARKEL (Admitted *Pro Hac Vice*)
Greg.Markel@cwt.com
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone:     (212) 504-6000
Facsimile:      (212) 504-6666

PAUL J. PANTANO JR. (Admitted *Pro Hac Vice*)
Paul.Pantano@cwt.com
JODI L. AVERGUN (Admitted *Pro Hac Vice*)
Jodi.Avergun@cwt.com
CADWALADER, WICKERSHAM & TAFT LLP
700 Sixth Street, N.W.
Washington, D.C. 20001
Telephone:     (202) 862-2410
Facsimile:      (202) 862-2400

**CONTINUATION SHEET:  PARTIES AND THEIR RESPECTIVE COUNSEL**

SETH P. WAXMAN (Admitted *Pro Hac Vice*)
Seth.Waxman@wilmerhale.com
DAN M. BERKOVITZ (Admitted *Pro Hac Vice*)
Dan.Berkovitz@wilmerhale.com
JONATHAN G. CEDARBAUM (Admitted *Pro Hac Vice*)
Jonathan.Cedarbaum@wilmerhale.com
HEATHER M. ZACHARY (Admitted *Pro Hac Vice*)
Heather.Zachary@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone:     (202) 663-6000
Facsimile:     (202) 663-6363

MARK C. KALPIN (Admitted *Pro Hac Vice*)
Mark.Kalpin@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone:     (617) 526-6000
Facsimile:     (617) 526-5000

Attorneys for BARCLAYS BANK PLC

SUSAN L. GERMAISE (SBN 176595)
sgermaise@mcguirewoods.com
McGUIREWOODS LLP
1800 Century Park East, 8th Floor
Los Angeles, California 90067
Telephone:     (310) 315-8200
Facsimile:     (310) 315-8210

TODD MULLINS (Admitted *Pro Hac Vice*)
tmullins@mcguirewoods.com
McGUIREWOODS LLP
2001 K Street, N.W.
Washington, D.C. 20006-1040
Telephone:     (202) 857-1752
Facsimile:     (202) 828-3320

ALLISON D. CHARNEY (Admitted *Pro Hac Vice*)
acharney@mcguirewoods.com
McGUIREWOODS LLP
1345 Avenue of the Americas, 7th Floor
New York, New York 10105
Telephone:     (212) 548-2166
Facsimile:     (212) 715-6279

Attorneys for DANIEL BRIN
and SCOTT CONNELLY

DEFENDANTS' SUPPLEMENTARY BRIEFING
IN OPPOSITION TO BIFURCATION

**CONTINUATION SHEET:  PARTIES AND THEIR RESPECTIVE COUNSEL**

MARK E. MCKEEN (SBN 130950)
markmckeen@paulhastings.com
PAUL HASTINGS LLP
55 Second Street, Twenty-Fourth Floor
San Francisco, California 94105
Telephone:     (415) 856-7000
Facsimile:     (415) 856-7100

MICHAEL L. SPAFFORD (Admitted *Pro Hac Vice*)
michaelspafford@paulhastings.com
VICTORIA L.T. EARLS (Admitted *Pro Hac Vice*)
victoriaearls@paulhastings.com
J. BUB WINDLE (Admitted *Pro Hac Vice*)
bubwindle@paulhastings.com
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C. 20005
Telephone:     (202) 551-1700
Facsimile:     (202) 373-1705

Attorneys for KAREN LEVINE
and RYAN SMITH

**SUMMARY**

FERC assessed almost $500 million in penalties and disgorgement against the defendants, and defendants chose federal court as the venue for this dispute, as is their right under the Federal Power Act ("FPA"). Defendants have never been permitted to take discovery from FERC or any third parties, and have never been given the opportunity to test the theories, assumptions and allegations FERC has lodged against them. Despite never having to prove its case before an independent fact finder, and despite defendants never having been given a fair opportunity to challenge FERC's claims of manipulation, FERC now seeks to truncate adjudication before this Court. FERC's proposal would deny defendants their rights under the FPA, the Federal Rules of Civil Procedure, and the Constitution—not to mention violate this Court's precedent on bifurcation.

Touting what it calls an "extensive administrative process," Am. Joint Report, ECF No. 97 at 6, FERC proposes to bifurcate this case, resolving liability and penalties through a summary process that ignores the requirements for obtaining summary judgment, while adjudicating disgorgement in a subsequent phase. FERC's bifurcation proposal rests on factual and legal mistake. FERC does not dispute that disgorgement requires discovery, testimony, and a trial. FERC errs, however, in asserting that liability and penalties do not. All three aspects of the case—liability, penalties, and disgorgement—require adjudicating inextricably intertwined issues.

Given these interrelationships, bifurcation would duplicate effort, waste time, and elongate the case. It also would risk conflicting outcomes. The Court's summary decision on liability and penalties could require reconsideration at the disgorgement stage, necessitating another round of litigation. The Court therefore should reject FERC's proposal.

FERC's bifurcation proposal also would prejudice defendants. No adjudication occurred at FERC. The purported administrative record that FERC claims should constitute the exclusive factual universe for deciding liability and penalties contains only part of the materials FERC collected from third parties during its investigation. Defendants had no discovery of third parties, or of FERC, and never had access to FERC's expert work.

This action is the sole opportunity defendants will have to adjudicate any part of a case in which FERC seeks almost $500 million in penalties and disgorgement. And FERC's bifurcation proposal would forever deny defendants the opportunity to adjudicate those issues anywhere. That unlawful and unfair outcome would allow FERC to avoid scrutiny of the unproven assertions comprising its case. It would harm defendants' effort to defend themselves. And it would deny defendants their constitutional rights to a jury trial and due process.[1]

## BACKGROUND

FERC proposes to file the administrative record, followed by a "motion for an order affirming the civil penalties." Am. Joint Report, ECF No. 97 at 17. That motion would address both liability and civil penalties, but not disgorgement. *Id.* FERC then proposes "a separate judicial determination of the appropriate disgorgement amount, in which the Commission may introduce expert testimony." *Id.* at 18. Only in that separate phase would defendants "have a full opportunity to conduct discovery related to any evidence (expert testimony or otherwise) the Commission offers at that time." *Id*.

According to FERC, its proposal makes sense because disgorgement involves the calculation of unjust profits, which "may" require discovery and expert testimony to address whether the allegedly manipulative day-ahead fixed-price trading had any "effects on prices," or "market effects." *Id*. at 17-18. FERC suggests that the existence and degree of any such price effects would prove whether the manipulative trading created profits for Barclays' financial positions, and, if so, the amount of those alleged profits. *Id*.

In contrast, FERC claims that no adjudication is needed on liability or penalties because defendants made several submissions to FERC and allegedly "failed to rebut the evidence put forth by Enforcement of the manipulative scheme." *Id*. at 6. But there was no adjudication of that

---

[1] Defendants concurrently are filing a Notice of Motion and Motion for Leave to File a Memorandum of Points and Authorities on the Federal Power Act's Judicial Procedures for Civil Penalty Assessment Actions, as well as a copy of that proposed brief. Defendants' proposed brief further demonstrates the prejudice discussed here in the context of bifurcation. It also demonstrates how prejudice would more broadly be introduced into this action should the Court contravene the explicit statutory and constitutional requirements for a plenary proceeding and, instead, limit the scope of review and the nature of the proceedings in this action.

evidence. What FERC calls the administrative record (*id.* at 16-17) is composed of select portions of what FERC's enforcement staff collected during its investigation. While FERC took third party discovery, defendants do not have all information that process produced. Defendants never had the opportunity to take discovery from FERC or third parties. And in the FERC process below, defendants never saw enforcement staff's expert work—including, but not limited to, what enforcement staff calls its "preliminary econometric model," *id.* at 17—allegedly supporting FERC's case on liability, penalties, and disgorgement. That expert work is not part of FERC's administrative record because enforcement staff did not produce it even to FERC.

## ARGUMENT

"The party seeking bifurcation 'has the burden to demonstrate it is justified.'" *Mformation Techs., Inc. v. Research in Motion Ltd.*, NO. C 08-04990 JW, 2012 WL 1142537, at *1 (N.D. Cal. Mar. 29, 2012) (citation omitted). FERC cannot carry that burden here.

As this Court has explained, "bifurcation is the exception rather than the rule." *Thomas v. Wilber*, No. 1:10-cv-00006-SKO(PC), 2015 WL 4615911, at *2 (E.D. Cal. July 31, 2015) (citations omitted). "The issue of whether to bifurcate is guided by consideration of several factors: (1) whether separation of the issues for trial will expedite disposition of the action; (2) whether such separation will conserve trial time and other judicial resources; (3) whether such separation will avoid prejudice; and (4) whether the issues are essentially independent of each other so that there will be no need to duplicate the presentation of significant areas of the evidence in the separated proceedings." *Tuey v. Mammoth Mountain Ski Area*, No. CIV. S-07-2442 LKK/GGH, 2009 WL 928328, at *4 (E.D. Cal. Apr. 6, 2009). FERC's bifurcation proposal fails every factor.

**I.   BECAUSE FERC'S OSTENSIBLE RATIONALE FOR BIFURCATION IS DEMONSTRABLY WRONG, ADOPTING FERC'S APPROACH WOULD BE INEFFICIENT AND PREJUDICIAL**

Instead of "conserv[ing] trial time and other judicial resources," *id.*, bifurcation would precipitate severe procedural complications. It would delay instead of "expedite disposition of the action." *Id.* Many of defendants' arguments on disgorgement also disprove liability and penalties. FERC's proposal would force defendants to make these arguments twice.

In addition to its obvious inefficiency, bifurcation risks conflicting outcomes. Among other things, as explained below, adjudication of the price effect issue—which FERC proposes to defer until the disgorgement stage—bears directly on both liability and penalties. FERC's theory of liability is that defendants changed prices in manipulative ways. FERC's theory of penalties rests on its estimate of the amount and direction of those price effects. And FERC's theory of disgorgement rests on that very same estimate of price effects.

Because of these interrelationships, adjudication of disgorgement threatens to undermine FERC's position on liability and penalties. Depending on the degree of divergence, FERC's entire case could fail. Rather than saving time or resources, bifurcation likely would force the Court and the parties to spend more of both, elongating this action and inherently prejudicing defendants.

### A. Liability, Penalties, And Disgorgement Each Requires Expert Testimony On Intertwined Issues

#### 1. FERC Does Not Dispute That Expert Testimony Is Needed To Decide Disgorgement

FERC does not dispute that disgorgement requires further development—including discovery, expert and other testimony, and a trial. Am. Joint Report, ECF No. 97 at 18-19. FERC alleges that the conduct in dispute earned $34.9 million in unjust profits. Petition, ECF No. 1 ¶ 39. That figure reflects enforcement staff's estimate of the "difference in price that resulted from Barclays' trading." Assessment Order, ECF No. 1-1 at P 150. There are disputed issues of material fact regarding that alleged price effect—disputes that require discovery, testimony, and a trial. That is true not only for disgorgement but also for liability and penalties.

#### 2. Defendants Require Expert Testimony To Contest Liability

Defendants must have an opportunity to present expert testimony to contest not only disgorgement but also liability. FERC's theory of alleged manipulation is that defendants intentionally lost money trading fixed-price day-ahead power to benefit related derivative positions. Expert testimony will disprove that theory.

Experts will testify, for example, that defendants' alleged trading did not materially affect prices, or affected price in the wrong direction, actually harming Barclays' derivative positions—a result that would contradict FERC's theory of the case. And that price effect dispute is the very

same one that FERC admits calls for expert testimony on disgorgement.  Am. Joint Report, ECF No. 97 at 18-19.  FERC may prefer to contest liability without proving price effect, but defendants have the right to defend liability by disproving price effect.

Expert testimony also will defeat FERC's manipulation claim in other respects.  For example, expert testimony will show that the disputed trading was consistent with legitimate, non-manipulative trading, including trading by other firms, and was inconsistent with the theory of manipulation alleged by FERC.  Expert testimony also will show that the prices FERC claims were distorted by manipulation instead reflected market fundamentals.  And expert testimony will show that, in many time periods at issue, the derivative positions were too small to make the alleged scheme profitable (because the losses from trading fixed-price day-ahead power exceeded the gains on the derivative positions).  Without a profit motive, FERC's alleged scheme makes no sense.

      3.  <u>Defendants Require Expert Testimony To Contest Penalty Amounts</u>

Similarly, defendants must have an opportunity to present expert testimony to contest the amount of the civil penalty.  FERC relied upon the estimates of price effect produced by enforcement staff's "preliminary econometric model" to calculate both disgorgement and penalties.  The very same price effect estimates used to calculate the $34.9 million in unjust profits that FERC seeks to disgorge *also* were used to calculate the $139.3 million FERC alleges in market harm.  Assessment Order, ECF No. 1-1 at P 122 & n.353.  FERC then used that $139.3 million in alleged market harm to calculate the $435 million in civil penalties it seeks from Barclays.  *Id.* at PP 121-24 (citing *Enforcement of Statutes, Orders, Rules, and Regulations*, 132 FERC ¶ 61,216 at PP 2, 32 & pt. C (2010)).  Disgorgement and penalties both require expert testimony because they both rest on the same estimate of price effect.

FERC now backs away from its use of alleged price effect to calculate penalties, pointing to an alternative theory under which FERC claims it is not required to "quantify" market harm or show that the alleged violation caused an "artificial price."  Am. Joint Report, ECF No. 97 at 17-18 (quoting Assessment Order, ECF No. 1-1 at PP 128-29).  But that approach cannot be reconciled with FERC's request for summary affirmance of $435 million in penalties—an amount that expressly rests on the same estimates of price effect that were used by FERC to calculate

1  disgorgement.  *See* Assessment Order, ECF No. 1-1 at PP 122-24; Petition, ECF No. 1 ¶¶ 116-18
2  (citing Assessment Order, ECF No. 1-1 at PP 118-46).

3        Whether or not FERC chooses to withdraw the price effect assumptions underlying the
4  penalties it seeks, defendants still require an opportunity to present expert testimony showing that
5  imposing almost $500 million dollars in penalties and disgorgement is arbitrary, unfounded, and
6  excessive.  If, as defendants contend, any market harm was non-existent or smaller than FERC
7  asserts, there cannot possibly be a basis for imposing such massive sanctions.

8        Apart from alleged price effect, FERC's calculation of market harm relies on an analysis of
9  the trading positions held by a number of other market participants to estimate the alleged harm the
10 trading at issue allegedly inflicted on those participants.  Defendants intend to present testimony
11 challenging that analysis—including, for example, whether FERC properly netted the positive and
12 negative effects on any given market participant.  Foreclosing that opportunity prejudices
13 defendants' ability to litigate penalties.

14     **B.**    **Liability, Penalties, And Disgorgement Are Intertwined, Involving Common Issues, Evidence, And Testimony**
15

16       The interrelationships here go far beyond expert testimony.  Liability and penalties also are
17 intertwined because they both require FERC to prove intent.  For purposes of liability,
18 manipulative intent is a necessary element of market manipulation.  Likewise, in calculating
19 penalties, FERC relies on communications involving Barclays' traders to claim that defendants
20 were aware of the "seriousness" of the alleged violations.  Assessment Order, ECF No. 1-1 at
21 PP 130-46.

22       Defendants therefore must, for the first time, have an opportunity to conduct third party
23 discovery of others involved in the communications at issue, which will place those
24 communications in context and explain why FERC is drawing improper inferences from them.
25 Defendants also have the right to present testimony from Barclays' traders to a neutral trier of fact,
26 which will demonstrate the legitimate business reasons for the trading.  As that testimony will
27 show, the objective of the allegedly manipulative day-ahead trading was *not* to benefit related
28 derivative positions, but was, instead, to gain experience, to obtain market intelligence, and to

DEFENDANTS' SUPPLEMENTARY BRIEFING　　　　　　6
IN OPPOSITION TO BIFURCATION

make money on the day-ahead positions.  Defendants also intend to adduce testimony (third party) and expert) demonstrating that the traders transacted at price levels very similar to trading by other market participants, and thus did not materially or artificially affect price outcomes.

### C. Discovery Is Required On All Of This Intertwined Testimony And Evidence, Cutting Across Liability, Penalties, And Disgorgement

In addition, defendants must have an opportunity to conduct discovery to contest both liability and penalties, as well as disgorgement.  That discovery would be aimed at identifying:

- the price effect assumptions undergirding FERC's assertions on liability, penalties, and disgorgement, including the "preliminary econometric model," and other unproduced and unattributed expert opinion underlying FERC's case;
- portions of FERC's investigative file that are not included in FERC's administrative record, and thus have not already been provided to defendants, including depositions, discovery responses, and other materials that involve third parties;
- third parties involved in communications that FERC claims show manipulative intent;
- other trading firms that provided information used in FERC's calculation of market harm, including discovery of the full portfolios of those firms to determine whether any harm occurred on a net basis; and
- facts that support or contradict FERC's assertion at the motion to dismiss stage that the allegedly manipulative trades went to physical delivery, which firm or firms engaged in any alleged physical delivery, how physical delivery occurred, and what, if any, role Barclays played in any physical delivery (including discovery about transmission service provided by the California Independent System Operator Corporation and others).

Each of these areas of discovery, among others, is critical to resolving material disputed questions of fact relevant to liability and penalties.

## II. BIFURCATION WOULD PREJUDICE DEFENDANTS

Bifurcation would prejudice defendants both by denying their constitutional right to a jury trial on factual issues relevant to liability and penalties, and by denying them due process.

As the Supreme Court has held, a defendant in an action where the government seeks civil penalties is entitled to a trial by jury.  *Tull v. United States*, 481 U.S. 412, 417, 423 (1987). Because section 31(d)(3) gives defendants the right to elect adjudication in federal district court, not at FERC, the Seventh Amendment applies.

FERC's proposal to circumvent defendants' right to a jury trial on any aspect of liability and penalties, with a later trial solely on disgorgement, contradicts controlling Supreme Court precedent. "[I]f a 'legal claim [liability and penalties] is joined with an equitable claim [disgorgement], the right to jury trial on the legal claim, including all issues common to both claims, remains intact.'" *Tull*, 481 U.S. at 425 (quoting *Curtis v. Loether*, 415 U.S. 189, 196 n.11 (1974)). That bedrock rule requires one comprehensive trial, with a jury making findings on the many disputed factual issues relevant to liability, penalties, and disgorgement.

In addition, FERC's bifurcation proposal denies defendants' due process rights. FERC's claim that it gave defendants "numerous opportunities to present evidence and argument to the Commission," Am. Joint Report, ECF No. 97 at 6-7, does not equate to due process.

In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court articulated the balancing test that has "'become the standard for determining whether certain challenged administrative procedures comply with the requirements of due process.'" *California ex rel. Lockyer v. FERC*, 329 F.3d 700, 708 n.8 (9th Cir. 2003) (citation omitted). *Mathews* sets forth the following factors:

> [F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 710 (citations omitted).

Under the first *Mathews* prong, the private interests here are significant by any measure. FERC characterized the penalties provided for by the statute as "punitive sanctions . . . [that] may be fairly characterized as severe." Assessment Order, ECF No. 1-1 at P 127.

Under the second *Mathews* prong, denying defendants an opportunity to conduct discovery and offer expert and fact testimony creates substantial risk of erroneous deprivation. As discussed above, these procedural safeguards will allow defendants to contest foundational elements of FERC's claim. The administrative process conducted so far lacked "the basic elements common to adversarial adjudication," such as the "right to a hearing" and the "opportunity to question witnesses." *FEC v. Nat'l Republican Senatorial Comm.*, 877 F. Supp. 15, 19 (D.D.C. 1995).

Under the third *Mathews* prong, requiring FERC to establish its case in district court would not impose burdens significantly greater than those imposed by the administrative path of FPA section 31(d)(2).  Under that path, like the judicial one, defendants would be entitled to discovery and a trial with the opportunity to present and to cross-examine witnesses.  *See generally Process for Assessing Civil Penalties*, 117 FERC ¶ 61,317 at 62,531-32 n.18 (2006).

FERC also errs in claiming that a lack of court adjudication of liability and penalties simply stems from defendants' election of judicial rather than administrative resolution.  Am. Joint Report, ECF No. 97 at 7-8.  When defendants made that election, FERC had consistently stated—in its orders—that the election of federal district court procedures led to a "de novo trial."  *Procedures for the Assessment of Civil Penalties Under Section 31 of the Fed. Power Act*, Order No. 502, 53 Fed. Reg. 32,035, 32,038 (Aug. 23, 1988).  Defendants did not elect to forgo due process before both the agency and in court.  They elected de novo adjudication of liability, penalties, and disgorgement in federal district court.

There can be no question that FERC did not satisfy due process requirements at the agency level.  Because defendants elected court adjudication, it is the role of this Court, not FERC, to provide due process.  But FERC's bifurcation proposal would *forever* deny defendants the opportunity to adjudicate numerous factual disputes critical to liability, and critical to FERC's proposal to impose almost $500 million in sanctions, violating defendants' due process rights.

### III.  FERC'S CLAIM THAT IT NEEDS TO ADJUDICATE DISGORGEMENT UNDERSCORES THE NEED FOR DE NOVO ADJUDICATION OF ALL ISSUES

Defendants are mindful that the Court's Request for Supplementary Briefing stated that "[t]he parties need not address the scope of de novo review under section 31(d)(3) of the Federal Power Act."  August 4, 2015 Order, ECF No. 98 at 2.  But FERC's bifurcation proposal contradicts the plain language of that provision, which requires plenary adjudication of all issues.  For that reason, defendants today also are filing a Notice of Motion and Motion for Leave to File, and a Memorandum of Points and Authorities on the Federal Power Act's Judicial Procedures for Civil Penalty Assessment Actions.  There we expand on language in the Amended Joint Report (ECF No. at 11-13) explaining the meaning of section 31(d)(3), which authorizes "an action"

where this Court "shall have the authority to review de novo the law and the facts involved." 16 U.S.C. § 823b(d)(3)(B).  The FPA grants that authority to give defendants their day in court on all issues, so that the court can provide judicial checks and balances on FERC's investigative power.  And the need for those checks and balances is at its zenith in this case, given that FERC seeks nearly $500 million in penalties and disgorgement.

## **CONCLUSION**

For the foregoing reasons, defendants respectfully request that the Court deny FERC's proposal to bifurcate the matter and allow this action to proceed like any other civil litigation.

DATED:  September 3, 2015         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  _____/s/ Thomas J. Nolan_____
Thomas J. Nolan
Attorneys for BARCLAYS BANK PLC

DATED:  September 3, 2015         CADWALADER, WICKERSHAM & TAFT LLP

By: /s/ *Gregory A. Markel (as authorized on 9/3/2015)*
Gregory A. Markel
Attorneys for BARCLAYS BANK PLC

DATED:  September 3, 2015         WILMER CUTLER PICKERING HALE AND DORR LLP

By: /s/ *Seth Waxman (as authorized on 9/3/2015)*
Seth P. Waxman
Attorneys for BARCLAYS BANK PLC

DATED:  September 3, 2015         McGUIREWOODS LLP

By: /s/ *Todd Mullins (as authorized on 9/3/2015)*
Todd Mullins
Attorneys for DANIEL BRIN and SCOTT CONNELLY

DATED:  September 3, 2015         PAUL HASTINGS LLP

By: /s/ *Michael L. Spafford (as authorized on 9/3/2015)*
Michael L. Spafford
Attorneys for KAREN LEVINE and RYAN SMITH