1  FEDERAL ENERGY REGULATORY COMMISSION
   DAVID A. APPLEBAUM
2  David.Applebaum@ferc.gov
   WESLEY J. HEATH
3  Wesley.Heath@ferc.gov
   EMILY C. SCRUGGS
4  Emily.Scruggs@ferc.gov
   MARIA CRISTINA MELENDEZ
5  Cristina.Melendez@ferc.gov
   Office of Enforcement
6  888 1ˢᵗ Street, N.E.
   Washington, DC 20426
7  Telephone:      (202) 502-8100

8  Attorneys for FEDERAL ENERGY
   REGULATORY COMMISSION

9

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE EASTERN DISTRICT OF CALIFORNIA

12  FEDERAL ENERGY REGULATORY          )   CASE NO.:  2:13-cv-02093-TLN-DAD
    COMMISSION,                        )
13                                     )   **PLAINTIFF'S BRIEF IN RESPONSE TO**
                        Plaintiff,     )   **COURT'S AUGUST 3, 2015 ORDER**
14                                     )   **REQUESTING SUPPLEMENTARY**
        v.                             )   **BRIEFING ON ISSUE OF**
15                                     )   **SEPARATING COURT'S**
    BARCLAYS BANK PLC; DANIEL BRIN;    )   **DETERMINATION OF**
16  SCOTT CONNELLY; KAREN LEVINE; and  )   **DISGORGEMENT FROM**
    RYAN SMITH,                        )   **DETERMINATION OF LIABILITY**
17                                     )   **AND AMOUNT IN PENALTIES**
                        Defendants.    )
18                                     )   Hearing Date:      None set
                                       )   Presiding:         Hon. Troy L. Nunley
19                                     )   Courtroom:         2, 15th Floor
                                       )
20  _____)

21                    **PRELIMINARY STATEMENT**

22          On August 3, 2015, the Court signed an order requesting supplementary briefing on the

23  issue of separating the Court's determination of disgorgement from a determination of

24  Defendants' liability and the amount in penalties, as discussed in the parties' Joint Status Report

25  (ECF No. 97).  The Federal Energy Regulatory Commission ("Commission") hereby responds to

26  the Court's request.  The Court should reach the question of disgorgement only after it (1) finds

27  that Barclays Bank PLC ("Barclays") and its former traders, Scott Connelly, Daniel Brin, Karen

28  Levine, and Ryan Smith ("Individual Traders"), violated the Federal Power Act's ("FPA")

1   prohibition of energy market manipulation, 16 U.S.C. § 824v(a) (2012) ("Section 222"), and the

2   corresponding prohibition in the Commission's regulations, 18 C.F.R. § 1c.2 (2015) (the "Anti-

3   Manipulation Rule") and (2) determines the civil penalty amounts.  While the Commission's

4   Penalty Assessment Order ("Penalty Assessment Order" or "CPAO") (ECF No. 1-1) found that

5   staff's uncontested estimate of $34.9 million in unjust profits was sufficient for the Commission

6   to order Barclays to disgorge that amount, the Commission also acknowledged that the Court may

7   want to consider different or more precise disgorgement amounts.  CPAO at P 147.

8        The Commission submits that the penalty-assessment record it considered, and that the

9   Court should consider, is fully developed on the questions of liability and the amount of civil

10  penalties.  However, the Commission recognizes that the Court's determination of a more precise

11  disgorgement amount may be assisted by expert testimony and related discovery.  By deferring

12  discovery on disgorgement unless and until the Court makes findings on liability and penalties,

13  the Court would streamline this case by resolving the majority of issues and amount in

14  controversy without the unnecessary delay and expense that would accompany the Court first

15  conducting a hearing on disgorgement.  Further, because the Commission ordered only Barclays

16  (not the Individual Traders) to disgorge ill-gotten gains, bifurcation would allow the Court to

17  resolve the entirety of the proceedings with regard to the Individual Traders far more

18  expeditiously than considering penalties and disgorgement in a single proceeding.  Moreover,

19  Defendants would not be prejudiced.  Indeed, this procedure would allow Barclays to present

20  evidence on disgorgement, an opportunity it failed to avail itself of before the Commission.

21                                    **BACKGROUND**

22       The Commission issued its Penalty Assessment Order on July 16, 2013, finding

23  Defendants liable for violations of the Anti-Manipulation Rule and FPA Section 222.  The

24  Commission assessed civil penalties of $435 million against Barclays, $15 million against Scott

25  Connelly, and $1 million each against Karen Levine, Ryan Smith, and Daniel Brin.  The

26  Commission also ordered Barclays to pay disgorgement in the amount of $34.9 million.

27       The Commission considered the evidence and argument presented by the parties on the

28  issues of liability, civil penalties, and disgorgement.  As part of these submissions, Barclays

1   provided a number of analyses addressing the issue of whether Barclays' trades could have had

2   any material effect on the market.  Barclays argued that these studies demonstrated that its

3   physical trades could not have impacted market prices.  The Commission was unpersuaded by

4   Barclays' arguments.  CPAO at P 59 n.192.  One area in which Barclays did not present evidence,

5   although it had the opportunity to do so, was on the question of disgorgement.  CPAO at PP 147,

6   150.  In the absence of an alternative proposal from Barclays for calculating disgorgement, the

7   Commission, based on the evidence before it, found Enforcement staff took the correct general

8   approach in attempting to calculate a reasonable approximation of unjust profits.  CPAO at PP

9   147, 151.  However, the Commission noted that the Court might consider different or more

10  precise disgorgement amounts.  CPAO at P 147.

11                                    **ARGUMENT**

12          The Court has broad discretion to bifurcate proceedings in managing its docket.  *E.g.*,

13  *Hilao v. Marcos*, 103 F.3d 767, 782 (9th Cir. 1996).  "The major consideration of course, must be

14  which procedure is more likely to result in a just and expeditious final disposition of the

15  litigation."  9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2388

16  (3d ed. 2008).

17          **I.      Disgorgement and Civil Penalties Involve Distinct Legal Issues**

18          Disgorgement is a remedy involving the determination of unjust profits.  The profitability

19  of a manipulative scheme, however, is not necessary to proving a violation of FPA Section 222 or

20  the Anti-Manipulation Rule, nor is it necessary to determining civil penalties.  CPAO at P 127;

21  *Brian Hunter*, 137 FERC ¶ 61,146, at P 15 (2011), *rev'd sub nom. Hunter v. FERC*, 711 F.3d 155

22  (D.C. Cir. 2013) (reversed on jurisdictional grounds).  *Cf. SEC v. Rana Research Inc.*, 8 F.3d

23  1358, 1363 n.4 (9th Cir. 1993).  Indeed, the FPA authorizes the assessment of civil penalties in

24  cases where an entity engages in a scheme to defraud even when the scheme is unprofitable or

25  unsuccessful.  CPAO at P 127.  *See also Kuehnert v. Texstar Corp.*, 412 F.2d 700, 704 (5th Cir.

26  1969) ("The [SEC] may act … under 10(b) … to enjoin a potential fraud or prosecute a fraud that

27  failed, without proof of actual loss to any victim."); *SEC v. Martino*, 255 F. Supp. 2d 268, 287

28  (S.D.N.Y. 2003) ("an attempted manipulation is as actionable as a successful one").  Actions, not

their effects, are central to the question of liability. To find Defendants liable under the FPA and the Anti-Manipulation Rule, the Court need not find that they profited from the conduct or caused an "artificial price" or harm to the market. CPAO at P 129; 16 U.S.C. § 824v(a); 18 C.F.R. § 1c.2. The question of whether Defendants are liable is distinct from, and a precursor to, questions of penalties and profits. The parties presented Defendants' trades, communications, and testimony to the Commission on the issue of liability. CPAO at P 7. Defendants also presented expert analyses to the Commission. *Id.* Following consideration of this evidence, the Commission found Defendants engaged in market manipulation under the FPA and the Anti-Manipulation Rule. *Id.* at P 8. Calculating unjust profits before finding liability would have been premature and unnecessary. Likewise, it is unnecessary to supplement the proposed record before the Court on the question of liability with evidence of unjust profits.

Moreover, a precise calculation of profitability or market harm is unnecessary in determining the amount of civil penalties under FPA Section 316A, which requires only the consideration of "the seriousness of the violation and the efforts of such person to remedy the violation in a timely manner." 16 U.S.C. § 825o-1.[1] "Imposition of a civil penalty is not a mathematical science. Ultimately, it reflects an element of experienced and reasoned judgment on the part of the decisionmaker – a judgment that is reached after evaluating the totality of the evidence." *Clifton Power Corp. v. FERC*, 88 F.3d 1258, 1271-72 (D.C. Cir. 1996) (citing *Flambeau Paper Corp.*, 53 FERC ¶ 61,063, at 61,202 (1990)). The Commission recognized the difficulty of quantifying market harm in this case, but determined it was not necessary to do so because proving harm is not an element of manipulation under either the FPA or the Commission's regulations nor is it essential to assessing "the seriousness of the violation."[2] CPAO at PP 128, 129.

---

[1] While FPA Section 31, 16 U.S.C. § 823b, provides the general procedure for assessing penalties, Section 316A, 16 U.S.C. § 825o-1, provides the maximum penalty amount for violations of Part II of the FPA, including FPA Section 222, and the factors the Commission must consider in determining the amount of the penalty.
[2] As discussed below, the Commission recognizes that the Court has the discretion to consider market harm, although not a statutorily required factor, as part of its penalty determination.

The parties had the opportunity to present evidence and analyses to the Commission on the question of penalties.  In assessing the "seriousness" factor under FPA Section 316A, the Commission found the manipulative scheme was "in fact, serious," as well as "complex" and "widespread," involving tens of thousands of megawatt-hours of electricity and thus affecting the price paid for wholesale electricity in the western United States and the integrity of the nation's wholesale energy markets.  CPAO at PP 130, 132.  Furthermore, the Commission found Defendants made no effort to remedy the violation.  CPAO at P 131.  The Commission found the proposed penalty of $435 million to be considerably less than the maximum permitted under the FPA[3] and noted that, "[a]side from objecting to the imposition of penalties, Barclays presents no alternative penalty calculation."  CPAO at PP 124, 132.  The Commission did not rely on calculations of market harm or profitability in performing its assessment under FPA Section 316A.  Nor is it necessary for the Court to consider new evidence on market harm or profitability in reviewing the assessed civil penalties.

The Commission did consider estimates of market harm in performing a separate, but not statutorily required, analysis under the Commission's Penalty Guidelines.  *See Revised Policy Statement on Penalty Guidelines*, 132 FERC ¶ 61,216 (2010) ("Penalty Guidelines").  The Commission's Penalty Guidelines are modeled on the United States Federal Sentencing Guidelines but apply only to companies and not natural persons.  *Id.* at P 4, § 1A1.1., Application Note 1.  The Penalty Guidelines were issued "in an effort to provide greater fairness, transparency, and consistency in our civil penalty determinations" while providing the Commission with "sufficient flexibility to depart from them whenever [the Commission] deem[s] appropriate."  *Id.* at P 5.  The Commission determined the Penalty Guideline range for Barclays was $278.6 million to $557.2 million.  CPAO at P 124.  This range was based on Enforcement

---

[3] FPA Section 316A permits a civil penalty "of not more than $1 million for each day that such violation continues."  16 U.S.C. § 825o-1.  Staff alleged the unlawful manipulative conduct occurred across 35 monthly products for 655 product days.  CPAO at P 120.  Each manipulative trade constitutes a separate violation.  *Id.* at P 120 n.347.  As the Commission noted, if Defendants engaged in only an average of two or three manipulative trades on each of the 655 product days at issue, that would amount to a maximum penalty under the FPA of well over $1 billion, and perhaps more than $2 billion.  *Id.*

staff's methodology for calculating market harm, which resulted in the amount of $139.3 million. CPAO at P 122.  Defendants did not offer any alternative calculation under the FPA statutory factors or Penalty Guidelines.  CPAO at P 124.

The Commission acknowledged that "'the Penalty Guidelines may not always account for the specific facts and circumstances of every case,' and this 'inevitable feature of a guidelines-based approach to determining penalties' was the reason that 'we include[d] the flexibility to depart as necessary.'"  CPAO at P 125 (quoting Penalty Guidelines at P 32).  Indeed, the Commission determined that the facts in this case warranted an independent civil penalty assessment under FPA Section 316A's statutory factors (as described above).  CPAO at PP 125, 128.  And Barclays itself has acknowledged that the Court is not bound by the Commission's Penalty Guidelines on *de novo* review and may impose any penalty within the pertinent statutory framework.[4]  Here, the statutory factors in FPA Section 316A are those analyzed by the Commission, and they do not require a calculation of market harm or profitability.

Unlike the determination of civil penalties, the calculation of disgorgement is entirely focused on unjust profits or ill-gotten gains.  Having found Defendants liable for violations of the Anti-Manipulation Rule and FPA Section 222, and having assessed civil penalties against Defendants, the Commission considered the question of disgorgement.  CPAO at PP 147-151.  Staff conservatively estimated that Barclays obtained $34.9 million in unjust profits.  Staff arrived at this value by multiplying the volume of physical and financial transactions that settled off the Intercontinental Exchange indices in the alleged manipulation months by the difference in price that resulted from Barclays' trading on that day.[5]  CPAO at PP 147, 150 (citing Staff Report (ECF 1-2) at 62-63, 65).  Barclays argued Enforcement staff's proposal was "'wholly inconsistent with

---

[4] In the Penalty Assessment Order, the Commission agreed with Barclays' position that the Penalty Guidelines would not bind the Court.  CPAO at 126.

[5] Staff's method of determining the price difference resulting from Barclays' physical trading was based on a "preliminary econometric model" that was not before the Commission in the penalty assessment proceeding.  *See* CPAO at P 126.  Despite Barclays' suggestion to the contrary, the Commission did not adopt the preliminary econometric model as a basis for rejecting one of Barclays' "key arguments" on liability.  *See* Joint Status Report (ECF No. 97) at 21 n.11 (citing CPAO at PP 46-49).

the data available to Barclays' but d[id] not propose a different sum." CPAO at P 147.  Nor did

Barclays suggest an alternative approach or introduce an expert report or competing methodology

to dispute staff's calculation.  CPAO at P 150.

In determining the amount of disgorgement, the Commission looked to cases involving

disgorgement in the securities context that recognized the difficulty of separating legal from

illegal profits.  CPAO at P 148.  Given the challenge of precisely calculating unjust profits, the

Commission looked for a reasonable approximation of profits causally connected to the violation.

CPAO at P 149.  *See also SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir.

2010) ("[d]isgorgement need be only a reasonable approximation of profits causally connected to

the violation." (quotation marks and citation omitted)).  In the absence of competing evidence

from Barclays, the Commission considered Enforcement staff's estimate of $34.9 million and

found that staff "took the correct general approach in attempting to calculate 'a reasonable

approximation of the profits.'"  CPAO at P 151.  *Cf. Platforms Wireless Int'l Corp.*, 617 F.3d at

1096 ("Once the SEC establishes a reasonable approximation of defendants' actual profits,

however, . . . the burden shifts to the defendants to 'demonstrate that the disgorgement figure was

not a reasonable approximation.'" (citation omitted)).

## II.      Disgorgement and Penalties Serve Distinct Purposes

Disgorgement is an equitable remedy distinct from the sanction of a civil penalty.  The

Commission may address manipulative conduct under FPA Section 222 "by ordering the

disgorgement of profits and/or imposing a civil penalty."  *Prohibition of Energy Market

Manipulation*, Order No. 670, 114 FERC ¶ 61,047, at P 72 (2006).  A civil penalty punishes

offenders and deters unlawful conduct to maintain the integrity of the markets subject to the

Commission's jurisdiction.  Disgorgement serves to divest a violator of ill-gotten gains.  Not only

are the purposes of these remedies distinct, but the Commission's, and the Court's, authority to

order them derives from different sources.

The Commission's authority to order disgorgement stems from its broad remedial

authority under FPA Section 309, 16 U.S.C. § 825h, a separate provision from those authorizing

assessment of civil penalties with optional *de novo* review in federal district court.  *Compare* FPA

1  Section 309 *with* Sections 31 and 316A. *See Pub. Utilities Comm'n of State of Cal. v. FERC*, 462

2  F.3d 1027, 1047-48 (9th Cir. 2006) (FPA Section 309 authorizes the Commission to require

3  entities that violate the FPA to pay restitution for profits gained as a result of a statutory

4  violation). Likewise, the Court's authority to order disgorgement stems from the Court's broad

5  equitable powers, not from its authority to review *de novo* the Commission's penalty assessment.

6  *See SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998). Given these distinctions, it

7  is appropriate for the Court to treat the issues separately.

8  ### III.   Bifurcation is the Most Efficient Approach

9  Bifurcation is particularly appropriate in this matter where the Court may be able to

10  resolve the bulk of the case through a *de novo* review of the penalty assessment without taking

11  any additional evidence. Separating disgorgement from liability and penalties would allow the

12  Court to resolve this matter as to four of the five defendants, resolve nearly all factual and legal

13  issues in the case, and resolve over ninety percent of the amount in controversy—without having

14  to address any separate factual issues relevant to the remaining (and only) issue on which there

15  may need to be additional discovery. The Court would only reach the issue of disgorgement if

16  and when it found Barclays liable, thus saving the parties from potentially needless litigation.

17  To further streamline the proceeding, the Commission proposes that any experts (and

18  related discovery of those experts) opining on unjust profits in the disgorgement phase limit their

19  analyses to those facts found by the Court during its *de novo* review on the issues of liability and

20  penalties. By deciding these issues first, the Court would have significantly narrowed the

21  relevant factual record thus limiting discovery in the disgorgement phase to only those facts

22  related to unjust profits. For example, the Court could have already had an opportunity to decide

23  the time period that Barclays engaged in manipulation and the accompanying circumstances.

24  These findings could significantly affect the scope and nature of the profits at issue in the

25  disgorgement proceeding. Finally, if the Court agreed with the Commission that Defendants were

26  liable and should pay penalties, those findings would likely facilitate settlement on disgorgement

27  – the relatively smaller monetary aspect of the case that would remain as to only one of the five

28  Defendants.

## IV.   Bifurcation is Fair to Defendants

Barclays will not be prejudiced by deferring the issue of disgorgement until after the Court resolves liability and penalties, because, as discussed above, evidence of unjust profits is not necessary to a determination of liability or penalties.  There is nothing unfair about deferring disgorgement until after the Court first determines these primary issues.  Indeed, given that Barclays did not choose to present the Commission with a competing methodology for calculating disgorgement, Barclays stands to benefit from a second opportunity to present evidence on this limited issue.  By contrast, joining the disgorgement issue with the issues of liability and civil penalties is unfair to the Individual Traders because it would unnecessarily delay disposition of the claims against them while Barclays and the Commission litigate and engage in discovery on disgorgement.  In sum, the Commission's proposed procedure is fair to all parties and further benefits Barclays by offering Barclays an opportunity to present additional evidence on the issue of unjust profits while sparing the Individual Traders from unnecessary litigation.

## V.   The Court Has Discretion to Apply the Penalty Guidelines

Although the Commission believes that bifurcating the *de novo* review of liability and penalties from disgorgement is the best and most expeditious means of resolving this case, the Commission recognizes that the Court, although not statutorily required, may wish to apply the Penalty Guidelines.  If so, bifurcation into a *de novo* review of liability and a subsequent hearing on disgorgement and market harm would be more efficient than considering liability, penalties, and disgorgement in a single proceeding.  That is because the vast majority of facts, legal arguments, and issues in this case involve liability.  Therefore, resolving those liability issues first in a *de novo* review would significantly streamline any subsequent proceeding by providing the later proceeding's factual basis for determining disgorgement and civil penalties.  This outcome would retain bifurcation's significant efficiency benefits while allowing the Court, if it so desires, to consider the market harm caused by Barclays' manipulation in applying the Penalty Guidelines.

## PROPOSED SCHEDULE FOR DISGORGEMENT DETERMINATION

The Commission proposes the following schedule should the Court decide to bifurcate the disgorgement issue from liability and civil penalties:

| Event | Date |
|---|---|
| If the Court determines Barclays is liable for violating the FPA and the Anti-Manipulation Rule, the Commission will produce expert report(s) on the issue of disgorgement. | Sixty (60) days following the Court's issuance of factual findings on the questions of liability and civil penalties. |
| Discovery regarding Commission's expert report(s). | Commences upon production of Commission's expert report(s) and continues for 45 days. |
| Barclays will produce expert report(s) on the issue of disgorgement. | Sixty (60) days following the Commission's expert report(s) on the issue of disgorgement. |
| Discovery regarding Barclays' expert report(s). | Commences upon production of Barclays' expert report(s) and continues for 45 days. |
| Commission will produce expert rebuttal report(s). | Forty-five (45) days following Barclays' production of expert report(s) on the issue of disgorgement. |
| Discovery regarding Commission's expert rebuttal report(s). | Commences upon production of Commission's expert rebuttal report(s) and continues for thirty (30) days. |
| The Court holds a hearing on disgorgement. | Ninety (90) days following production of Commission's expert rebuttal report(s) or at such other time convenient to the Court. |

## CONCLUSION

Bifurcating the Court's *de novo* review of liability and penalties from disgorgement will facilitate the expeditious resolution of the vast majority of factual and legal disputes in this case. The distinct factual issues and legal standards involved in civil penalties and disgorgement supports the Court's separate consideration of them. Bifurcation does not prejudice Defendants but rather offers Barclays the benefit of being able to present evidence on disgorgement.


DATED:  September 3, 2015                FEDERAL ENERGY REGULATORY
                                        COMMISSION

                            By:      /s/ Emily C. Scruggs
                                    EMILY C. SCRUGGS
                                    DAVID APPLEBAUM
                                    WESLEY J. HEATH
                                    MARIA CRISTINA MELENDEZ