THOMAS J. NOLAN (SBN 66992)
Thomas.Nolan@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
Facsimile:    (213) 687-5600

*Please see continuation page for a complete
list of the defendants and their counsel.*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL ENERGY REGULATORY COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>BARCLAYS BANK PLC; DANIEL BRIN; SCOTT CONNELLY; KAREN LEVINE; and RYAN SMITH,<br><br>    Defendants. | CASE NO.: 2:13-cv-02093-TLN-EFB (TEMP)<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO SERVE LIMITED DISCOVERY**<br><br>Date:        December 10, 2015<br>Time:        2:00 p.m.<br>Presiding:   Hon. Troy L. Nunley<br>Courtroom:  2<br>Trial Date:  None Set |

REPLY SUPPORTING MOTION FOR LEAVE TO SERVE LIMITED DISCOVERY

**CONTINUATION SHEET: DEFENDANTS AND THEIR RESPECTIVE COUNSEL**

STEVEN R. GLASER (Admitted *Pro Hac Vice*)
Steven.Glaser@skadden.com
BORIS BERSHTEYN (Admitted *Pro Hac Vice*)
Boris.Bershteyn@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:     (212) 735-3000
Facsimile:      (212) 735-2000

PATRICK FITZGERALD (Admitted *Pro Hac Vice*)
Patrick.Fitzgerald@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
Telephone:     (312) 407-0700
Facsimile:      (312) 407-0411

JOHN N. ESTES III (Admitted *Pro Hac Vice*)
John.Estes@skadden.com
DONNA M. BYRNE (Admitted *Pro Hac Vice*)
Donna.Byrne@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone:     (202) 371-7000
Facsimile:      (202) 393-5760

GREGORY A. MARKEL (Admitted *Pro Hac Vice*)
Greg.Markel@cwt.com
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone:     (212) 504-6000
Facsimile:      (212) 504-6666

PAUL J. PANTANO JR. (Admitted *Pro Hac Vice*)
Paul.Pantano@cwt.com
JODI L. AVERGUN (Admitted *Pro Hac Vice*)
Jodi.Avergun@cwt.com
CADWALADER, WICKERSHAM & TAFT LLP
700 Sixth Street, N.W.
Washington, D.C. 20001
Telephone:     (202) 862-2410
Facsimile:      (202) 862-2400

Attorneys for BARCLAYS BANK PLC

REPLY SUPPORTING MOTION FOR LEAVE TO SERVE LIMITED DISCOVERY

**CONTINUATION SHEET:  DEFENDANTS AND THEIR RESPECTIVE COUNSEL**

SETH P. WAXMAN (Admitted *Pro Hac Vice*)
Seth.Waxman@wilmerhale.com
DAN M. BERKOVITZ (Admitted *Pro Hac Vice*)
Dan.Berkovitz@wilmerhale.com
JONATHAN G. CEDARBAUM (Admitted *Pro Hac Vice*)
Jonathan.Cedarbaum@wilmerhale.com
HEATHER M. ZACHARY (Admitted *Pro Hac Vice*)
Heather.Zachary@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone:     (202) 663-6000
Facsimile:     (202) 663-6363

MARK C. KALPIN (Admitted *Pro Hac Vice*)
Mark.Kalpin@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone:     (617) 526-6000
Facsimile:     (617) 526-5000

Attorneys for BARCLAYS BANK PLC


LESLIE M. WERLIN (SBN 67994)
lwerlin@mcguirewoods.com
McGUIREWOODS LLP
1800 Century Park East, 8th Floor
Los Angeles, California 90067
Telephone:     (310) 315-8200
Facsimile:     (310) 315-8210

TODD MULLINS (Admitted *Pro Hac Vice*)
tmullins@mcguirewoods.com
McGUIREWOODS LLP
2001 K Street, N.W.
Washington, D.C. 20006-1040
Telephone:     (202) 857-1752
Facsimile:     (202) 828-3320

ALLISON D. CHARNEY (Admitted *Pro Hac Vice*)
acharney@mcguirewoods.com
McGUIREWOODS LLP
1345 Avenue of the Americas, 7th Floor
New York, New York 10105
Telephone:     (212) 548-2166
Facsimile:     (212) 715-6279

Attorneys for DANIEL BRIN
and SCOTT CONNELLY

REPLY SUPPORTING MOTION FOR LEAVE TO SERVE LIMITED DISCOVERY

**CONTINUATION SHEET:  DEFENDANTS AND THEIR RESPECTIVE COUNSEL**

HOLLY A. HOUSE (SBN 136045)
hollyhouse@paulhastings.com
PAUL HASTINGS LLP
55 Second Street, Twenty-Fourth Floor
San Francisco, California 94105
Telephone:     (415) 856-7075
Facsimile:      (415) 856-7175


MICHAEL L. SPAFFORD (Admitted *Pro Hac Vice*)
michaelspafford@paulhastings.com
VICTORIA L.T. EARLS (Admitted *Pro Hac Vice*)
victoriaearls@paulhastings.com
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C. 20005
Telephone:     (202) 551-1700
Facsimile:      (202) 373-1705

Attorneys for KAREN LEVINE
and RYAN SMITH

---

REPLY SUPPORTING MOTION FOR LEAVE TO SERVE LIMITED DISCOVERY

## **ARGUMENT**

Each of the arguments in the Federal Energy Regulatory Commission's ("FERC" or the "Commission") opposition to limited discovery (Dkt. 122)[1] only underscores why limited discovery is essential to Defendants' ability to fully and fairly oppose FERC's forthcoming motion to affirm.

FERC does not deny that Defendants were afforded no opportunity to take discovery, much less have a hearing before an independent trier of fact, prior to issuing its order assessing civil penalties. (*See* Dkt. 118 at 1.) At no point during the limited agency proceedings could Defendants issue subpoenas or employ other tools for compelling information from third parties unwilling to volunteer information, including persons who once were, but are no longer, employed at Barclays. FERC's contention that Defendants "could have presented interpretations [of facts] by . . . third-parties" (Dkt. 122 at 6) is therefore fallacious, and inconsistent with FERC's prior representations and the expectations of the parties. (*See* AR01029 (FERC Staff's Reply to Answers to the Order to Show Cause) at n.333 ("As staff has consistently explained to Barclays, the Order to Show Cause process does not entitle Barclays to conduct discovery, particularly of internal staff analysts. If the Commission determines to send this matter to federal court . . . Barclays and the individual traders will have the opportunity to conduct appropriate discovery."); *see also* Dkt. 1-1 (Order Assessing Civil Penalties) at 3 (Defendants timely elected the procedures of Federal Power Act section 31(d)(3), "pursuant to which the Commission first shall assess a penalty (without formal trial-type administrative adjudication)").)

FERC's argument places Defendants in a Catch-22: Because Defendants presented a set of facts in their Answer to the Order to Show Cause, FERC argues that Defendants had all the process to which they are entitled and thus should not have discovery in this Court. (Dkt. 122 at 3, 6-7, 10-11.) But where Defendants did not address or present facts—even where Defendants could not

---

[1] References to documents electronically filed in the above-captioned matter are cited herein as "Dkt. ___" and pin cites to those documents refer to the pagination of the ECF-applied header. References to the administrative record filed on November 2, 2015 (*see* Dkt. 115) are cited herein by page number as "AR____."

possibly have addressed a fact because it was not presented to them—FERC argues that they missed their chance and, again, should not have the opportunity for discovery. (*Id.* at 5-6.) Such a position is clearly at odds with procedural fairness and due process, and is devoid of supporting legal authority.

FERC also does not deny that the administrative record is a mere subset of the investigative file compiled by FERC enforcement staff, and that Defendants have never seen and therefore have never had an opportunity to review the investigative file to determine whether the administrative record omits relevant information. Nor does it deny that the investigative file contains statements FERC itself elicited from third parties interpreting Defendants' communications—the very communications on which FERC's liability finding relies—and that FERC then omitted these statements from the administrative record. Given this context, FERC's proclamation that Defendants' communications simply "do not require interpretation" (Dkt. 122 at 5): (i) is specious, as FERC was required to interpret these communications to support its theory of liability; (ii) is belied by its decision to seek statements from third parties concerning those communications; and (iii) provides no justification for denying Defendants access to the investigative file.

FERC enforcement staff selected the material it wanted FERC to see, and, by its own admission, omitted copious amounts of material. It is now asking this Court to affirm the penalty assessment on the basis of that same, self-selected set of material. Before the Court considers affirming FERC's penalty assessment order on the basis of FERC's purported administrative record, the Court should, at a minimum, allow Defendants the opportunity to contest whether the administrative record filed by FERC includes all appropriate and necessary materials from its investigative file. FERC enforcement staff may very well argue that what it chose to show FERC in the form of the administrative record was the most salient and relevant material from the investigative record. The problem with this argument is that it places the FERC enforcement staff in the role as sole arbiter as to what is relevant and therefore what the Court and Defendants are allowed to see. This cannot possibly be consistent with the *de novo* review to which Defendants are entitled and underscores the extent to which Defendants' due process rights are being infringed.

A further example of FERC's self-selective process is provided by its refusal to grant Defendants access to its "preliminary econometric model," which is especially troubling given that this model—FERC's current assertion to the contrary notwithstanding—served as the cornerstone of FERC's liability assessment. The penalty assessment order concluded that FERC enforcement staff "performed correctly" a calculation of "harm to the market," and then assessed *both* liability[2] and a draconian penalty against Defendants on the basis of that calculation. (Dkt. 1-1 at 70.) The FERC enforcement staff's calculation, in turn, was made using a "preliminary econometric model." (Dkt. 1-2 at 66.) Yet FERC will not produce that model and any underlying support as part of the discovery process because the staff purportedly "did not present its model to the Commission . . . and only generally described the methodology it used." (Dkt. 122 at 4.) The upshot of FERC's position is that the Commission can (i) assess liability and base a penalty on the results of a calculation performed by its enforcement staff using a preliminary econometric model to which the Commission had no access and therefore no means to assess its reliability or accuracy, and then (ii) ask this Court to affirm that penalty without allowing either this Court or Defendants to review the model—all through the simple artifice of excluding the model from the "administrative record." It is difficult to imagine a position more at odds with this Court's statutory mandate for "review de novo" of "the facts involved." 16 U.S.C. § 823b(d)(3)(B).

FERC claims that Defendants' limited discovery requests "are overbroad" because the investigative file may include privileged information. (Dkt. 122 at 2-4.) However, that concern is easily addressed. As in any litigation, to the extent any document in the investigative file is privileged, FERC can object to production of that particular document and produce a log of documents over which privilege is claimed—an objection this Court can then address in the regular course. The potential presence of *some* privileged material in the investigative file (FERC does not indicate how much of the material would need to be withheld for privilege or under what theory these records would even be privileged) neither renders Defendants' requests "overbroad" nor

---

[2] The preliminary econometric model is indisputably critical to FERC's liability assessment, which is based on alleged manipulation of the ICE Index. (*See* Dkt. 1-2 (FERC Staff Report) at 40, 65-68; Dkt. 1-1 at 39 & n.189, 75-77.)

justifies withholding the *entire* file—and FERC proffers no authority for that result. *Bess v. Cate*, 422 F. App'x 569, 572 (9th Cir. 2011) (upholding magistrate judge's imposition of attorney's fees and costs where "[d]espite well-established law that parties seeking to invoke privileges are not permitted to provide mere blanket objections to discovery requests, [defendants] lodged blanket objections and failed to 'provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection.'" (quoting *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1148 (9th Cir. 2005))); *see also United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982) ("[W]e have made clear that the attorney-client privilege may not be tossed as a blanket over an undifferentiated group of documents. The privilege must be specifically asserted with respect to particular documents.") (citation omitted), *cert. denied*, 466 U.S. 944 (1984).

The inconsistency of FERC's position on basic concepts of procedural fairness is even more acute with respect to Defendants' request for trading data. The heart of FERC's case against Defendants is that they engaged in particular "manipulative transactions" in energy products. (*E.g.*, Dkt. 1-1 at 18-19 ("The activity alleged by OE Staff to be manipulative involved the trading of physical electric energy products."); *id.* at 68-69 n.347 ("Here, the evidence indicates that [Defendants'] unlawful scheme required the traders to conduct multiple manipulative transactions on many of the 655 days at issue.").) But when Defendants seek to discover which transactions FERC deems manipulative, FERC denies that "transaction-level data" have any relevance. (Dkt. 122 at 7.) That position is unsustainable, and creates a result in which FERC's enforcement staff— as opposed to either the full Commission or this Court—has the sole authority to determine which facts are relevant to FERC's proposed assessment of nearly $500 million in penalties against Defendants. FERC's insistence that transaction-level data "'may'" not debunk the alleged manipulative scheme (Dkt. 122 at 8 (quoting *Bourjaily v. United States*, 483 U.S. 171, 180-82 (1987))) only highlights the very foundation of FERC's arguments here:  FERC alone should decide what this Court and Defendants are allowed to see. FERC can argue that certain information is ultimately not relevant or does not impact FERC's findings, but those are arguments

and positions that FERC is entitled to take in the course of the litigation. They are not appropriate grounds to resist pre-trial discovery of this data.

Similarly, FERC's attempt to deem irrelevant "unconsummated" ICE transaction data (Dkt. 122 at 8-9) is understandable given that that data will thoroughly undermine its theory of liability. The gravamen of FERC's theory is that Defendants made uneconomic, money-losing trades to artificially move the ICE Index to benefit related positions. For this theory to hold, however, one would expect Defendants to have transacted at the highest or lowest bids and offers available (depending on which way they wanted the ICE Index to move), as those bids and offers would have had the greatest impact on the ICE Index. As FERC notes, after the proceedings at FERC were completed, Defendants were able to obtain from ICE *some* of the data for both consummated and unconsummated ICE transactions. (Dkt. 122 at 8 n.8.) The unconsummated ICE transaction data received thus far has proven inconsistent with FERC's theory of liability. (*See* AR00178-82 (Barclays' Answer to Order to Show Cause).) Accordingly, it is critical to the defense to obtain the balance of this data, as Defendants are confident that it will undermine FERC's case. Relatedly, the unmasked data that Defendants seek will reveal the potential or actual counterparties whose bids or offers were available; this data, too, is highly relevant as Barclays could only engage in transactions with counterparties with whom it had credit arrangements. The unmasked data, combined with the unconsummated ICE transaction data, Defendants submit, will prove FERC's manipulation theory to be without merit. But, for purposes of this motion, the Court need not rule upon the import of the data itself. Rather, Defendants have more than sustained their burden of demonstrating that this information is highly relevant, and thus the Court should permit Defendants to obtain it.

FERC's assertion that bids and offers by other market participants are "irrelevant" (Dkt. 122 at 9) is similarly incorrect. If Defendants endeavored to buy (bid) or sell (offer) at the same prices as did other market participants, then FERC's fundamental factual contention—that Defendants traded in a manipulative manner—will be less probable (if not wholly refuted). *See, e.g.*, *U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.*, 593 F. App'x 32, 36 (2d Cir. 2014) (allowing discovery of non-party market participants on grounds that "such documents

1 could shed light on the perceptions and reactions of other market participants to the alleged manipulation, provide a benchmark for the behavior of a non-manipulated market, and inform an analysis of the scope of the pertinent market").

Finally, FERC's assertion that physical delivery of power has no jurisdictional significance is belied by its own oral representation to this Court that "there was delivery in this case." (Dkt. 86 at 7:4.) This Court then referenced "representations made [by the Commission] at the hearing" when it denied Defendants' motion to dismiss. (Dkt. 88 at 23-24.) FERC cannot ask this Court to rely on FERC's representations to avoid a motion to dismiss, and then seek to avoid discovery into the factual basis for those representations.

## CONCLUSION

For the reasons stated in Defendants' motion for leave to serve limited discovery and those set forth herein, the Court should enter an order granting Defendants leave to take the limited discovery described in the motion and adjourn the deadline for opposing FERC's motion to affirm by 90 days—a period reasonably calculated to secure factual responses to the limited discovery.

DATED: December 3, 2015

        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

        By:    */s/ Thomas J. Nolan*
              Thomas J. Nolan
        Attorneys for BARCLAYS BANK PLC

DATED: December 3, 2015

        CADWALADER, WICKERSHAM & TAFT LLP

        By: /s/ *Gregory A. Markel (as authorized on 12/03/2015)*
              Gregory A. Markel
        Attorneys for BARCLAYS BANK PLC

DATED: December 3, 2015

        WILMER CUTLER PICKERING HALE AND DORR LLP

        By: */s/ Seth P. Waxman (as authorized on 12/03/2015)*
              Seth P. Waxman
        Attorneys for BARCLAYS BANK PLC

1  DATED: December 3, 2015

2                                    McGUIREWOODS LLP

3                                    By: */s/ Todd Mullins  (as authorized on 12/03/2015)*
4                                              Todd Mullins
                                     Attorneys for DANIEL BRIN and SCOTT CONNELLY

5  DATED: December 3, 2015

6                                    PAUL HASTINGS LLP

7                                    By: */s/ Michael L. Spafford  (as authorized on 12/03/2015)*
                                              Michael L. Spafford
8                                    Attorneys for KAREN LEVINE and RYAN SMITH