THOMAS J. NOLAN (SBN 66992)
Thomas.Nolan@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:     (213) 687-5000
Facsimile:     (213) 687-5600

*Please see continuation page for a complete
list of the defendants and their counsel.*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL ENERGY REGULATORY COMMISSION, | CASE NO.: 2:13-cv-02093-TLN-EFB (TEMP) |
| Plaintiff, | **(1) DEFENDANTS' NOTICE OF MOTION AND MOTION FOR A STAY OF DISTRICT COURT PROCEEDINGS PENDING APPEAL; and (2) DECLARATION OF THOMAS J. NOLAN IN SUPPORT THEREOF (lodged under separate cover).** |
| v. | |
| BARCLAYS BANK PLC; DANIEL BRIN; SCOTT CONNELLY; KAREN LEVINE; and RYAN SMITH, | |
| Defendants. | Date:          February 11, 2016<br>Time:          2:00 p.m.<br>Presiding:     Hon. Troy L. Nunley<br>Courtroom:  2<br>Trial Date:   None Set |

NOTICE OF MOTION AND MOTION FOR A STAY OF DISTRICT COURT PROCEEDINGS PENDING APPEAL

**CONTINUATION SHEET: DEFENDANTS AND THEIR RESPECTIVE COUNSEL**

STEVEN R. GLASER (Admitted *Pro Hac Vice*)
Steven.Glaser@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:     (212) 735-3000
Facsimile:     (212) 735-2000

PATRICK FITZGERALD (Admitted *Pro Hac Vice*)
Patrick.Fitzgerald@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
Telephone:     (312) 407-0700
Facsimile:     (312) 407-0411

JOHN N. ESTES III (Admitted *Pro Hac Vice*)
John.Estes@skadden.com
DONNA M. BYRNE (Admitted *Pro Hac Vice*)
Donna.Byrne@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone:     (202) 371-7000
Facsimile:     (202) 393-5760

GREGORY A. MARKEL (Admitted *Pro Hac Vice*)
Greg.Markel@cwt.com
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone:     (212) 504-6000
Facsimile:     (212) 504-6666

PAUL J. PANTANO JR. (Admitted *Pro Hac Vice*)
Paul.Pantano@cwt.com
JODI L. AVERGUN (Admitted *Pro Hac Vice*)
Jodi.Avergun@cwt.com
CADWALADER, WICKERSHAM & TAFT LLP
700 Sixth Street, N.W.
Washington, D.C. 20001
Telephone:     (202) 862-2410
Facsimile:     (202) 862-2400

Attorneys for BARCLAYS BANK PLC

1   **CONTINUATION SHEET:  DEFENDANTS AND THEIR RESPECTIVE COUNSEL**

2   SETH P. WAXMAN (Admitted *Pro Hac Vice*)
    Seth.Waxman@wilmerhale.com
3   DAN M. BERKOVITZ (Admitted *Pro Hac Vice*)
    Dan.Berkovitz@wilmerhale.com
4   JONATHAN G. CEDARBAUM (Admitted *Pro Hac Vice*)
    Jonathan.Cedarbaum@wilmerhale.com
5   HEATHER M. ZACHARY (Admitted *Pro Hac Vice*)
    Heather.Zachary@wilmerhale.com
6   WILMER CUTLER PICKERING HALE AND DORR LLP
    1875 Pennsylvania Avenue, N.W.
7   Washington, D.C. 20006
    Telephone:     (202) 663-6000
8   Facsimile:     (202) 663-6363

9   MARK C. KALPIN (Admitted *Pro Hac Vice*)
    Mark.Kalpin@wilmerhale.com
10  WILMER CUTLER PICKERING HALE AND DORR LLP
    60 State Street
11  Boston, Massachusetts 02109
    Telephone:     (617) 526-6000
12  Facsimile:     (617) 526-5000

13  Attorneys for BARCLAYS BANK PLC

14
    LESLIE M. WERLIN (SBN 67994)
15  lwerlin@mcguirewoods.com
    McGUIREWOODS LLP
16  1800 Century Park East, 8th Floor
    Los Angeles, California 90067
17  Telephone:     (310) 315-8200
    Facsimile:     (310) 315-8210
18
    TODD MULLINS (Admitted *Pro Hac Vice*)
19  tmullins@mcguirewoods.com
    McGUIREWOODS LLP
20  2001 K Street, N.W.
    Washington, D.C. 20006-1040
21  Telephone:     (202) 857-1752
    Facsimile:     (202) 828-3320
22
    ALLISON D. CHARNEY (Admitted *Pro Hac Vice*)
23  acharney@mcguirewoods.com
    McGUIREWOODS LLP
24  1345 Avenue of the Americas, 7th Floor
    New York, New York 10105
25  Telephone:     (212) 548-2166
    Facsimile:     (212) 715-6279
26
    Attorneys for DANIEL BRIN
27  and SCOTT CONNELLY

28

1 | **CONTINUATION SHEET:  DEFENDANTS AND THEIR RESPECTIVE COUNSEL**

2 | HOLLY A. HOUSE (SBN 136045)
hollyhouse@paulhastings.com
3 | PAUL HASTINGS LLP
55 Second Street, Twenty-Fourth Floor
4 | San Francisco, California 94105
Telephone:     (415) 856-7000
5 | Facsimile:     (415) 856-7100

6 | MICHAEL L. SPAFFORD (Admitted *Pro Hac Vice*)
michaelspafford@paulhastings.com
7 | VICTORIA T. EARLS (Admitted *Pro Hac Vice*)
victoriaearls@paulhastings.com
8 | PAUL HASTINGS LLP
875 15th Street, N.W.
9 | Washington, D.C. 20005
Telephone:     (202) 551-1700
10 | Facsimile:     (202) 373-1705

11 | Attorneys for KAREN LEVINE
and RYAN SMITH

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **TO THE CLERK OF THE ABOVE-ENTITLED COURT, ALL PARTIES AND THEIR**

2  **ATTORNEYS OF RECORD:**

3    **PLEASE TAKE NOTICE** that on February 11, 2016, or as soon thereafter as the parties

4  may be heard, in the courtroom of the Honorable Troy L. Nunley, located at 501 I Street,

5  Sacramento, California 95814, defendants Barclays Bank PLC, Daniel Brin, Scott Connelly, Karen

6  Levine, and Ryan Smith (together, "Defendants") will, and hereby do, respectfully move the Court

7  for an order staying the proceedings pending resolution of Defendants' appeal to the United States

8  Court of Appeals for the Ninth Circuit.  The motion is based on this Notice, the Memorandum of

9  Points and Authorities attached hereto, the accompanying Declaration of Thomas J. Nolan, all

10 pleadings and papers filed in this action, and such additional papers and arguments as may be

11 presented at, or in connection with, the hearing.

12 DATED:  December 29, 2015

13

14                   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

15                   By:  _____*/s/ Thomas J. Nolan*_____
                                 Thomas J. Nolan
16                          Attorneys for BARCLAYS BANK PLC

17 DATED:  December 29, 2015

18

19                   CADWALADER, WICKERSHAM & TAFT LLP

20                   By:  */s/ Gregory A. Markel (as authorized on 12/29/2015)*
                                Gregory A. Markel
21                          Attorneys for BARCLAYS BANK PLC

22 DATED:  December 29, 2015

23

24                   WILMER CUTLER PICKERING HALE AND DORR LLP

25                   By:  */s/ Seth Waxman  (as authorized on 12/29/2015)*
                                Seth P. Waxman
26                          Attorneys for BARCLAYS BANK PLC

27

28

---

NOTICE OF MOTION AND MOTION FOR A STAY OF DISTRICT COURT PROCEEDINGS PENDING APPEAL

1  DATED:  December 29, 2015

2                                           McGUIREWOODS LLP

3
                                            By:  */s/ Todd Mullins  (as authorized on 12/29/2015)*
4                                                   Todd Mullins
                                            Attorneys for DANIEL BRIN and SCOTT CONNELLY
5  DATED:  December 29, 2015

6
                                            PAUL HASTINGS LLP
7
                                            By:  */s/ Michael L. Spafford  (as authorized on 12/29/2015)*
8                                                   Michael L. Spafford
                                            Attorneys for KAREN LEVINE and RYAN SMITH
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR A STAY OF DISTRICT COURT PROCEEDINGS PENDING APPEAL

**PRELIMINARY STATEMENT**

Defendants have filed a Notice of Appeal in the United States Court of Appeals for the Ninth Circuit requesting review of this Court's Scheduling Order. That Order raises complex, threshold legal issues of first impression in this Circuit. Given the importance of these issues and the constitutional, reputational, and legal harm that Defendants will suffer absent a stay, Defendants respectfully move the Court for an order staying the proceedings pending resolution of Defendants' appeal.

**STATEMENT OF FACTS**

From nearly the outset of this litigation, the parties have disputed the nature of actions brought under Federal Power Act ("FPA") subsection 31(d)(3), 16 U.S.C. § 823b(d)(3), including the availability and timing of discovery, the right to a jury trial, and the propriety of bifurcating the proceedings. Dkt. 63 at 12:25-13:8.[1]

In its scheduling order issued on October 2, 2015 (the "Scheduling Order"), the Court rejected Defendants' contention that FPA subsection 31(d) provides for plenary adjudication. *See* Dkt. 106. Instead, it endorsed FERC's position that the Court's review of liability and the assessed civil penalties should be bifurcated from its determination of disgorgement, and that the FPA allows the Court to conduct a summary proceeding to determine whether FERC's penalty assessment "shall be affirmed, vacated, or modified," based solely on a subset of FERC's investigative record and without first allowing Defendants discovery. *Id.* at 2. In addition, the Court rejected the parties' demands for a jury trial.[2] *Id.* The proper interpretation of the FPA and the procedures that govern a judicial "action" seeking to enforce a civil penalty assessment under

---

[1] The parties set forth their positions on these matters in joint status reports filed with the district court, Dkts. 52, 97, as well as in briefs addressing bifurcation, Dkts. 101, 103, which were filed at the request of the Court, *see* Dkt. 98. Defendants also provided a more detailed presentation of their positions on these questions in a proposed "Memorandum of Points and Authorities On the Federal Power Act's Judicial Procedures For Civil Penalty Assessment Actions," which Defendants sought leave to file. Dkt. 102. The Court denied leave. Dkt. 106, at 1 n.1.

[2] Defendants' request for clarification of the procedures that would govern this action was denied. Dkt. 112. In addition, Defendants' motion for leave to take limited discovery in order to respond to FERC's Motion to Affirm Civil Penalties, Dkt. 118, also was denied. Dkt. 133.

1  subsection 31(d)(3) are issues of first impression in this Circuit, and the only other District Court to

2  consider them reached a contrary conclusion.  *See FERC v. MacDonald*, 862 F. Supp. 667 (D.N.H.

3  1994).  Accordingly, these issues are ripe for appellate review.

4      Defendants therefore have filed a notice of appeal in the United States Court of Appeals for

5  the Ninth Circuit requesting review of the Court's Scheduling Order, and its order denying their

6  motion for clarification and amendment of the Scheduling Order.  *See* Dkt. 119.  This appeal is

7  pending.  *See* Dkt. 128; *FERC v. Barclays Bank PLC*, No. 15-17251 (9th Cir. filed Nov. 9, 2015).

8  <u>**ARGUMENT**</u>

9      It is for this Court, in the first instance, to determine whether there should be a stay pending

10  an appeal to the Ninth Circuit.  *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005)

11  ("A district court has discretionary power to stay proceedings in its own court[.]"); *Mediterranean*

12  *Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (district court has inherent

13  authority to issue stay, reviewed only for abuse of discretion).  Four factors determine whether the

14  Court should grant a such a stay:

15      (1) whether the stay applicant has made a strong showing that he is likely to
16  succeed on the merits; (2) whether the applicant will be irreparably injured absent
    a stay; (3) whether issuance of the stay will substantially injure the other parties
17      interested in the proceeding; and (4) where the public interest lies.

18  *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012) (quoting *Nken v. Holder*, 556 U.S. 418, 434

19  (2009)).  In applying these factors, the Ninth Circuit employs two interrelated legal tests.  The first

20  asks whether the movant can demonstrate a strong likelihood of success on the merits and a

21  probability of irreparable injury if the stay is not granted.  *See Golden Gate Rest. Ass'n v. City &*

22  *Cnty. of S.F.*, 512 F.3d 1112, 1115 (9th Cir. 2008); *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th

23  Cir. 2011) (per curiam) (possibility of irreparable injury replaced by probability of irreparable

24  injury).  The second considers whether the movant "demonstrate[d] that serious legal questions are

25  raised and that the balance of hardships tips sharply in its favor."  *Golden Gate*, 512 F.3d at 1115

26  (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983)).  These tests are not absolute, and

27  instead represent "a sliding scale in which the required degree of irreparable harm increases as the

28  probability of success decreases."  *Id.* (quoting *Nat. Res. Def. Council, Inc. v. Winter*, 502 F.3d

NOTICE OF MOTION AND MOTION FOR A STAY OF DISTRICT COURT PROCEEDINGS PENDING APPEAL

859, 862 (9th Cir. 2007)); *see also id.* at 1119 (reiterating that if either the likelihood of success on the merits or the balance of hardships weighs in the movant's favor, a stay is appropriate).[3]

Here, the legal standard enunciated in this Circuit supports staying the proceedings pending resolution of the appeal. First, for the reasons cited in filings previously submitted to this Court, Defendants respectfully submit that they are likely to succeed on the merits. But even if that were not the case, Defendants' appeal nevertheless presents serious threshold legal questions of first impression in this Circuit regarding the nature of actions brought under the FPA and the procedures that govern them. In addition, a stay of this proceeding is required to protect Defendants' constitutional and statutory rights, including their right to a jury trial, the right to call witnesses, offer evidence, and cross-examine FERC's witnesses, and the right to discovery. These rights vastly outweigh any potential hardship to FERC if the Court stays its proceedings during the pendency of the appeal.

## A. Defendants Are Likely To Succeed On The Merits And, At A Minimum, Their Appeal Presents Serious Legal Questions

To justify a stay, Defendants "need not demonstrate that it is more likely than not that they will win on the merits." *Leiva-Perez*, 640 F.3d at 966. Instead, Defendants need only demonstrate "a substantial case on the merits," which in turn means a "fair chance of success on the merits." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987)); *see also id.* at 967-68 ("Regardless of how one expresses the [likelihood of success] requirement, the idea is that in order to justify a stay, a petitioner must show, at a minimum, that she has a substantial case for relief on the merits."); *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) ("Serious questions need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance of success on the merits.'" (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (en banc))). "Serious questions are 'substantial, difficult and doubtful, as to make them

---

[3]      The Ninth Circuit has recognized that, although the Supreme Court rejected its earlier treatment of the irreparable harm factor as too lenient, the sliding scale approach survived. *See Leiva-Perez*, 640 F.3d at 964-66.

NOTICE OF MOTION AND MOTION FOR A STAY OF DISTRICT COURT PROCEEDINGS PENDING APPEAL

a fair ground for litigation and thus for more deliberative investigation.'"  *Gilder*, 936 F.2d at 422 (quoting *Marcos*, 862 F.2d at 1362).

This "substantial case on the merits" standard is met here.  This case presents questions of first impression in this Circuit concerning the statutory and Constitutional requirements of the FPA which requires FERC to "institute an action" in federal district court, where Defendants can receive "review de novo [of] the law and the facts involved."  16 U.S.C. § 823b(d)(3).

Here, Defendants respectfully maintain that they are likely to succeed in the Ninth Circuit on the merits.  Defendants have repeatedly stated in number court filings that they believe they have a statutory and constitutional right to a plenary adjudication of FERC's civil penalty assessment governed by the Federal Rules of Civil Procedure.[4]

Although the Court has rejected the positions advocated by Defendants, *see* Dkts. 108, 112, 133, at a minimum Defendants' filings have raised a substantial issue of first impression that implicates "serious legal questions."  *First*, the proper interpretation of FPA subsection 31(d)(3) is an issue of first impression.  *Second*, the Court's reading of the FPA implicates constitutional concerns.  And *third*, the only other district court to speak to this issue came to a contrary conclusion. As such, there is at least a fair prospect that the Ninth Circuit will agree with Defendants' interpretation.  This is sufficient to meet the required showing for a stay.  *See, e.g.*, *Leiva-Perez*, 640 F.3d at 967 ("fair prospect" of success is sufficient); *Golden Gate*, 512 F.3d at 1116 ("probability" of success is sufficient).

Indeed, in analogous circumstances, both this court and the Ninth Circuit have determined that where a question of statutory interpretation is undecided or otherwise unclear, a substantial question (at a minimum) is present, and a stay is warranted.  In *Honig*, the Ninth Circuit held that there was a serious legal question whether the Education for All Handicapped Children Act ("EAHCA"), "which provides funds to states for the education of handicapped children with certain conditions attached," incorporated state law seismic safety standards.  *See Students of*

---

[4]    *See, e.g.,* Joint Status Report (Dkt. 52), Amended Joint Status Report (Dkt. 97), Proposed Memorandum of Points and Authorities on the Federal Power Act's Judicial Procedures For Civil Penalty Assessment Actions (Dkt. 102), Motion for Clarification and Amendment (Dkt. 108), and Reply In Support of Motion for Clarification and Amendment (Dkt. 111).

NOTICE OF MOTION AND MOTION FOR A STAY OF DISTRICT COURT PROCEEDINGS PENDING APPEAL

1   *California Sch. for the Blind v. Honig*, 736 F.2d 538, 544-46 (9th Cir. 1984).   The Ninth Circuit

2   reached this conclusion after considering the statutory text, which guaranteed handicapped children

3   the right to "free appropriate education" that incorporated the standards of state agencies but "did

4   not expressly provide for seismic safety."  *Id.* at 544.  The Ninth Circuit determined that in the

5   absence of cases directly on point, the appellants had presented "a strong argument that [the

6   EAHCA] incorporates state law concerning seismic safety standards." *Id.* at 545-46.  The disputed

7   interpretation of the statute thus was sufficient to present a serious legal question that weighed in

8   favor of a stay. *See id.* at 546.[5]

9        This court reached a similar conclusion in *Bridge Fund Capital Corp. v. FastBuck*

10  *Franchise Corp.*, No. 08-cv-00767-MCE-EFB, 2009 WL 1325823 (E.D. Cal. May 12, 2009).

11  There, the court recognized its interpretation and application of the Federal Arbitration Act

12  ("FAA") might be different than that reached by the Ninth Circuit on appeal.  *See id.* at *3.

13  Specifically, the court understood that its decision not to dismiss a claim on the ground that it was

14  subject to arbitration was "quite substantial and required [the] Court to reach conclusions with

15  which the Ninth Circuit could disagree" because the court's decision may have been

16  "irreconcilable with the FAA." *Id.*  The court therefore concluded that there was a "substantial

17  issue" that warranted a stay. *See id.*

18       Determining what procedures control a district court "action" under FPA subsection

19  31(d)(3) will have profound implications on the course of this proceeding and warrants prompt

20  consideration by the Ninth Circuit, especially where (as here) FERC seeks to impose almost $500

21  million in civil fines against Defendants, and no other district judge in this Circuit, or in any court

22  of appeals, has interpreted this provision of the FPA.  Defendants' appeal therefore presents serious

23  legal questions and substantial issues that strongly weigh in favor of a stay.

24

25  _____

26  [5]       Although the court in *Honig* was reviewing a preliminary injunction order, *see* 736 F.2d at
   542-43, the Ninth Circuit applies the same analysis when reviewing a motion for a stay, *see Leiva-*
27  *Perez*, 640 F.3d at 964 (applying "'the same standards employed by district courts in evaluating
   motions for preliminary injunctive relief' to . . . stay requests"); *Golden Gate*, 512 F.3d at 1115-16
28  (stay test was "originally formulated for granting a preliminary injunction").

## B.   Defendants Will Be Irreparably Harmed Absent A Stay

The Court's decision threatens Defendants with three types of irreparable harm absent a stay pending appellate review: constitutional, reputational, and legal.

### 1.  Constitutional Injury

Denial of constitutional rights constitutes irreparable injury.  "Unlike monetary injuries, constitutional violations cannot be adequately remedied through damages[.]"  *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058-59 (9th Cir. 2009).[6]  Violations of procedural rights guaranteed by the Constitution may be no less irreparable than violations of substantive rights:

> If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented.  At a later hearing, an individual's possessions can be returned to him if they were unfairly or mistakenly taken in the first place.  Damages may even be awarded to him for the wrongful deprivation.  But no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred.  "This Court has not . . . embraced the general proposition that a wrong may be done if it can be undone."

*Fuentes v. Shevin*, 407 U.S. 67, 81-82 (1972) (quoting *Stanley v. Illinois*, 405 U.S. 645, 647 (1972)).  Thus, as the Ninth Circuit has explained, irreparable harm exists if "the government's reading of [the relevant statute] raises serious constitutional concerns."  *Rodriguez*, 715 F.3d at 1145.

Defendants face irreparable harm from the denial of both due process and their jury trial right.

### a.  Defendants Have Been Denied Due Process

Defendants' ability to pursue discovery and present evidence to the district court implicates constitutional due process concerns in two ways.  First, due process requires, at a minimum, notice and an opportunity to be heard in a meaningful way, which necessarily requires a more expansive factual record than the one-sided "administrative record" that was filed with the Court by FERC.

---

[6]      *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (deprivation of constitutional rights, "for even minimal periods of time, unquestionably constitutes irreparable injury"); *Rodriguez v. Robbins*, 715 F.3d 1127, 1144-45 (9th Cir. 2013) (same).

1  Second, when an agency assesses a civil penalty, de novo review of the matter (including discovery

2  and an evidentiary hearing) prevents the fundamental unfairness that would arise from the agency's

3  acting as both prosecutor and judge.

4      The fundamental requirement of due process is the opportunity to be heard "'at a

5  meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

6  A court cannot simply "take the word of the Commission as to the outcome of a secret

7  investigation, and let it go at that."  *Ohio Bell Tel. Co. v. Pub. Utils. Comm'n of Ohio*, 301 U.S.

8  292, 304 (1937) (Cardozo, J.).

9      Here, the opportunity to be heard requires, at a minimum, a full and fair hearing, especially

10  since FERC failed to conduct any hearing and now seeks to impose nearly $500 million in civil

11  penalties.   As the Ninth Circuit has explained, one of the "immutable" principles in our

12  jurisprudence is "that where governmental action seriously injures an individual, and the

13  reasonableness of the action depends on fact findings, the evidence used to prove the

14  Government's case must be disclosed to the individual *so that he has an opportunity to show that it

15  is untrue*."  *American-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1069 (9th Cir.

16  1995) (emphasis added).   Before imposing significant monetary penalties like those at issue here,

17  the agency must afford the accused an adequate hearing.  *See, e.g.*, *United States v. Vertol H21C

18  Registration No. N8540*, 545 F.2d 648, 650 (9th Cir. 1976) (in civil penalty action, conducting a

19  hearing "before the final administrative order becomes effective" is key to providing due process)

20  (quoting *Mitchell v. W. T. Grant Co*., 416 U.S. 600, 612 (1974)).  Defendants received no such

21  hearing.   The limited opportunity Defendants were given to respond to the enforcement staff's

22  charges—without access to much of the evidence against them, the ability to obtain discovery from

23  FERC or third-parties, or the right to present their evidence to an impartial trier of fact—is

24  insufficient.

25      In *Mathews v. Eldridge*, the Supreme Court articulated the balancing test that has "become

26  the standard for determining whether certain challenged administrative procedures comply with the

27  requirements of due process."  *California ex rel. Lockyer v. FERC*, 329 F.3d 700, 709 n.8 (9th Cir.

28  2003).

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.  Here, each *Mathews* factor weighs in favor of requiring the opportunity to take discovery and present evidence.

*First*, the private interests at issue in this case are enormous—nearly $500 million, not to mention the professional standing of the individual Defendants.

*Second*, the risk of erroneous deprivation based on the present procedure is high.  FERC engaged in a one-sided investigation and relied on an undisclosed "preliminary econometric model" for its conclusion that Defendants violated the law and for its calculation of the civil penalty.  Defendants had no opportunity to take discovery, put on witnesses, or test the credibility of government witnesses.  Under FERC's reading of the FPA, adopted by the Court, Defendants are denied even the most basic procedural protections against bias and incorrect factual conclusions because they chose to defend themselves in district court.

*Third*, there is no overriding governmental interest in denying Defendants the opportunity to take discovery or present evidence, since that opportunity would have been available to Defendants if they had proceeded before an ALJ.  While the government certainly has a legitimate interest in the prosecution of violations of the FPA, it also has an interest in getting the law right and ensuring that justice is done, particularly in a quasi-criminal proceeding.  *Cf. Berger v. United States*, 295 U.S. 78, 88 (1935) (United States' "interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done").[7]  Moreover, the fiscal and administrative burdens

---

[7]     The harm from the denial of trial and pre-trial procedures here is severe.  Intent is an essential element of a violation of FERC's anti-manipulation rule.  *See Brian Hunter*, 135 FERC ¶ 61,054, at 61,329-30 (2011); *see also* Dkt.1-1, at 35-38 (discussing intent requirement).  And it is well established that matters involving intent, credibility, or disputed past events are inappropriate for resolution through a "paper" proceeding like FERC's show-cause process.  In this regard, courts previously have instructed that "FERC may resolve factual issues on a written record *unless motive, intent, or credibility are at issue or there is a dispute over a past event*."  *Union Pac. Fuels, Inc. v. FERC*, 129 F.3d 157, 164 (D.C. Cir. 1997) (emphasis added).

1    here cannot be great, since Defendants seek the same basic process they would have received if

2    they had elected a hearing before an ALJ.

3                    *b. Defendants Have Been Denied the Right to a Jury Trial*

4                Due process is not the only constitutional protection the Court's Scheduling Order takes

5    away from Defendants.  The Seventh Amendment provides that, "[i]n Suits at common law, where

6    the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."

7    U.S. Const. amend. VII.  The Supreme Court "has construed this language to require a jury trial on

8    the merits in those actions that are analogous to 'Suits at common law.'"  *Tull v. United States*, 481

9    U.S. 412, 417 (1987) (footnote omitted).  In *Tull*, the Supreme Court held that because an action

10   for civil penalties under the Clean Water Act was "clearly analogous to . . . [an] action in debt," the

11   Seventh Amendment required a jury trial on liability.  *Id*. at 420.  Here, as in *Tull*, this action for

12   civil penalties triggers Defendants' right to a jury trial, as all parties elected.[8]

13                    **2.  Reputational Harm**

14               Reputational harm and resulting injury to professional standing and the ability to practice

15   one's profession also justify granting interlocutory relief.  *See United States v. Tillman*, 756 F.3d

16   1144, 1151 (9th Cir. 2014).  The Ninth Circuit has recognized that "the loss of one's [business]

17

_____

18   [8]          In *Atlas Roofing Co. v. OSHA*, 430 U.S. 442 (1977), the Supreme Court held that
     Congress may, consistent with the Seventh Amendment, assign "the factfinding function under a
19   new statute [creating public rights] to an administrative tribunal."  *Id*. at 453.  Here, unlike in *Atlas
     Roofing*, there was no such assignment, and no "evidentiary hearing [was] held before an
20   administrative law judge."  *Id*. at 445.  In any event, as the Ninth Circuit has explained, the
     question "when Congress may assign claims involving public rights to non-Article III adjudicatory
21   bodies" is a "separate issue[]" from "whether, when such claims are assigned to federal courts for
     adjudication, there is a constitutional jury trial right."  *Tamosaitis v. URS Inc.*, 781 F.3d 488 (9th
22   Cir. 2014, as amended 2015).  "[T]he right to a jury trial 'turn[s] to a considerable degree on the
     nature of the forum in which a litigant [finds] himself.'"  *Id*. (quoting *Atlas Roofing*, 430 U.S. at
23   458).  Thus, "t]he fact that Congress has given adjudicatory power to [the agency] in the first
     instance does not cut away the constitutional right to a jury when the suit moves to federal
24   court.  Put differently, once the . . . claim is in the district court—a forum which traditionally
     employs juries and is constitutionally obliged to do so for claims meeting certain criteria—a cause
25   of action meeting those criteria is not shorn of a jury trial right because it could have been decided
     by an administrative agency without a jury."  *Tamosaitis*, 781 F.3d at 488.  Consistent with these
26   principles, once this matter moved to district court, not only Defendants but FERC itself demanded
27   a jury.

28

_____

                                                      9

NOTICE OF MOTION AND MOTION FOR A STAY OF DISTRICT COURT PROCEEDINGS PENDING APPEAL

does not carry merely monetary consequences; it carries emotional damages and stress, which cannot be compensated by mere back payment of [losses]." *Am. Trucking Ass'ns*, 559 F.3d at 1059 (alterations in original).  The loss of one's ability to practice one's business therefore constitutes irreparable injury.

The individual Defendants here have suffered, and continue to suffer, this type of reputational and professional injury.  The individual Defendants are energy market traders who work in a specialized field with a small "professional circle."  FERC's penalty assessment is preventing the individual traders from working in their specialized industry.  *See* Ex. 1,[9] Affidavit of Daniel Brin; Ex. 2, Affidavit of Scott Connelly; Ex. 3, Affidavit of Karen Levine; Ex. 4, Affidavit of Ryan Smith.

For example, Defendant Karen Levine has been unable to work as an energy trader since FERC filed its Notice of Alleged Violations ("NAV") in April 2012, and she was fired from her position at a software company that provided compliance software when the NAV was issued. Ex. 3, Levine Aff. ¶ 3.  Ms. Levine later worked on a team hired on a contract basis by a Canadian utility.  *Id.* ¶ 4.  But when FERC issued the order to show cause in October 2012, the Canadian utility instructed the head of the team to fire her.  *Id.*  Defendant Scott Connelly similarly had to leave the power trading business after FERC's allegations were made public.  Ex. 2, Connelly Aff. ¶¶ 3-4.

Each of the individual Defendants also has been denied career opportunities because of FERC's pending penalty assessment.  For example, Ms. Levine was denied a sales job at a technology company that provides software for regulated industries because the management of the company felt that hiring her was too big a risk given the publicity regarding FERC's investigation and actions.  Ex. 3, Levine Aff. ¶ 5.  Because of FERC's allegations, Ms. Levine is not a viable candidate for jobs at financial institutions or with the government.  *Id.* ¶ 6.  Similarly, Defendant Ryan Smith was pursuing a position at a private energy trading organization in the summer of 2012 when he was told that FERC's allegations were a "deal-breaker" and that the company was not

---

[9]   "Ex. __" refers to exhibits attached to the concurrently filed Declaration of Thomas J. Nolan.

NOTICE OF MOTION AND MOTION FOR A STAY OF DISTRICT COURT PROCEEDINGS PENDING APPEAL

1   comfortable considering his employment.  Ex. 4, Smith Aff. ¶ 2.  Mr. Smith also was denied an

2   opportunity to work as a financial advisor with a financial services firm in 2014 because of

3   publicity related to this case, even though Mr. Smith had previous experience and had held the

4   appropriate licenses from jobs he had prior to his employment at Barclays.  *Id.* ¶ 3.  Despite his

5   experience and qualifications, Mr. Smith has been unable to secure employment in his profession

6   and instead is a courier with a logistics management company.  *Id.* ¶ 4.  Mr. Brin was terminated

7   from his prior job in 2014 because of FERC's allegations and this litigation, and has been unable to

8   find a full-time job since the public disclosure of FERC's allegations and this proceeding.  Ex. 1,

9   Brin Aff. ¶¶ 3-5.  Finally, Mr. Connelly continues to be unable to find employment in the energy

10  trading sector.  Ex. 2, Connelly Aff. ¶ 3.  After purchasing a family business, he found it

11  impossible to secure funding for it due to FERC's allegations, and in August 2015 the company

12  filed for bankruptcy.  *Id.* ¶¶ 4-7.

13          The individual Defendants' professional lives are effectively on hold pending the outcome

14  of these proceedings.  Without an opportunity to contest FERC's findings on a full evidentiary

15  record, Defendants will be unable to obtain full-time employment in their specialized field, let

16  alone in any field that has any connection to the energy industry.  Thus, the effect of FERC's

17  determination is akin to that of a sanctions order—the individual Defendants are prevented from

18  practicing their trade.  As in *Tillman*, immediate appellate review is necessary to prevent this

19  continuing reputational and professional harm.

20                          **3.  Collateral Legal Injury**

21          Finally, Defendants face a probability of irreparable legal injury in the absence of a stay.

22  Without a stay, the Court's liability determination may have preclusive effect against Barclays in

23  another case.[10]  A class-action lawsuit premised on the correctness of FERC's penalty assessment

24  is already pending.  *See Merced Irrigation Dist. v. Barclays Bank PLC*, No. 15-cv-04878

25  (S.D.N.Y., filed June 23, 2015).  An appeal after entry of judgment by a district court does not alter

26  _____

27  [10]     *See, e g.*, *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 654-655 (1979) (nonmutual
    offensive collateral estoppel available to plaintiffs); *accord Syverson v. Int'l Bus. Machs. Corp.*,
28  472 F.3d 1072, 1078 (9th Cir. 2007).

the judgment's preclusive effect.[11]   Thus, if the statutorily and constitutionally mandated procedures outlined above are denied to Defendants, Barclays faces a substantial risk of being ordered to pay a judgment in that class-action case based on an adverse outcome in this one.   There is no certainty that Barclays would recover any such payment after appealing a final judgment in this proceeding, obtaining appellate relief, and vindicating its position in remanded proceedings pursuant to the proper procedures (perhaps years from now).   A stay of this proceeding pending appellate review is needed to avoid this irreparable harm.[12]

### C.    The Balance of Hardships Favors a Stay

In contrast to the irreparable injury that Defendants would suffer, a stay would not substantially burden FERC.   The Ninth Circuit has determined that "the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury."   *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) (quoting *Sampson v. Murray*, 415 U.S. 61, 89 (1974)).   In *Lopez*, the government asserted that it would suffer millions of dollars in permanent losses if the district court's order remained in effect.   *See* 713 F.2d at 1436. Addressing this claim, the Ninth Circuit concluded that the Government's monetary interest is generally insufficient to tip the balance of hardships in its favor and refused to find that interest outweighed those of the plaintiffs, especially where the plaintiffs faced irreparable injury.   *See id.* at 1437.

Here, FERC stands only to receive a civil penalty and disgorgement payment based on allegations of past activity.   *See* Dkt. 1 (seeking order imposing specific monetary penalties).

---

[11]    *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (claim preclusion appropriate when there is a final judgment on the merits, regardless of subsequent appeal); *Hawkins v. Risley*, 984 F.2d 321, 324 (9th Cir. 1993) ("the preclusive effects of a lower court judgment cannot be suspended simply by taking an appeal that remains undecided") (quoting *Robi v. Five Platters, Inc.*, 838 F.2d 318, 327 (9th Cir. 1988)).

[12]    In *Rosenfeld v. United States*, 859 F.2d 717 (9th Cir. 1988), the Ninth Circuit recognized that the inability to recover payments constitutes irreparable injury.   *See id.* at 721-22.   Other circuits have similarly held that the disbursement of funds without the ability to recover them constitutes irreparable injury.   *See In re Deepwater Horizon*, 785 F.3d 1003, 1009 (5th Cir. 2015) (monetary award effectively unreviewable because it would "have been distributed to potentially thousands of claimants and BP will have no practical way of recovering these funds should it prevail").

NOTICE OF MOTION AND MOTION FOR A STAY OF DISTRICT COURT PROCEEDINGS PENDING APPEAL

1  FERC's desire to punish Defendants and obtain the claimed assessment will be satisfied as a result

2  of any payment that results from this action (whether or not delayed by appeal).  *See* 16 U.S.C.

3  § 823b(c) (providing authority for imposition of "civil penalty" with no mention of additional

4  penalties or recompense for delayed receipt); 18 C.F.R. § 385.1511 ("If any person fails to pay a

5  civil penalty assessment, the Commission will seek to recover the amount of the penalty plus

6  interest in any appropriate District Court of the United States.  Interest will begin to accrue on . . .

7  the date on which the appropriate District Court enters final judgment in favor of the Commission

8  under [the judicial 'action' path].").

9       In contrast with *Lopez*, a stay will subject FERC only to a temporary, as opposed to

10  permanent, economic loss, which further tips the balance of hardships in Defendants' favor.  *See*

11  713 F.2d at 1437; *cf. L.A. Mem'l Coliseum Comm'n*, 634 F.2d at 1202 (holding that temporary

12  losses are not irreparable).  The injury to Defendants from denial of a stay therefore far outweighs

13  any harm that will befall FERC.  *Cf. Lopez*, 713 F.2d at 1437 (physical and emotional suffering by

14  the plaintiffs outweighs the Government's monetary interests); *Rent-A-Ctr., Inc. v. Canyon*

15  *Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("economic injury alone

16  does not support a finding of irreparable harm, because such injury can be remedied by a damage

17  award").

18       A stay also would avoid unnecessary and costly litigation.  Trial courts possess "inherent

19  power to control [their] own docket[s] and calendar[s]," and "'a trial court may, with propriety,

20  find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action

21  before it, pending resolution of independent proceedings which bear upon the case.'"

22  *Mediterranean Enters., Inc.*, 708 F.2d at 1465 (quoting *Leyva v. Certified Grocers of Cal., Ltd.*,

23  593 F.2d 857, 863-64 (9th Cir. 1979)); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)

24  ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the

25  disposition of the causes on its docket with economy of time and effort for itself, for counsel, and

26  for litigants.").  This court has recognized that staying its proceedings pending an appeal that "may

27  be dispositive" avoids wasted time and effort and is in the best interests of the parties and the court.

28  *Kotrous v. Goss-Jewett Co. of N. Cal., Inc.*, No. 02-cv-1520-FCD-JFM, 2005 WL 2452606, at *5

1   (E.D. Cal. Oct. 4, 2005).  A stay here would serve those same interests, allowing the parties to

2   postpone time-consuming briefing while the Ninth Circuit considers a substantial question of first

3   impression that directly affects the manner in which this action must proceed.  The Court and the

4   parties therefore will benefit from a stay, in part by avoiding the commitment of resources

5   necessary to continue litigating under a novel legal framework that may be substantially altered as

6   a result of the appeal; "a stay of the proceedings at this point will promote economy of time and

7   effort for both the parties and the court."  *Id.*

8         **D.**       **The Public Interest Supports A Stay**

9         The public interest supports ensuring that appropriate judicial procedures are applied before

10  enforcing steep monetary penalties on both financial institutions and individuals.  The Supreme

11  Court has recognized "the importance to organized society that procedural due process be

12  observed."  *Carey v Piphus*, 435 U.S. 247, 266 (1978); *accord Bristow v. Lycoming Engines*, No.

13  06-cv-1947-LKK-GGH, 2008 WL 2561105, at *3 (E.D. Cal. June 24, 2008) (noting that "the

14  public generally has an interest in accuracy of judicial proceedings and in efficient use of

15  government resources," and that "[n]either of these interests would be served by the court

16  proceeding to trial on plaintiffs' individual claims when the Circuit Court may rule that the court's

17  decertification order was in error").

18        In *Lopez*, the Ninth Circuit considered the competing public interests of affording fair

19  procedures to litigants and the Government's monetary interests.  *See* 713 F.2d at 1437.  The court

20  held that "[s]ociety's interest lies on the side of affording fair procedures to all persons, even

21  though the expenditure of governmental funds is required."  *Id.*  In other words, the public interest

22  favors avoiding irreparable harm to individuals through the use of appropriate procedural

23  protections, as opposed to ensuring that the Government receives or maintains monetary assets.

24        Moreover, the public will not otherwise be harmed if the Court stays the proceedings.

25  Although FERC does not allege that Defendants are presently manipulating the energy market; all

26  allegations relate to past activity.  And in the unlikely event that Defendants are liable for the civil

27  penalty assessed, those penalties could be assessed following an appeal.  The public interest

28  therefore supports the issuance of a stay so that the Ninth Circuit can review and decide the

1  substantial questions of first impression that the Scheduling Order presents, and determine the

2  appropriate procedures that must be employed by the Court before Defendants are required to

3  defend themselves against a massive civil penalty assessment.

4            *      *      *      *

5  Defendants have demonstrated a strong likelihood of success on the merits of their pending

6  appeal, which presents serious and substantial legal issues of first impression.  The balance of

7  hardships tips sharply in Defendants' favor, and a substantial probability of irreparable injury to

8  Defendants exists if the requested stay is not granted.  As such, the issuance of a stay pending

9  resolution of Defendants' pending appeal is warranted.

10  **<ins>CONCLUSION</ins>**

11  For the foregoing reasons, Defendants respectfully request that the Court grant this motion

12  and issue an order staying the proceedings pending resolution of Defendants' appeal to the United

13  States Court of Appeals for the Ninth Circuit.

14  DATED:  December 29, 2015

15
16                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

17                          By:  _____*/s/ Thomas J. Nolan*_____

18                                Thomas J. Nolan
                         Attorneys for BARCLAYS BANK PLC

19  DATED:  December 29, 2015

20                          CADWALADER, WICKERSHAM & TAFT LLP

21                          By:  <ins>*/s/ Gregory A. Markel (as authorized on 12/29/2015)*</ins>

22                               Gregory A. Markel
                         Attorneys for BARCLAYS BANK PLC

23

24  DATED:  December 29, 2015

25                          WILMER CUTLER PICKERING HALE AND DORR LLP

26                          By:  <ins>*/s/ Seth P. Waxman (as authorized on 12/29/2015)*</ins>

27                               Seth P. Waxman

28                           Attorneys for BARCLAYS BANK PLC

NOTICE OF MOTION AND MOTION FOR A STAY OF DISTRICT COURT PROCEEDINGS PENDING APPEAL

DATED:  December 29, 2015

                           McGUIREWOODS LLP

                           By:  */s/ Todd Mullins  (as authorized on 12/29/2015)*
                                     Todd Mullins
                           Attorneys for DANIEL BRIN and SCOTT CONNELLY

DATED:  December 29, 2015

                           PAUL HASTINGS LLP

                           By:  */s/ Michael L. Spafford  (as authorized on 12/29/2015)*
                                   Michael L. Spafford
                           Attorneys for KAREN LEVINE and RYAN SMITH