1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   FEDERAL ENERGY REGULATORY                    No.  2:13-cv-2093 TLN DB
     COMMISSION,
12
                       Plaintiff,
13                                                 ORDER
             v.
14
     BARCLAYS BANK PLC; DANIEL
15   BRIN; SCOTT CONNELLY; KAREN
     LEVINE; and RYAN SMITH,
16
                       Defendants.
17

18

19           Plaintiff Federal Energy Regulatory Commission ("FERC"), has filed this action, seeking

affirmance of its administrative Order Assessing Civil Penalties ("Assessment Order") against
20
Defendants.  ECF No. 1 ("Petition").  In its Assessment Order, FERC states that Barclays Bank
21
PLC ("Barclays") and four individuals violated the anti-manipulation provisions of the Federal
22
Power Act ("FPA"), 16 U.S.C. § 824v(a), and FERC's Anti-Manipulation Rule, 18 C.F.R. 1c.1.
23
Administrative Record ("AR") 16-66.[1]  The Assessment Order also assessed penalties and
24

25   _____
     [1]      On November 2, 2015, FERC filed a "Notice of Lodging Administrative Record."  ECF
26   No. 115 (AR 1-8,488).  The Court notes Defendants' objection to calling this an "Administrative
     Record."  See ECF No. 97 ("Amended Joint Report") at 23 n.8.  The Court will refer to these
27   documents as the "Administrative Record" (or "AR") for ease of identification, only.  As
     discussed more fully below, the Court does not mean by this reference to accord to these
28   documents the status of a formal agency administrative record.

                                                   1

1    disgorgements against Defendants totaling $487.9 million.  AR 84-85.

2                                    I.     THE CURRENT MOTION

3         Pending before the Court is FERC's Motion to Affirm Civil Penalties.  ECF No. 125.  The

4    parties have fully briefed the motion.  <u>See</u> ECF No. 125 (motion), 136-54 (Defendants'

5    opposition briefing and declarations), 166 (reply).  The matter came on for hearing on February 9,

6    2017, at which time the parties responded to specific questions put to them by the Court.  <u>See</u>

7    ECF No. 186.

8         For the reasons that follow, the Court concludes, in agreement with every other federal

9    court that has expressly addressed this issue, that Defendants are entitled to conduct discovery

10   under the Federal Rules of Civil Procedure.  <u>See</u> <u>FERC v. Maxim Power Corp.</u>, 196 F. Supp. 3d

11   181 (D. Mass. 2016); <u>FERC v. City Power Marketing, LLC</u>, 199 F. Supp. 3d 218 (D.D.C. 2016);

12   <u>FERC v. Silkman</u>, 2017 WL 374697, 2017 U.S. Dist. LEXIS 10902 (D. Me. 2017); <u>FERC v.</u>

13   <u>ETRACOM LLC</u>, 2017 WL ___, 2017 U.S. Dist. LEXIS 33430 (E.D. Cal. 2017).  Accordingly,

14   the Motion To Affirm will be denied without prejudice to its renewal as a dispositive motion at an

15   appropriate time.

16                                   II.    PROCEDURAL HISTORY

17        On October 9, 2013, FERC commenced this action by filing its "Petition" in this Court,

18   referring to itself as "Petitioner" and Barclays and the individuals as "Respondents."  ECF No. 1.

19   The Court will refer to FERC as the "Plaintiff" and to Barclays and the individuals as

20   "Defendants."

21        On May 22, 2015, the Court denied Defendants' motions to transfer venue of this case to

22   the Southern District of New York, or to dismiss (in whole or in part) on grounds of lack of

23   jurisdiction, failure to state a claim, or statute of limitations.  ECF No. 88.[2]  An overview of the

24   alleged manipulation is set forth in that order.

25        From the beginning of this litigation, the parties have sparred over whether or not the

26   Court should permit the parties to conduct discovery under the Federal Rules of Civil Procedure.

27   _____

28   [2]     <u>FERC v. Barclays Bank PLC</u>, 105 F. Supp. 3d. 1121 (E.D. Cal. 2015).

                                                    2

1  See ECF Nos. 44 (Defendants' motion to dismiss), 52 (Joint Report re Fed. R. Civ. P. 26(f)), 101

2  (Defendants' briefing on bifurcation), 103 (FERC's briefing on bifurcation), 118 (Defendants'

3  motion for discovery).

4  III.    ADMINISTRATIVE HISTORY

5  A.  FERC's Authority

6  In 2006, acting under the authority granted it by 16 U.S.C. § 824v(a), FERC promulgated

7  its Anti-Manipulation Rule, 18 C.F.R. § ("FERC Rule") 1c.2.  71 Fed. Reg. 4244 (January 26,

8  2006).  Broadly speaking, the rule prohibits fraudulent practices "in connection with the purchase

9  or sale of electric energy or the purchase or sale of transmission services subject to the

10  jurisdiction of the Commission."  FERC Rule 1c.2(a); see Simon v. KeySpan Corp., 694 F.3d

11  196, 207 (2d Cir. 2012) (the rule bars "fraud or deceit in connection with the sale of energy"),

12  cert. denied, 133 S. Ct. 1998 (2013).

13  B.  Investigation

14  In July 2007, FERC's Office of Enforcement staff ("Enforcement") commenced a

15  preliminary investigation into allegations of "manipulative trading by Barclays in physical

16  electricity markets in the western U.S.," and notified Barclays that it was doing so.  Petition

17  ¶¶ 34, 35;[3] AR 6461 (FERC letter to Barclays).[4]  On October 2, 2008, FERC authorized

18  Enforcement to commence a "formal investigation" of Defendants, thus granting Enforcement the

19  power to obtain testimony and other evidence through compulsory process.  AR 8, 6647-48.[5]

20

21  _____

[3]      According to the Petition, electricity products can be "either physical or financial."
22  Petition at 5 ¶ 21.  "Physical products involved the obligation to deliver or receive physical
electricity at a particular location during a particular time."  Id.  "Unlike physical positions,
23  financial positions did not entail physical obligations to deliver or receive electricity.  Rather,
financial positions, including the fixed-for-floating financial swap ('financial swap') commonly
24  traded by Barclays, were financially settled through an exchange of payments."  Id. at 7 ¶ 26.

25  [4]      See 18 C.F.R. § 1b.1(b) ("preliminary investigation" definition); Enforcement of Statutes,
Regulations & Orders ("2008 Statement"), 123 FERC 61156, 62012 ¶ 26 (2008) ("[i]f … staff
26  determines that an investigation should be opened, it will notify the subject of that fact").

[5]      See 18 C.F.R. § 1b.1(a) ("formal investigation" definition); 2008 Statement, 123 FERC at
27  62012 n.18 ("staff can conduct a preliminary investigation or, if compulsory process is required,
seek an order from the Commission commencing a formal investigation").

28

1
    C.   Preliminary Findings & Responses

2
      On June 10, 2011, Enforcement issued Preliminary Findings Letters to Defendants stating

3
that it had preliminarily concluded that Defendants had engaged in manipulative activity in

4
violation of the Anti-Manipulation Rule.  AR 8, 6022-301.[6]  The letters invited Defendants to

5
respond with any additional information or rebuttals before Enforcement made a recommendation

6
to FERC.[7]  See AR 6022-301.  On August 29 & 30, 2011, Defendants responded to the

7
Preliminary Findings Letters.  AR 8.[8]

8
    D.   Notice of Alleged Violations and Rule 1b.19 Notice & Responses

9
      On April 5, 2012, Enforcement issued a "Staff Notice of Alleged Violations."  AR 8,

10
6663.[9]  It appears that settlement discussions ensued, but the matter was not resolved.  See

11
AR 94.[10]

12
      On May 3, 2012, Enforcement provided Defendants a FERC Rule 1b.19 letter, notifying

13
Defendants of its intent to recommend that FERC issue an Order To Show Cause why FERC

14
should not institute an enforcement action against Defendants seeking penalties and

15
disgorgements.  AR 8, 6371-85; see FERC Rule 1b.19.[11]  The FERC Rule 1b.19 letters invited

---

16
17
18
[6]    See Enforcement of Statutes, Regulations, and Orders ("2009 Statement"), 129 FERC 61247, 62337 ¶ 2 (2009) ("[i]f staff believes the subject may have violated one or more Commission requirements, it seeks authorization from the Director of the Office of Enforcement to provide a letter to the subject that sets forth staff's preliminary findings and the facts and reasons in support of those findings").

19
20
21
22
[7]    Although Defendants were invited to provide "additional information," the process they were operating under gave them no authority to compel the production of evidence or testimony. Such authority was granted only to FERC and its staff.  See 18 C.F.R. § 1b.13 (FERC's members and investigating officers "may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, contracts, agreements or other records relevant or material to the investigation").

23
24
[8]    See AR 199-492 (Barclays), 588-682 (Brin), 767-814 (Connelly), 6302-35 (Levine), 6336-70 (Smith); see also, 2009 Statement, 129 FERC 61247 at 62337 ¶ 2 ("[t]he subject may then respond to this preliminary findings letter").

25
[9]    See 2009 Statement, 129 FERC 61247 at 62338 ¶ 6 (authorizing Enforcement to issue "Notices of Preliminary Violations").

26
27
[10]    See 2008 Statement, 123 FERC 61156 at 62014 ¶ 33 ("[s]taff attempts to reach a settlement with the subject of an investigation before recommending an enforcement proceeding").

28
[11]    "In the event the Investigating Officer determines to recommend to the Commission …

1    Defendants to respond to the 1b.19 letter, advising that they could address any matter they wanted

2    FERC to consider, and that they could provide additional evidence.  See AR 6371-85.  On June

3    11, 2012, Defendants responded to the FERC Rule 1b.19 letters.  AR 8.[12]

4        E.  Staff Report & Order To Show Cause

5        Enforcement compiled a Staff Report (undated), that "concluded that Barclays Bank PLC

6    (Barclays) and its individual traders manipulated the electricity markets in and around California

7    from November 2006 to December 2008 in violation of 18 C.F.R. § 1c.2 (2012) (Anti-

8    Manipulation Rule or 1c.2)."  AR 90-158 ("Staff Report").  Specifically:

9        Enforcement determined Respondents engaged in a coordinated
         scheme … to take the physical positions they had built and liquidate
10       them in the cash markets – generally at a loss – to impact the ICE
         daily index settlements to benefit Barclays' related financial
11       positions that settled against those indices.

12   Petition at 9 ¶ 36; AR 92.

13       On October 31, 2012, FERC directed Defendants to show cause why they should not be

14   found to have violated 16 U.S.C. § 824v(a) and the Anti-Manipulation Rule, and why they should

15   not be assessed civil penalties and disgorgements.  AR 86-89.  The Staff Report was attached as

16   an exhibit.

17       The OSC further directed Defendants to elect whether they would proceed by "(a) an

18   administrative hearing before an Administrative Law Judge (ALJ) at the Commission prior to the

19   assessment of a penalty under section 31(d)(2), or (b) an immediate penalty assessment by the

20   Commission under section 31(d)(3)(A)."  AR 88.  Defendants were advised that if they chose the

21   "immediate penalty assessment" route, and if the Commission assessed a penalty which

22   Defendants failed to pay within 60 days, "the Commission will commence an action in a United

23   States district court for an order affirming the penalty, in which the district court may review the

24   assessment of the civil penalty de novo."  AR 88.

25   that an entity be made a defendant in a civil action to be brought by the Commission, the
     Investigating Officer shall … notify the entity that the Investigating Officer intends to make such
26   a recommendation."  18 C.F.R. § 1b.19.

27   [12]    See AR 493-532 (Barclays), 683-95 (Brin), 870-81 (Connelly), 6386-422 (Levine),
     6423-60 (Smith).

28

1      F.   Answers & Election

2           Defendants filed Answers to the OSC on December 14, 2012.[13]  All Defendants elected

3      the immediate penalty assessment route, so that they could "have this case adjudicated *de novo* by

4      a federal district court pursuant to sections 3l(d)(l) and (3)(A) of the Federal Power Act ('FPA'),

5      16 U.S.C. §§ 823b(d)(l), (3)(A)."  See AR 159-98 (Barclays).[14]  On January 28, 2013,

6      Enforcement replied to Defendants' Answers.  AR 958-1062.

7           G.   Order Assessing Civil Penalties & District Court Filing

8           On July 16, 2013, FERC issued its Order Assessing Civil Penalties.  AR 1-85.  In the

9      Order, FERC stated that Defendants had violated 16 U.S.C. § 824v(a) and the Anti-Manipulation

10     Rule, and it assessed civil penalties and disgorgements against them.  Id.  On October 9, 2013,

11     FERC filed this action, seeking an affirmance of its Order Assessing Civil Penalties.  ECF No. 1.

12          This Court has jurisdiction under 16 U.S.C. § 823b(d)(3)(B).

13                          IV.   DE NOVO REVIEW PROCEDURES

14          This Court's current task is to determine how it will proceed.  The applicable statute

15     instructs the Court to "review de novo the law and the facts involved."  16 U.S.C.

16     § 823b(d)(3)(B).  FERC, in agreement with Defendants, asserts that "de novo" review:

17                  requires a "fresh, independent determination of 'the matter' at
                    stake."  *See Doe v. United States*, 821 F.2d 694, 697-98 (D.C.
18                  Cir. 1987) (en banc) (Ginsburg, J. R. B.) (citations omitted).
                    "Essentially then, the district court's charge was to put itself in the
19                  agency's place, to make anew the same judgment earlier made by
                    the agency."  *Id.* at 698. This Court has fulfilled the de novo role
20                  when "the district judge made the same judgment earlier entrusted
                    to the agency head … on the basis of information he found
21                  sufficient to make the judgment, and without deferring to the prior
                    agency conclusion on the same matter."
22
       ECF No. 125 at 8 (FERC); ECF Nos. 136 at 23 (Barclays), 140 at 9 (Smith), 141 at 10 (Levine).
23
       The dispute here is about what are "the law and the facts involved" that will be the basis for
24
       decision in this Court.
25

26     ───────────────────────
       [13]    AR 159-98 (Barclays), 533-87 (Brin), 696-766 (Connelly), 882-921 (Levine), 922-57
27     (Smith).

28     [14]    See also, 533-87 (Brin), 696-766 (Connelly), 882-921 (Levine), 922-57 (Smith).

FERC asserts that "the law and the facts involved" are limited to the evidence and arguments that are contained in what it calls the "administrative record."  ECF No. 125 at 22.  Specifically, it argues, "issue exhaustion" bars Defendants from introducing new arguments or evidence here.  ECF No. 166 at 15.  FERC argues that there is no unfairness in this because Defendants "had the opportunity to submit additional factual affidavits to the Commission from any witnesses they wished the Commission to consider …."  ECF No. 52 at 8; ECF No. 166 at 13-14.  FERC concedes that additional proceedings, including expert testimony and discovery, may be necessary to resolve how much Defendants should pay in disgorgement.  In addition, FERC asserts that it is prepared to offer any additional evidence the Court deems necessary, and is "prepared to proceed with a trial" if a review of the record or supplementary evidentiary hearing is insufficient to decide the matter.  ECF No. 52 at 11.

Defendants argue that "the law and the facts involved" includes any arguments they wish to make now, plus all evidence they can collect by means of discovery.  ECF No. 136  at 55-61.  Defendants argue that they are entitled to conduct discovery so that they can properly defend themselves against FERC's charges.  Defendants point out that they never had the ability to test the evidence submitted to FERC "to ensure its relevance, reliability, fairness, competence or scientific validity."  ECF No. 52 at 14.  In any event, they argue, the evidence Enforcement chose to present to FERC – in the "administrative record" – consists of "cherry picked transactional data" and "a handful" of emails and instant messages ("IMs").  See ECF No. 52 at 13.  Moreover, no "neutral trier of fact" has ever resolved the matter in a "contested evidentiary proceeding."  ECF No. 52 at 14-15.

Defendants also argue that basic fairness, and their Due Process rights, require that they have the opportunity for a full contested hearing in this Court.  ECF No. 136 at 61-63.  They assert that they never intended to waive their right to a "full adjudicative process" when they elected to go to district court.  ECF No. 52 at 14.  To the contrary, they assert that FERC's Enforcement staff assured them that they could conduct discovery once the district court case was filed.  ECF No. 136 at 18.  Moreover, they argue, the applicable statute, 16 U.S.C. § 823b(d)(3)(B), as interpreted by FERC itself in a policy statement, calls for a "de novo trial."

ECF No. 136 at 60.[15]

## V.     ANALYSIS

### A.  The Meaning of the Statute

The Court first looks to the language and structure of the applicable statute, to determine whether discovery is required.

> The first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. This often requires examin[ing] not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy. If the plain meaning of the statute is unambiguous, that meaning controls. If the statutory language is ambiguous, then we consult legislative history.

Wilson v. Comm'r, 705 F.3d 980, 987-88 (9th Cir. 2013) (citations and internal quotation marks omitted).  The disputed statutory language provides that after FERC has assessed a penalty and waited 60 days:

> the Commission shall institute *an action* in the appropriate district court of the United States for an order affirming the assessment of the civil penalty.  The court shall have authority to *review de novo the law and the facts involved*, and shall have jurisdiction to enter a judgment enforcing, modifying, and enforcing as so modified, or setting aside in whole or in Part such assessment.

16 U.S.C. § 823b(d)(3)(B) (emphasis on disputed terms added).[16]

///

---

[15]     Barclays asserts that this case involves disputed "factual inferences and conclusions … which can only be resolved by a neutral fact-finder at trial" if they cannot be resolved on summary judgment.  ECF No. 136 at 26 (this matter "will be adjudicated de novo through motions for summary judgment and, if warranted, a jury trial").  The Court anticipates that following discovery, Plaintiff will renew its motion as a dispositive motion under summary judgment practice.  Since the matter may be resolved by summary judgment motions, the Court need not speculate on what other procedures might be warranted.

[16]     The applicable statute authorizes FERC to assess "a civil penalty of not more than $1,000,000" per day against any person who violates the anti-manipulation provision of the FPA, 16 U.S.C. § 824v(a).  16 U.S.C. § 825*o*-1(b).  The statute further provides that the procedures of 16 U.S.C. § 823b(d) shall govern the assessment.  Id.  That section, in turn, provides that before FERC assesses a penalty, it must (1) provide the persons against whom the penalty is to be assessed a notice of the proposed penalty, and (2) inform them their right to elect the provisions of 16 U.S.C. § 823b(d)(2) or (d)(3).  16 U.S.C. § 823b(d)(1).  If the notified persons choose Section 823b(d)(3), as Defendants did here, FERC "promptly" assesses a penalty, and if not paid within 60 days, the disputed statutory language governs.  16 U.S.C. § 823B(d)(3)(A), (d)(3)(B).

1                    1.      The structure of the statute

2                         a.    The election

3        The structure of the statute, especially when viewed in light of the governing regulations

4   and FERC's policies and procedures, exposes the flaw in FERC's position.  Defendants who elect

5   the ALJ route are entitled to conduct full discovery, and are not saddled with an "administrative

6   record" compiled by FERC.[17]  FERC offers no coherent explanation for why the statute would

7   authorize full discovery before an ALJ but silently deny it if Defendants chose to go to district

8   court.[18]

9        Nothing in the wording or structure of the statute warrants this incongruous result.

10  _____
    [17]      FERC's own regulations flesh out the procedures applicable to such a hearing.  See 18
11  C.F.R. Part 385 ("Rules of Practice & Procedure"), Subpart E ("Hearings").  Under those
    regulations, the participating parties can "present such evidence, including rebuttal evidence, to
12  make such objections and arguments, and to conduct such cross-examination, as may be
    necessary to assure true and full disclosure of the facts."  18 C.F.R. § 385.505.  The parties can
13  submit written testimony.  Id. § 285.307.  However, "[a]ny witness submitting written testimony
    must be available for cross-examination."  Id. § 385.506.  The presiding officer decides on the
14  admissibility of proffered evidence.  Id. § 385.509.  Regarding discovery, the regulations provide
    that "participants may obtain discovery of any matter, not privileged, that is relevant to the
15  subject matter of the pending proceeding, including the existence, description, nature, custody,
    condition, and location of any books, documents, or other tangible things, and the identity and
16  location of persons having any knowledge of any discoverable matter."  Id. § 385.402(a).  The
    discovery methods made available to the parties are "data requests, written interrogatories, and
17  requests for production of documents or things (Rule 406), depositions by oral examination (Rule
    404), requests for inspection of documents and other property (Rule 407), and requests for
18  admission (Rule 408)."  Id. § 385.403(a).  Non-parties may be compelled to provide testimony or
    documents.  Id. § 385.409(a) (subpoena).

19  [18]      At oral argument, FERC asserted that by making this election, Plaintiff "rejected" the
    "formal adjudication" option available under 5 U.S.C. § 554 or 556, and instead enjoyed "the
20  informal adjudication [under 5 U.S.C. § 555] contained in Option 2 followed by the Court's de
    novo review."  Transcript at 8.  FERC makes no mention of this "informal adjudication" in any of
21  the papers it filed in this Court, nor in any administrative communication with Defendants.  In
    any event, there are several problems with this argument.  First, FERC does not explain why
22  Defendants would be entitled to another full, formal, adjudicatory process if they chose the ALJ
    route, but are not entitled to it here.  Second, FERC does not claim that it ever advised Defendants
23  that opting for "informal adjudication" under 5 U.S.C. § 555 would preclude application of the
    Federal Rules of Civil Procedure once the case got into federal court (or that Defendants should
24  somehow know this).  Third, FERC's argument for why "adjudication" must have occurred here
    – an order only results from an adjudication, and FERC issued an order so therefore there must
25  have been an adjudication (see Transcript at 12) – is simply a tautology, and is rejected on that
    ground.  Fourth, FERC's argument appears to be contradictory, because FERC concedes that the
26  order under review here is not "final."  Transcript at 8 (APA does not apply because that only
    applies to "final agency actions").  Yet in order for there to have been an "adjudication," the
27  FERC order would have to be "the whole or a part of a *final* disposition."  5 U.S.C. § 551(6)
    (emphasis added).

28

                                        9

1    Indeed, the only statutory difference between the two available procedures is the election itself.

2    That is because the election occurs *after* the full "administrative record" has been compiled.

3    Thus, regardless of which election is made, Enforcement has already conducted the investigation,

4    issued its preliminary findings and invited responses, conducted settlement negotiations, issued its

5    notice of alleged violations, issued its 1b.19 letter and invited responses.  In addition, regardless

6    of the election, FERC has already issued its Order To Show Cause, and invited Defendants to file

7    Answers.  It is in those Answers that defendants make their election of whether to proceed with

8    an ALJ or go to district court.

9          The one thing that does distinguish defendants' position at that point, is that if defendants

10   choose the ALJ route, FERC simply notifies defendants of their opportunity for a hearing before

11   an ALJ.  See Statement of Administrative Policy Regarding the Process for Assessing Civil

12   Penalties ("2006 Statement"), 117 FERC ¶ 61,317, 62,531 ¶ II(1)(a)(i) (2006).  If defendants

13   choose the district court route instead, FERC determines – *without obtaining any additional*

14   *evidence or argument* – whether a violation exists, and if so, "promptly" assesses the penalty and

15   later, files the action in the district court.  See id. at 62, 532 ¶ II(1)(b)(1), (b)(2); 16 U.S.C.

16   § 823b(d)(3).  FERC does not explain why this one administrative trigger should deny Defendants

17   the discovery that they would be entitled to if they had made the other election.  See Maxim

18   Power Corp., 196 F. Supp. 3d at 197 ("[i]f anything, by directing FERC to 'promptly assess'

19   penalties under Option 2, the statute tells FERC not to spend time on proceedings prior to

20   assessing the penalty").

21         FERC argues that full proceedings in the district court would be a "do over" to which

22   Defendants are not entitled.  ECF No. 166 at 13-17.  Yet the election to go the ALJ route provides

23   for full proceedings after the "administrative record" has been compiled.  FERC offers no

24   explanation for why a "do over" is warranted with the ALJ route but not with the district court

25   route.  A much more sensible interpretation of the statute is offered by Defendants, namely, that

26   "the administrative investigation was a *prelude* to adjudication of FERC's claims either in an

27   administrative or federal court proceeding, at Defendants' option."  ECF No. 52 at 20 (emphasis

28   added).

In any event, there is no "do over" here.  Defendants are requesting a contested hearing before a neutral decision-maker, with discovery.  They have never had the opportunity to conduct discovery, could not compel witnesses to give testimony, had no opportunity to cross-examine witnesses, and had no opportunity to make their case before a neutral decision-maker.  Defendants are asking for the opportunity to do those things for the first time here, in this Court.

Basic fairness also works against FERC's interpretation of the statute.  FERC has not shown, or even asserted, that they ever warned Defendants that making this election would waive the discovery they are entitled to obtain with the ALJ election.  To the contrary, FERC's enforcement staff assured Defendants that they would be entitled to conduct discovery if they made the district court election.  AR 1029 n.333 ("[i]f the Commission determines to send this matter to federal court, staff may choose to offer calculations from testifying experts into evidence, and *Barclays and the individual traders will have the opportunity to conduct appropriate discovery*) (emphasis added).[19]  Moreover, FERC's institutional position – as opposed to its litigation position – is that defendants are entitled to a "de novo trial."  See Procedures for the Assessment of Civil Penalties Under Section 31 of the Federal Power Act ("1988 Procedures"), 53 Fed. Reg. 32035, 32038  (August 23, 1988) ("when Rule 1509 district court procedures are followed, the assessment of civil [penalties] by the Commission *merely triggers the process leading to a de novo trial*") (emphasis added).[20]  In light of this, it would be unjust to advise Defendants now, after their election, that they are not entitled to the promised discovery after all, and that they are not entitled to the promised "de novo trial."[21]

---

[19]     Despite its open-ended assurances, FERC now argues that the only discovery needed is to determine the correct amount of disgorgement.  See ECF No. 52 at 12 ("[t]he Commission may introduce expert testimony on the amount of disgorgement at the appropriate time, for which discovery may be appropriate"), 19 ("[a]t the time the Court considers the issue of disgorgement, Respondents would have a full opportunity to conduct discovery relating to any evidence (expert testimony or otherwise) the Commission offers at that time in support of its disgorgement calculation").  However, there was no such limitation expressed when Enforcement offered Defendants (and FERC) the assurance of discovery in district court.

[20]     FERC indicates that this statement is not to be relied upon.  See ECF No. 52 at 10 n.2.  That issue is addressed below.

[21]     At oral argument, FERC's counsel asserted that Defendants can solve their own problem by simply requesting that the Commission permit them to revoke their election ("defendants can request to go back to the Commission," [Transcript at 30]), to get their full hearing with

11

b.   Issue Exhaustion and the "administrative record"

FERC argues that this Court's consideration should be limited to the "administrative record," invoking the doctrine of "issue exhaustion."  FERC argues that the Court should "hold that they [Defendants] waived all facts and legal arguments that they could have, but chose not to present to the Commission."  ECF No. 166 at 11.  FERC points out that its OSC specifically directed Defendants as follows: "In their answers, Respondents should address any matter, legal, factual or procedural, that they would urge in the Commission's consideration of this matter."  ECF No. 166 at 13 (citing AR 88).  Moreover, as noted above, Defendants had the opportunity to present evidence and arguments at other points during the administrative process.  Thus, FERC argues that Defendants should be precluded from introducing new evidence because they "had a full opportunity, without limitation, to present any arguments and evidence to the Commission" before FERC issued its Assessment Order.  See ECF No. 166 at 15.

i.   Issue exhaustion does not apply here

FERC argues that "'absent exceptional circumstances, a reviewing court will refuse to consider contentions not presented before the administrative proceeding at the appropriate time.'"  ECF No. 166 at 15 (quoting Getty Oil Co. v. Andrus, 607 F.2d 253, 256 (9th Cir. 1979)).  However, the cases FERC cites address the doctrine of issue-exhaustion in situations where a federal court is reviewing *final agency action* made reviewable by the Administrative Procedure Act, or its equivalent.  See Sims v. Apfel, 530 U.S. 103 (2000) (reviewing final agency decision to deny Social Security benefits, the Court holds that plaintiff did not waive issues even though

---

discovery.  It appears that this consent would be given by FERC order, not by counsel who is arguing the case in court.  See 16 U.S.C.A. § 823b(d)(3)(C) ("[a]ny election to have this paragraph apply may not be revoked except with the consent of the Commission"); see also, 18 C.F.R. § 385.1507(b) ("[a]ny election to have the procedures of Rule 1509 apply may not be revoked after the 30-day election period in paragraph (a) of this section, without the consent of the Commission"); see also, ETRACOM LLC and Michael Rosenberg, 155 FERC 61284 ¶ 36 (F.E.R.C. June 17, 2016) ("In the May 6, 2016 Order, the Commission provided Respondents an opportunity to rescind their election based on their assertion that they required discovery, so that they could be afforded discovery by an ALJ at the hearing should the ALJ find the requested discovery relevant").  Counsel has not directed the Court's attention to any FERC order permitting Defendants to rescind their election, or indicating that a request to revoke would be granted.  In any event, the possibility of such an election – even assuming FERC would consent – does not explain why Defendants can be deprived of process when, as they are expressly permitted to do by statute, they instead elected to come to federal court.

1    she failed to raise them before the agency's final decision was made); <u>United States v. L.A.</u>

2    <u>Tucker Truck Lines</u>, 344 U.S. 33 (1952) (challenge to Interstate Commerce Commission's final

3    order issuing a certificate of public convenience); <u>Getty Oil Co. v. Andrus</u>, 607 F.2d 253 (9th

4    Cir. 1979) (reviewing final agency action, Court holds that objection was timely because it was

5    raised before completion of the administrative process).  As FERC itself argues, this action does

6    not involve the review of final agency action under the APA or its equivalent.  <u>See</u> ECF No. 166

7    at 11-12; Transcript at 8.

8         Indeed, there is no final agency action at all, as that term is used in the cited cases.  Here,

9    the decision under review is FERC's assessment of penalties and disgorgements.  However, the

10   statute and implementing regulations and policy statements plainly expect that this assessment,

11   and the subsequent 60-day waiting period, is merely a mechanism for getting the proceeding into

12   district court.  Unlike a final agency decision or order, this assessment did not have a "direct and

13   immediate ... effect on the day-to-day business" of Barclays or the Defendants.[22]  <u>See</u> <u>FTC v.</u>

14   <u>Standard Oil Co. of California</u>, 449 U.S. 232, 239 (1980) (internal quotation marks omitted).  Nor

15   did it have "the status of law" for which "immediate compliance with [its] terms was expected."

16   To the contrary, compliance with the assessment order was expressly not expected; it was

17   expected that Defendants would *not* comply, as this was the only statutory mechanism by which

18   defendants who had made this election could challenge the assessment.

19        Even if there were final agency action here, issue-exhaustion is not automatic.  Rather,

20   "requirements of administrative issue exhaustion are largely creatures of statute."  <u>Sims</u>, 530 U.S.

21   at 107.  FERC identifies no statute that requires issue exhaustion here, even though Congress

22   plainly knows how to require it when it wishes to do so.  <u>See, e.g.</u>, 15 U.S.C.§ 77i (a) (on judicial

23   review of an order of the Securities and Exchange Commission, "[n]o objection to the order of the

24   Commission shall be considered by the court unless such objection shall have been urged before

25   the Commission"); 29 U.S.C.A. § 160(e) (when National Labor Relations Board seeks judicial

26

27   _____
     [22]      This is not to dispute the individual Defendants' assertions at oral argument that they had
     been bankrupted and their lives had been ruined by these proceedings.

28

                                             13

1    enforcement of its order, "[n]o objection that has not been urged before the Board, its member,

2    agent, or agency, shall be considered by the court, unless the failure or neglect to urge such

3    objection shall be excused because of extraordinary circumstances").[23]

4        FERC's regulations do make clear that when Defendants filed their Answers to the order

5    to show cause, they were required to make a clear and concise statement of the disputed factual

6    allegations, the law relied upon, and all defenses.  18 C.F.R. § 385.213(c).  However, it does not

7    state or otherwise indicate that Defendants would be limited to those statements in the district

8    court proceeding.

9                            ii.    Defendants' opportunity to present evidence

10       FERC argues that Defendants "had the opportunity to submit additional factual affidavits

11   to the Commission from any witnesses they wished the Commission to consider …."  ECF No. 52

12   at 8.  That is not accurate.  It ignores the fact that Defendants have never had the power to compel

13   any witness to give an affidavit (or a deposition, or to submit to cross-examination).

14       Therefore, even if Defendants knew of witnesses whose testimony would convincingly

15   refute any market manipulation claims, Defendants could not compel those witnesses to submit to

16   a deposition or to produce the evidence that would convince FERC that the charges had no merit.

17   Instead, Defendants were forced to rely upon Enforcement's investigation, and whatever evidence

18   they could obtain on their own from volunteers, in their efforts to convince FERC not to file this

19   lawsuit.

20   ────────────────────

21   [23]      Indeed, Congress has done so in the FPA itself, but only when the defendants choose the
     other option into federal court, namely, the route that includes an ALJ hearing and an appeal to
22   the Court of Appeals.  The statute provides, in that case, that judicial review will be had in
     accordance with the Administrative Procedure Act ("APA").  16 U.S.C. § 823b(d)(2)(B) ("Any
23   person against whom a penalty is assessed under this paragraph may, within 60 calendar days
     after the date of the order of the Commission assessing such penalty, institute an action in the
24   United States court of appeals for the appropriate judicial circuit for judicial review of such order
     in accordance with chapter 7 of Title 5").  The APA, in turn, requires issue exhaustion.  See
25   Native Ecosystems Council v. Dombeck, 304 F.3d 886, 899-900 (9th Cir. 2002) (reviewing
     agency action under the APA, the court states: "Because plaintiffs raised the issue of Forest Plan
26   amendment procedures sufficiently for the agency to review these procedures and to conclude
     that the Forest Service complied with NFMA, we hold that the plaintiffs exhausted their
27   administrative remedies as to the issues they raise before us.  This result comports with the
     purposes of the exhaustion requirement of avoiding premature claims and ensuring that the
28   agency be given a chance to bring its expertise to bear to resolve a claim.")

                                            14

1   As Defendants point out, "[t]here is a fundamental difference between forcing a party to

2   rely on and develop its defenses based entirely on the discovery taken by its opponent and

3   allowing that party to engage in its own independent discovery in support of its own defenses."

4   ECF No. 52 at 22.  It defies notions of fairness and common sense that this Court would continue

5   to deny Defendants the opportunity to produce evidence, under compulsion, that they believe

6   could refute the charges against them.

7                           iii.    The "administrative record"

8   FERC argues that this proceeding should be restricted to the "administrative record."

9   However, it cites no authority for this proposition.  To the contrary, the applicable statute makes

10   no mention of an "administrative record."  See 16 U.S.C. § § 823b(d)(3)(B).  FERC's regulations,

11   and its policy statements also make no mention of an administrative record.  See, e.g., 18 C.F.R.

12   §§ 1b.1, et seq. (investigations), 385.101, et seq. (rules of practice).  Even apart from Defendants'

13   slant on the record as being "cherry picked" from the evidence available, it is clear that this

14   record contains only selected transcripts, selected pieces of evidence, and selected trading

15   records, out of all the evidence the Enforcement staff collected.  FERC has not identified any

16   statute, regulation or policy that its staff was following in creating this record, and upon which a

17   $487.9 million assessment would rest.

18   Congress plainly knows what an administrative record is, and how to limit court review to

19   that record.  See, e.g., 16 U.S.C. § 839f(e)(2) ("[t]he record upon review of such final actions

20   shall be limited to the administrative record compiled in accordance with this chapter"); 42

21   U.S.C. § 405(g) ("As part of the Commissioner's answer the Commissioner of Social Security

22   shall file a certified copy of the transcript of the record including the evidence upon which the

23   findings and decision complained of are based.  The court shall have power to enter, *upon the*

24   *pleadings and transcript of the record*, a judgment affirming, modifying, or reversing the decision

25   of the Commissioner of Social Security, with or without remanding the cause for a rehearing.")

26   (emphasis added); 42 U.S.C. § 9613(j)(1) ("judicial review of any issues concerning the adequacy

27   of any response action taken or ordered by the President shall be limited to the administrative

28   record").  Congress in this statute has not expressly limited this Court's review to any

1   "administrative record."[24]

2       Indeed, Congress itself has made clear that "de novo" review, as contrasted with reviews

3   limited to the "administrative record," are entirely different types of reviews.  See, e.g., 30 U.S.C.

4   § 1719 (j) (regarding judicial review of a final order assessing a penalty by the Secretary of the

5   Interior, "[r]eview by the district court shall be only on the administrative record and not de

6   novo"); 7 U.S.C. § 2023 (individual aggrieved by the Secretary of Agriculture's decision may

7   obtain "judicial review" in the district court, which "shall be a trial de novo …, *except that*

8   *judicial review of determinations regarding claims made pursuant to section 2025(c) of this title*

9   *shall be a review on the administrative record*") (emphasis added).  Here, Congress has directed

10  the Court to conduct a "de novo" review, but has not expressly limited that review to an

11  administrative record.

12      Even if the Court wanted to limit its review to an administrative record, FERC has offered

13  no explanation for why the one it claims to have compiled is a proper administrative record.  The

14  record here does not, for example, consist of the entire investigative record compiled by FERC's

15  Enforcement staff.  The investigative record contains, at a minimum, "in excess of one million

16  pages of documents," "hundreds of thousands of electricity trades," and "25 days of investigative

17  depositions of Barclays' current and former employees … and of certain third parties."  ECF

18  No. 52 at 6.  Yet the "administrative record" consists of (1) those portions of the investigative

19  documentary and data record selected by Enforcement staff for presentation to FERC, (2) those

20  16 days of deposition transcripts Enforcement selected for presentation to FERC,[25] (3) evidence

21  Defendants were able to assemble from their own records and from volunteers, and (4) briefing

22  ───────────

[24]    At oral argument, FERC cited FERC v. Silkman, 1:16-cv-0205 JAW, ECF No. 95 (D. Me.

23  January 26, 2017), for the proposition that there was an "adjudication" on the administrative
    record.  But in Silkman the court stated that "*[a]fter reviewing the briefs and evidentiary record*

24  *on the Show Cause Orders,* the Commission issued orders on August 29, 2013 assessing civil
    penalties against Lincoln, CES, and Mr. Silkman."  Here, FERC, in its Assessment Order, never

25  stated what the "administrative record" was, nor that it had based its determination upon it.  Even
    if it had done so, there is no guidance anywhere as to what goes into such a record and no notice

26  to Defendants, or this Court, of exactly what that record is.

[25]    Of the 25 days of investigative depositions, 16 are included in the AR.  See

27  AR 1082-5555 (Brin 2 days, Connelly 4 days, Dhabliwala 1 day, Gerome 1 day, Gold 1 day,
    Levine 2 days, Rainess 1 day, Smith 2 days, and Vath 2 days).

28

1  and argument from Enforcement staff and Defendants.  See AR 1-8,488.  FERC offers no

2  explanation for why Enforcement did not present the omitted documents, data, and transcripts,

3  nor does it explain why this Court should not consider them.[26]

4                    2.    The language of the statute

5          This Court "must give substantial deference to an agency's interpretation of its own

6  regulations."  Thomas Jefferson University v. Shalala, 512 U.S. 504, 512 (1994); Decker v.

7  Northwest Environmental Defense Ctr., 133 S. Ct. 1326, 1337 (2013) ("[w]hen an agency

8  interprets its own regulation, the Court, as a general rule, defers to it unless that interpretation is

9  plainly erroneous or inconsistent with the regulation") (internal quotation marks omitted).

10  FERC's own institutional interpretation of the language of this statute, and FERC's identically

11  worded implementing regulation, shows that in its institutional role – as opposed to its role as a

12  party to litigation – FERC agrees that Defendants are entitled to full discovery in this Court.

13          As noted, the statute calls for FERC to institute an action where the court will conduct a

14  "review de novo" of FERC's Assessment Order.  16 U.S.C. § 823b(d)(3)(B).  In 1988, FERC

15  promulgated 18 C.F.R. § 385.1509 ("Rule 1509"), which implements this provision of the statute.

16  1988 Procedures, 53 Fed. Reg. 32035 (final rule promulgating 18 C.F.R. §§ 385.1501-11).

17  Contemporaneously with promulgating this regulation, FERC interpreted it, and implicitly, the

18  identically worded language of the governing statute.[27]  Specifically, FERC stated that "when

19  _____

[26]        For example, numerous "instant messages" authored or received by Erin Hunzeker, and
20  other statements allegedly made by or to Hunzeker, are included in the "administrative record."
See, e.g., AR 110 n.68, 131 n.148, 135, 991, 1458-59, 1462, 1582-85, 1635-37, 3947, 4048-49,
21  4642-43, 4653-55, 4759, 4762-63, 4956-58, 4971-78, 4980-81, 5004-05, 5007-08, 5580-81,
5585-86, 5620, 5651, 5770-71, 6062, 6116.  According to Hunzeker's sworn declaration,
22  Enforcement deposed him twice.  ECF No. 153 at 6 ¶ 15 ("FERC deposed me twice in connection
with its investigation in this matter.  During those depositions, I provided testimony regarding
23  several of the communications and other topics discussed in this declaration.").  Yet the
transcripts of his depositions are not included in the "administrative record," and FERC offers no
24  explanation for the omission.  Such an "administrative record" cannot be the basis for a neutral
"adjudication" by FERC or by this Court.

25  [27]        It does not matter whether this is considered an interpretation of the regulation or of the
governing statute, because they are identically worded.  The standard for reviewing FERC's
26  interpretation of its governing statute is plainly met here.  The court "must first determine
whether the intent of Congress is clear."  Aragon-Salazar v. Holder, 769 F.3d 699, 703-04 (9th
27  Cir. 2014) (internal quotation marks omitted).  If it is not, the court "must then determine whether
the agency's answer is based on a permissible construction of the statute."  Id. (internal quotation
28  marks omitted).  As discussed in the text, FERC's 1988 interpretation is an entirely permissible

17

1    Rule 1509 district court procedures are followed, the assessment of civil [penalties] by the

2    Commission *merely triggers the process leading to a de novo trial*." <u>1988 Procedures</u>, 53 Fed.

3    Reg. at 32038 (emphasis added).

4         FERC's 1988 position is entirely consistent with its much more recent unconditional

5    assurance to Defendants that "[i]f the Commission determines to send this matter to federal court,

6    staff may choose to offer calculations from testifying experts into evidence, and *Barclays and the*

7    *individual traders will have the opportunity to conduct appropriate discovery*." AR 1029 n.333

8    (emphasis added).[28]  FERC's current litigating position – that no discovery is warranted – does

9    not follow from the language of the statute or the regulation, and would work a significant

10   unfairness on Defendants.[29]

11        FERC argues that its 1988 interpretation of the regulations "predated the enactment of the

12   Energy Policy Act of 2005," and that its current interpretation, as stated in a more recent policy

13   statement, is that Defendants are entitled to "de novo review." ECF No. 52 at 10 n.2.  The Court

14   notes that FERC's papers, while recounting this history, does not expressly argue that its 1988

15   interpretation of the applicable regulation has been disavowed or overruled by FERC's current

16   institutional position.  As far as the Court can tell, FERC's institutional position has not changed.

17        The language of 16 U.S.C. § 823b(d)(3)(B) has not changed since 1986,[30] and the

18   language of 18 C.F.R. § 1509(b) has not changed since 1988.[31]  Accordingly, it is not clear why

19   construction of the statute.

20   [28]    FERC now argues that discovery should be limited to determine the disgorgement
21   amount.  <u>See, e.g.</u>, ECF No. 52 at 12.  However, there was no such express limitation stated when
     Enforcement offered Defendants (and FERC) the assurance of discovery in district court.

22   [29]    Accordingly, the Court need not wade into the complicated waters of determining what
23   level of deference, if any, to give to FERC's current litigating position.  <u>See</u> <u>Presidio Historical</u>
     <u>Ass'n v. Presidio Trust</u>, 811 F.3d 1154, 1166 n.7 (9th Cir. 2016) (deference to an agency's
24   litigating position varies "depending on the factual circumstances").

25   [30]    <u>See</u> P.L. 99-495, 100 Stat 1243 (October 16, 1986) ("The court shall have authority to
     *review de novo the law and the facts involved*, and shall have jurisdiction to enter a judgment
26   enforcing, modifying, and enforcing as so modified, or setting aside in whole or in Part …")
     (emphasis added).

27   [31]    <u>See</u> <u>1988 Procedures</u>, 53 Fed. Reg. at 32040 (promulgating 18 C.F.R § 385.1909(b)) ("[i]f
     the civil penalty is not paid within 60 calendar days after the assessment order is issued under
28   paragraph (a) of this section, the General Counsel, unless otherwise directed by the Commission,

18

1 the addition of anti-manipulation authority in the Energy Policy Act of 2005, and increasing the

2 amount of penalties FERC could seek, see 16 U.S.C. § 825*o*-1, would have any effect on the

3 interpretation of the unchanged provisions of 16 U.S.C. § 823b(d)(3)(B), or the unchanged

4 regulations governing the assessment of penalties.

5       FERC points out that a more recent policy statement does not contain the "de novo trial"

6 language, and instead repeats the language of the statute, which calls for "review de novo."  ECF

7 No. 52 at 11 n.2, citing 2006 Statement.  FERC's description of the two statements is correct, but

8 FERC does not explain how this new language effected a repudiation of the prior interpretation of

9 the unchanged statute and regulation.  To the contrary, rather than stating that a trial was no

10 longer permitted, it simply adopted the language of the statute, language which had not changed

11 since it was added to the law in 1986.

12       At oral argument, FERC asserted that it had overruled that position in ETRACOM LLC

13 and Michael Rosenberg, 155 FERC 61,284 at ¶ 35 (F.E.R.C. June 17, 2016).  See Transcript

14 at 30.  However, ETRACOM  – which in any case is an Order Assessing Civil Penalties, not a

15 policy statement – does not even mention the 1988 policy statement.  Moreover, the document's

16 discussion of the review standard appears to confirm, rather than overrule, the 1988 policy

17 statement's position that the election to go to federal court "merely triggers the process leading to

18 a de novo trial":

19 > The Commission's position is that the "authority to review de
20 > novo" provided by statute under FPA section 31(d)(3) provides
> substantial procedural discretion to the district court based upon the
21 > particular circumstances of the case.  In some cases, the court may
> decide that a review of the order itself and of the record of the
22 > administrative proceeding provides a sufficient basis for
> determination. But, in other cases, *the court has discretion to decide*
23 > *that supplemental evidence is needed and that discovery is*
> *warranted.*

24 ETRACOM, 155 FERC 61,284 ¶ 35 (emphasis added).  FERC knows how to overrule prior

25 policy statements when it wishes to do so.  See Enforcement of Statutes, Regulations & Orders

26 ("2008 Statement"), 123 FERC ¶ 61,156, 62,010 (May 15, 2008) ("[a]ccordingly, we issue this

27 will institute an action in the appropriate United States District Court for an order affirming the
assessment of the civil penalty").

28

1   Revised Policy Statement, *which supersedes our 2005 Policy Statement*") (emphasis added).  It

2   did not do so here.

3          Moreover, FERC offers no logical explanation for re-interpreting either the language of

4   the statute or the regulation in the way it suggests.  The enactment of the Energy Policy Act of

5   2005 increased the penalties FERC could seek from $10,000 per day, to $1 million per day.  See

6   Section 1284(e)(2) of the Energy Policy Act of 2005, P.L. 109-58, 119 Stat 594; 16 U.S.C.

7   § 825*o*-1(b).  FERC offers no explanation for the counterintuitive notion that a 100-fold *increase*

8   in Defendants' potential liability should *reduce* the process they are entitled to.

9          Finally, nothing in the wording of the statute gives any hint that such divergent results

10  would obtain depending on whether the assessed party chose the ALJ route or the district court

11  route.

12                  3.   Specific language

13                       a.   "Review"

14         FERC argues that by using the word "review," Congress cannot have intended to

15  authorize the district court "to look beyond the record submitted to the Commission in the

16  administrative proceeding" by Enforcement and the Defendants.  ECF No. 52 at 11.  In support,

17  FERC cites Kearney v. Standard Ins. Co., 175 F.3d 1084, 1094 (9th Cir. 1999) (en banc), cert.

18  denied, 528 U.S. 964 (1999), a case decided under the Employment Retirement Income Security

19  Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.   ECF No. 166 at 12.  In Kearney, the district

20  court's review of the ERISA benefits denial was governed by the "de novo" standard.  Kearney,

21  175 F.3d at 1090.  The Ninth Circuit held in Kearney that under that standard, the district court

22  should look only at the record that was presented to the ERISA administrator, whose decision was

23  under review.  Id. at 1091 (the district judge did not abuse his discretion in limiting review "to the

24  evidence that was before the administrator").  FERC commendably concedes that "the FPA

25  differs from ERISA," although it argues that "the Court has similar discretion here as part of its

26  de novo review."  ECF No. 166 at 13.

27         In fact, the difference between the de novo review authorized in Kearney, and the de novo

28  review authorized here, goes much deeper than FERC's concession.  Under the ERISA statute,

                                        20

1  the administrator whose decision is being reviewed was a *fiduciary* for the person seeking

2  benefits.[32]  Neither FERC, nor its enforcement staff, are even alleged to be fiduciaries for the

3  Defendants.  However, a principal reason for limiting review to the administrative record in

4  <u>Kearney</u> was precisely because the court was called upon to review a fiduciary's decision.

5  <u>Kearney</u>, 175 F.3d at 1094 ("The means that suggests itself for accomplishing trial of disputed

6  facts, *while preserving the value of the fiduciary review procedure*, keeping costs and premiums

7  down, and minimizing diversion of benefit money to litigation expense, *is trial on the*

8  *administrative record*, in cases where the trial court does not find it necessary under *Mongeluzo*

9  to consider additional evidence") (citing <u>Mongeluzo v. Baxter Travenol Disability Ben. Plan</u>, 46

10  F.3d 938, 943 (9th Cir.1995)) (emphases added).

11       At no time was FERC's role, or that of its enforcement staff, that of a fiduciary.  Rather,

12  FERC is the enforcer of the governing statute, and therefore acts as a civil prosecutor before this

13  Court.  The Court has no reason whatsoever to question the diligence or fairness of the

14  Enforcement staff or the FERC itself.[33]  The Court sees nothing in the record before it to doubt

15  that FERC is composed of persons "of conscience and intellectual discipline, capable of judging a

16  particular controversy fairly on the basis of its own circumstances."  <u>Withrow v. Larkin</u>, 421 U.S.

17  35, 55 (1975) (quoting <u>United States v. Morgan</u>, 313 U.S. 409, 421(1941)).  However, FERC in

18  issuing the Assessment Order was not "hearing and deciding on the basis of the evidence"

19  presented at a "contested hearing," as was the state Examining Board in <u>Withrow</u>, or the "Cabinet

20  officers charged by Congress with *adjudicatory* functions" in <u>Morgan</u>.[34]  FERC is wrong in

---

21  [32]       "The procedure the statute requires for disputed claims includes 'a reasonable opportunity

22  to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.'"  <u>Kearney</u>, 175 F.3d at 1094

23  (quoting 29 U.S.C. § 1133(2)).

24  [33]       For example, in its Staff Report, the Enforcement Staff reported to FERC that Barclays had given its full cooperation during the investigation.  AR 156.

25  [34]       See <u>Morgan</u>, 421 U.S. at 421 (emphasis added).  FERC's argument here would be more

26  properly directed at a defense of its ALJ procedures, where it would be called upon to render a fair decision as adjudicator after having been exposed to evidence during the investigative phase:

27           No specific foundation has been presented for suspecting that the
          Board had been prejudiced by its investigation or would be disabled

28           from hearing and deciding on the basis of the evidence to be

1   arguing that any alleged lack of "objectivity" by Enforcement or FERC amounts to an assertion

2   "that the Commissioners acted improperly."  See ECF No. 166 at 13.  In this situation, it appears

3   to be FERC's proper role to act as an aggressive enforcer – a civil prosecutor – of the FPA, and

4   not to be an objective adjudicator of the facts.

5        In any event, FERC is not correct when it argues that the word "review" necessarily

6   means that the district court is limited to the administrative record.  When Congress intends to

7   limit de novo "review" to the administrative record, it knows how to do so.  See 5 U.S.C.A. §

8   552(a)(4)(A)(vii) ("In any action by a requester regarding the waiver of fees under this section,

9   the court shall determine the matter de novo: *Provided*, That the court's review of the matter shall

10  be limited to the record before the agency.").  Congress did not do so here.[35]

11       The statutes FERC cited to the Court at oral argument also confirm that when Congress

12  means to limit district court "review" to an administrative record created by the agency, it says so,

13  explicitly.  See 33 U.S.C.A. §§ 1319(g)(8)(B) (Clean Water Act ) ("[t]he Administrator or the

14  Secretary shall promptly file in such court a certified copy of the record on which the order was

15  issued"), 1321(b)(6)(G) (Water Pollution Control Act) (same); 42 U.S.C. §§ 300h-2(c)(6) (Safe

16  Drinking Water Act) ("[t]he Administrator shall promptly file in such court a certified copy of the

17  record on which such order was imposed"), 7413(d)(4) (Clean Air Act) ("the Administrator shall

18  file in such court a certified copy, or certified index, as appropriate, of the record on which the

19  administrative penalty order or assessment was issued") , 9609(a)(4) (Comprehensive

20  Environmental Response, Compensation, and Liability Act ("CERCLA"))("[t]he President shall

21  promptly file in such court a certified copy of the record upon which such violation was found or

22

23        presented at the contested hearing.  The mere exposure to evidence
          presented in nonadversary investigative procedures is insufficient in
24        itself to impugn the fairness of the board members at a later
          adversary hearing.

25  Withrow, 421 U.S. at 55.

26  [35]   It is not clear to the Court what point FERC was making with its citations at oral argument
    to 49 U.S.C. §§ 114(v)(3) (which makes no reference to "review" in district court), 14914 (same),
27  or to 49 C.F.R. §§ 107.317 (which makes no reference to any court proceedings), 107.319 (same),
    1503.413 (same).  See Transcript at 17-21.

28

1   such penalty imposed").

2          Also, in <u>United States v. First City Nat. Bank of Houston</u>, 386 U.S. 361 (1967), the

3   applicable statute provided that "[i]n any such action, the court shall *review de novo the issues*

4   *presented*." 12 U.S.C. § 1828(c)(7)(A) (emphasis added).  In interpreting this phrase – strikingly

5   similar to the language of the statute at issue here – the Court cautioned against focusing on the

6   word "review," because "[t]he critical words seem to us to be 'de novo' and 'issues presented.'"

7   <u>First City</u>, 386 U.S. at 368.  Indeed, it noted that "[t]he words 'review' and 'trial' might

8   conceivably be used interchangeably." <u>Id.</u>[36]

9          Here, the governing statute nowhere requires FERC to file an "administrative record" with

10  the Court, or to certify what facts or evidence it relied upon in making its assessment.  Thus, the

11  Court has no way to know whether, for example, FERC considered and relied upon the testimony

12  of Hunzeker (or other deposed witnesses whose transcripts are not included in the "record"), but

13  Enforcement simply decided it was not necessary to include his testimony in the "administrative

14  record."

15                    b.   "The facts involved"

16         In <u>Wilson</u>, the statute instructed the court to determine the appropriate relief available in

17  light of "all the facts and circumstances," a phrase that is similar to "the facts involved." <u>See</u>

18  <u>Wilson</u>, 705 F.3d at 994 (quoting 26 U.S.C. § 6015(e)(1)(A), (f)(1)).  Having concluded that the

19  word "determine" signaled that the court was to use a "de novo" standard in making its decision,

20  <u>Wilson</u> set out to determine whether "all the facts and circumstances" limited the court to the

21  administrative record compiled by the IRS:

22                 In the absence of any limiting language directing the Tax Court to
                   consider only that evidence before the Commissioner during the
23                 administrative phase of review, "determining" the validity of a
                   taxpayer's request for innocent spouse relief in light of "all the facts
24                 and circumstances" suggests a de novo scope of *evidentiary* review
                   ….
25
    <u>Wilson</u>, 705 F.3d at 988 (emphasis added).  The Ninth Circuit accordingly found that the Tax
26

_____

27  [36]      Moreover, as in <u>First City</u>, the FERC's Assessment here is "informal, no hearings in the
    customary sense" having been conducted.  <u>See</u> <u>First City</u>, 386 U.S. at 368.  In addition, as in <u>First</u>
28  <u>City</u>, "no record in the customary sense" has been created.  <u>Id.</u>

                                                 23

1    Court was correct to consider evidence beyond the administrative record compiled by the agency.

2    "'Taking into account all the facts and circumstances' is not possible if the Tax Court can review

3    only the evidence available at the time of the Commissioner's prior determination." <u>Wilson</u>, 705

4    F.3d at 989.  FERC identifies no language in the statute, nor its regulations or policy statements

5    that limit (or purport to limit) this Court's consideration to the evidence presented to FERC

6    during the administrative process.

7        Defendants also argue that their Due Process rights compel the Court to afford them full

8    discovery.  The Court has no need to engage in a constitutional analysis, because the language of

9    the statute is sufficiently clear that Congress intended Defendants to have a chance to defend

10   themselves in a contested, adjudicatory setting, whether before the ALJ or in this Court.  <u>See Fair</u>

11   <u>Housing Council of San Fernando Valley v. Roommate.com, LLC</u>, 666 F.3d 1216, 1222 (9th Cir.

12   2012) ("[i]t's a well-established principle that statutes will be interpreted to avoid constitutional

13   difficulties") (internal quotation marks omitted).  However, the Court notes that even in the

14   absence of clear intent by Congress, a contrary determination that Congress intended to allow this

15   Court to affirm $487.9 million in penalties and disgorgements against Defendants without ever

16   affording them the opportunity to defend themselves in a contested, adjudicatory setting before a

17   neutral decision-maker would require a thorough analysis of Defendants' constitutional

18   concerns.[37]  <u>See Maxim Power Corp.</u>, 196 F. Supp. 3d at 194-97 (balancing defendant's "private

19   interest" with FERC's "interest in efficient administration of penalties under Option 2").

20            c.   <u>"Institute an action"</u>

21       Defendants argue that because the statute contemplates "an action" in district court, they

22   are entitled to full discovery and all the protections of the Federal Rules of Civil Procedure.  ECF

23   No. 136 at 56.  It is not seriously in dispute that this action is governed by the Federal Rules of

24   Civil Procedure.  <u>See</u> Fed. R. Civ. P. 1 (with exceptions not relevant here, "[t]hese rules govern

25   the procedure in all civil actions and proceedings in the United States district courts …").

26   However, Congress has in other cases called for the institution of "a civil action" to review an

27   _____

28   [37]     The Court also sees no need to take Defendants up on their request for a legislative history
     analysis, as the meaning of the statute is sufficiently clear.

24

1    administrative decision, while limiting that review to the administrative record.  See 42 U.S.C.

2    § 405(g) (plaintiff may file "a civil action," and the court's decision will be based "upon the

3    pleadings and transcript of the record" before the agency).  Therefore, the fact that this

4    proceeding is called an "action" does not resolve the questions before the Court.

5           B.  Other Considerations

6           FERC argues that since it issued the Assessment Order based only upon the administrative

7    record, the Court should decide this case based only upon that record.  See ECF No. 52 at 9, 166

8    at 15-16.  As discussed above, there is no real showing that FERC based its determination upon

9    this "administrative record."

10          In any event, this argument fails to acknowledge the fundamentally different position

11   FERC was in when it was called upon to decide whether to civilly prosecute Defendants, and the

12   position this Court is in, as neutral decision-maker of the conflict between FERC and Defendants.

13   FERC has identified nothing in any statute, regulation or policy statement that requires FERC to

14   act as a neutral decision-maker when it was deciding whether to prosecute Defendants.  Thus, as

15   far as the Court can tell, FERC is not required to find by a preponderance of the evidence (or by

16   any other standard) that the evidence warrants filing suit.  To the contrary, FERC is charged by

17   statute with *enforcing* and administering the law, not offering a neutral interpretation of it, or

18   dispassionately hearing Defendants' arguments that they should not be sued.  Accordingly, there

19   is nothing prohibiting FERC from deciding to prosecute based entirely on evidence presented by

20   its Enforcement staff, ex parte presentations made to it by Enforcement staff urging it to file

21   suit,[38] and even its own desire to "push the envelope" or to make new law on what constitutes

22   ───────────────
     [38]      The Court is aware that FERC rules prohibit "off the record" communications between
     Enforcement and FERC once the OSC issues.  2008 Statement, 123 FERC 61156 at 62014 ¶ 36.

23   However, this does not seem to prohibit ex parte communications, as long as they are put "on the
     record," and it does not prohibit FERC from making the record "non-public."  See 18 C.F.R.

24   § 375.205(a)(10) (authorizing a "closed meeting" when the topic is "the Commission's
     participation in a civil action or proceeding").  Moreover, the Court is not aware of any rules that

25   prohibit Enforcement staff from engaging in off the record communications *before* the OSC
     issues.  The Court is also aware that throughout FERC's Enforcement proceedings, "the subject

26   of an investigation has the right and the means to make its views known to staff and the
     Commission."  2008 Statement, 123 FERC 61156 at 62015 ¶ 40.  However, this does not give

27   subjects access to the witnesses who testified before the Enforcement staff, and whose testimony
     was presented to FERC in the administrative record.

28

                                               25

1  market manipulation in the energy markets.[39]  In fact, according to the statute, FERC's

2  determination that Defendants violated the law is simply a mechanism for getting the case into

3  district court.  There is nothing in the statute that requires that this determination be based upon a

4  neutral adjudicative decision-making process.

5  In the normal civil action in this Court, the plaintiff (or whoever bears the burden of

6  proof) must actually "prove" its case, and this is no less true when nearly $500 million is at stake.

7  Such proof involves subjecting the evidence presented by both sides to the give and take of the

8  adversarial system.  This has not happened thus far.  There is nothing in the record that shows that

9  Enforcement "proved" that these Defendants broke the law, or that Defendants had a true

10 opportunity to defend themselves.  Being given the opportunity to provide "affidavits" – from

11 volunteers – is not the same as the ability to cross-examine Enforcement's witnesses.  Indeed,

12 even if this Court were to agree that the sole question presented is whether FERC should be

13 affirmed based upon the "administrative record," it would at least allow Defendants the

14 opportunity to subject *that* evidence to proof.  At a minimum, Defendants would have the

15 opportunity to depose any person whose evidence (testimonial or otherwise) Enforcement

16 received or presented to FERC.[40]

17 VI.    CONCLUSION

18 As do the other courts that have examined this issue, this Court "thinks it more natural to

19 _____

20 [39]    For example, Defendants assert that the Intercontinental Exchange ("ICE") conducted an inquiry into allegations similar to those made against Defendants here, and found that Defendants

21 "did not engage in any improper conduct."  ECF No. 52 at 23.  The Court does not know if this assertion is correct, but if it is, it might work an injustice on Defendants to deprive them of the

22 ability to compel production of this allegedly exculpatory report.  The Court is aware that Defendants' presentations were also before FERC when it made its decision.  However, there

23 appears to be nothing in any statute, regulation or policy statement that prohibits FERC from disregarding those submissions, or according them very little weight.

24 [40]    The Court is aware of FERC's regulations that require Enforcement staff to disclose any exculpatory ("Brady") material it happens to find.  2009 Statement, 129 FERC 61248 at 62340

25 ¶ 9 ("During the course of an investigation conducted under Section 1b of the Commission's regulations, Enforcement staff will scrutinize materials it receives from sources other than the

26 investigative subject(s) for material that would be required to be disclosed under *Brady*. Any such materials or information that are not known to be in the subject's possession shall be provided to

27 the subject.").  As far as the Court can tell, this policy does not require Enforcement to present to FERC all the evidence it collected, to actively seek out exculpatory material, or to follow leads

28 that might lead to exculpatory material.

1   assume that both Options allow defendants to fully develop their factual defenses, just in different

2   settings." City Power, 199 F. Supp. 3d at 232. Indeed, the district court option "places judicial

3   review in a district court, where factual development through discovery is the norm." Id. at 231.

4           Accordingly, IT IS HEREBY ORDERED that:

5   1.  FERC's Motion To Affirm Civil Penalties (ECF No. 125) is DENIED, but without

6           prejudice to its renewal as a dispositive motion under the Federal Rules of Civil

7           Procedure, at an appropriate time.

8   2.  The parties are entitled to conduct discovery pursuant to the Federal Rules of Civil

9           Procedure.

10  3.  Within sixty (60) days of the date of this order, the parties shall again meet and confer as

11          required by Fed. R. Civ. P. 26(f) and shall prepare and submit to the Court a joint status

12          report that includes the Rule 26(f) discovery plan. The joint status report shall address the

13          matters set forth in this Court's Order Requiring Joint Status Report, ECF No. 2 ¶ 4.

14  IT IS SO ORDERED.

15

16  Dated: March 28, 2017

17

18                                          Troy L. Nunley
                                            United States District Judge
19

20

21

22

23

24

25

26

27

28