UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FEDERAL ENERGY REGULATORY
COMMISSION,

           Plaintiff,

     v.

BARCLAYS BANK PLC, et al.,

           Defendants.

No.  2:13-cv-02093-TLN-DB

**ORDER**

      This matter is before the Court pursuant to Defendant Ryan Smith's ("Defendant Smith") Motion for Judgment on the Pleadings.  (ECF No. 212.)  Federal Energy Regulatory Commission ("FERC") opposes the motion.  (ECF No. 220.)  Defendant Smith has filed a reply.  (ECF No. 221.)  On August 24, 2017, the Court held a hearing and heard oral argument on this motion.[1]  The Court has carefully considered the arguments raised by the parties.  For the reasons set forth below, Defendant Smith's motion is GRANTED.

     **I.**     **INTRODUCTION AND BACKGROUND**

      Defendant Smith contends that the instant action is time-barred by 28 U.S.C. § 2462 as it relates to him.  The Court has discussed the nature of the allegations against Defendant Smith and

---

[1] After the hearing, FERC filed a motion for leave to file a supplemental memorandum.  (ECF No. 230.)  It was denied as the Court did not require further briefing to resolve the instant motion.  (ECF No. 231.)

the other Defendants in detail. (*See* ECF No. 88 ("May 22, 2015 Order").) An additional, detailed recitation is unnecessary to resolve the instant motion. Suffice it to say that FERC alleges that Defendant Smith participated "in an unlawful scheme to manipulate electricity markets in and around California" during his tenure with Defendant Barclays Bank PLC ("Barclays") and that FERC contends this violated Section 222 of the Federal Power Act ("FPA"), 16 U.S.C. § 824v, and 18 C.F.R. § 1c.2 ("Anti-Manipulation Rule"). (ECF No. 1 at ¶¶ 3, 36, 41, 44–46, 126.) On July 16, 2013, FERC assessed Defendant Smith a $1 million civil penalty for his alleged violation of those provisions. (Order Assessing Civil Penalties ("Assessment Order"), ECF No. 1-1). On October 9, 2013, FERC instituted this action, pursuant to Section 31(d)(3)(B) of the FPA, 16 U.S.C. § 823b(d)(3)(B), seeking an order from this Court affirming that penalty. (ECF No. 1 at ¶ 6.)

There are four dates relevant to the instant motion. The first is March 29, 2007 — the date on which Defendant Smith states his employment with Barclays was terminated. (ECF No. 212 at 6, 8.) The second is June 21, 2011. (ECF No. 212 at 7.) It is undisputed that this is the date that Defendant Smith entered into an agreement ("Tolling Agreement") to toll the statute of limitations in his case. (*See* Tolling Agreement, ECF No. 45-1 at 10.) The third is October 31, 2012 — the date FERC issued its Order to Show Cause and Notice of Proposed Penalty ("OSC") addressed to Defendant Smith and the other Defendants. (ECF No. 1 at ¶ 41.) The fourth is October 9, 2013 — the date the instant action was filed in this Court. (ECF No. 1.)

FERC has opposed the motion on two purely legal points and has not contested the aforementioned dates. The two questions that must be resolved in order to decide the instant motion are as follows: (1) whether the Tolling Agreement terminated according to its terms on October 31, 2012; and (2) if so, did the five-year statute of limitations supplied by 28 U.S.C. § 2462 continue to run until FERC filed this action on October 9, 2013? As discussed in more detail below, the Court concludes the answer to both questions is "yes." Consequently, Defendant Smith's motion must be granted.

Before analyzing the legal questions posed by the instant motion, the Court will make two observations regarding the four dates identified above, specifically the first and third dates.

2

FERC's Assessment Order, which FERC incorporated by reference into its pleading, states that Defendant Smith's "employment at Barclays was terminated in March 2007." (ECF No. 1-1 at 51 n.252.) FERC's opposition does not take issue with the precise date offered by Defendant Smith and use of any other date in March 2007 would not result in a different outcome for this motion. Consequently, the Court will use March 29, 2007, for convenience. With respect to the OSC, FERC disputes whether the OSC constituted the "written notice" required by Defendant Smith's Tolling Agreement. However, FERC has not opposed the motion on the ground that if the OSC does constitute such "written notice" that it would be notice as of a different date.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) permits a party to seek judgment on the pleadings "[a]fter the pleadings are closed — but early enough not to delay trial." "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Pit River Tribe v. Bureau of Land Management*, 793 F.3d 1147, 1155 (9th Cir. 2015) (citing *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "In considering a motion for judgment on the pleadings, a court may consider 'documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion . . . into a motion for summary judgment." *Lewis v. Russell*, 838 F. Supp. 2d 1063, 1067 n.3 (E.D. Cal. 2012) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

## III. ANALYSIS

### A. Whether the Tolling Agreement Terminated on October 31, 2012

The first issue raised by Defendant Smith's motion presents a rather straightforward contractual interpretation question — whether the substance of the OSC constituted "written notice" to Defendant Smith that FERC's investigation into his conduct in this case "terminated."

Winnowing the parties' legal arguments to this question requires some preliminary discussion where the Court will identify the following three things: (i) the operative text of the Tolling Agreement; (ii) relevant excerpts from the OSC; and (iii) the area of agreement between the parties on the applicable contract law principles. The Court will then briefly explain why none of FERC's three arguments relating to the Tolling Agreement are persuasive. At which point, all that remains is resolving the contractual interpretation question mentioned at the outset.

### i. Preliminary Discussion

#### a. Operative Text of the Tolling Agreement

By entering into the Tolling Agreement, Defendant Smith agreed to "toll the running of any statute of limitations for all claims brought by [FERC] and/or its staff arising from [his] conduct in the *Investigation into Allegations of Market Manipulation of the Electric Markets in the West*, Docket No. IN08-8-000, if any . . . that are part of the Investigation by FERC's Office of Enforcement ("Enforcement")." (ECF No. 45-1 at 10.) It was also agreed that this "tolling of the statute of limitations shall continue until Enforcement provides written notice to Mr. Smith that the investigation is terminated or, in the alternative, Mr. Smith elects to terminate the agreement by providing sixty (60) days written notice to the Director of Enforcement and Enforcement lead counsel prior to the effective date of termination." (ECF No. 45-1 at 10.) There is no dispute that the claim that is the subject of the instant motion falls within the sweep of the Tolling Agreement and that tolling began on June 21, 2011.

#### b. Relevant Excerpts of the OSC

The OSC was issued on October 31, 2012. It was directed to Defendant Smith and the other Defendants. The OSC attaches the Enforcement Staff Report and Recommendation ("Staff R & R") as an appendix. [2] The OSC explains the Staff R & R "describes the background of Enforcement staff's investigation, findings and analysis, and recommended sanctions." (OSC at 2 n.8.) References to the OSC in this Order are to the document including its appendix.

---

[2]    A hard copy of the OSC was lodged with the Court. (*See* ECF No. 115.) Consequently, it does not have ECF generated page numbers. However, the Staff R & R does have ECF pagination as it is also an exhibit to FERC's pleading (ECF No. 1-2). References to the first five pages of OSC, i.e., aside from the Staff R & R, will use the pagination from the original document in the following format — (OSC at __). References to the Staff R & R will use the ECF pagination.

Here, the question is whether the actual words contained in the OSC constituted "written notice" to Defendant Smith that the relevant investigation into his conduct terminated. Consequently, it will not be a fruitful endeavor to attempt to concisely summarize the entirety of the seventy-three pages of the OSC. Rather, the Court will do what it did at the motion hearing — excerpt six sentences from the OSC that the Court viewed as particularly revealing. (*See* Tr. of Proceeding, Aug. 24, 2017, ECF No. 228 at 25:13–26:6.) As it did at the hearing, the Court will substitute "you" or "your" for Defendant Smith, whether he is referenced individually or as part of a group, as the OSC is directed to him. Those six sentences are as follows:[3]

> "[Your] case present[s] allegations by [Enforcement] staff of violations of [FERC's] Prohibition of Energy Market Manipulation."[4] "These allegations arose out of an investigation conducted by [Enforcement] staff and are described [in the attached Staff R & R]."[5] "[Enforcement] has concluded that that [Barclays] and its individual traders[, including you,] manipulated the electricity markets in and around California from November 2006 to December 2008 in violation of 18 C.F.R. § 1c.2 (2012)."[6] "[Enforcement s]taff has concluded that Barclays intentionally manipulated the settlement of daily indices to benefit financial swap positions through [your] trading."[7] "[Enforcement s]taff concludes that [you] w[ere] an active participant in Barclays' manipulation."[8] "Based on the above conclusions of law and fact, [Enforcement] recommends [FERC] issue . . . [you] an Order to Show Cause . . . why [you] should not be subject to . . . [a] $1 million civil penalty."[9]

### c. Applicable Contract Law Principles

The parties agree that the Tolling Agreement is a contract governed by federal common law. (ECF No. 228 at 19:1–12.) Similarly, the parties agree that under federal common law ordinary contract principles apply. (ECF No. 228 at 19:13–21.) Courts interpreting contracts

---

[3] For purposes of these six sentences only, the Court will place its citations in footnotes.

[4] (OSC at 2.)

[5] (OSC at 2.)

[6] (ECF No. 1-2 at 4.)

[7] (ECF No. 1-2 at 42.)

[8] (ECF No. 1-2 at 49.)

[9] (ECF No. 1-2 at 69.)

governed by federal law "look to general principles for interpreting contracts." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999). "A primary rule of interpretation is that '[t]he common or normal meaning of language will be given to the words of a contract unless circumstances show that in a particular case a special meaning should be attached to it.'" *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987) (quoting 4 S. Williston, *A Treatise on the Law of Contracts* § 618 (W. Jaeger 3d ed. 1961)). The parties are in agreement that this principle applies to the Tolling Agreement. (ECF No. 228 at 19:13–21.)

ii.     *FERC's Three Principle Arguments*

FERC's opposition provides three principle reasons it contends the OSC does not terminate the Tolling Agreement. First, the investigation had not actually terminated. (ECF No. 220 at 11, 14–16.) Second, the OSC, if anything, constitutes "implied notice" and "the Tolling Agreement's terms do not allow for implied notice" to terminate the agreement. (ECF No. 220 at 11–13.) Third, even if the OSC constitutes "written notice" that the investigation had terminated, that notice was not "from Enforcement." (ECF No. 220 at 6, 11–12.) The Court finds none of these arguments persuasive.

The Court need not tarry long over FERC's first argument.[10] Here, the question is whether Defendant Smith was given "written notice" within the meaning of the Tolling Agreement that the investigation had terminated *irrespective of whether it actually did*. This much is clear from each party's response to the following question posed by the Court at the motion hearing: "Now, if FERC's investigation had not terminated, but nevertheless [E]nforcement provided Mr. Smith written notice that it had terminated, FERC would concede that this terminates the [T]olling [A]greement, correct?" (ECF No. 228 at 20:1–4.) Counsel for FERC and Defendant Smith each agreed that this would terminate the Tolling Agreement. (ECF No. 228 at 20:5–9.) Consequently, the Court must only resolve whether the words of the OSC provided the requisite notice to Defendant Smith.

---

[10]     FERC's argument is at least in part a response to Defendant Smith's argument in his opening brief that the OSC necessarily ended FERC's investigation. (*E.g.*, ECF No. 212 at 14.) The Court declines to weigh in on Defendant Smith's contention as it is unnecessary to resolve the instant motion.

6

In order to address FERC's second argument it is first necessary to understand what FERC means by "implied notice." In its opposition, FERC observes that Defendant Smith's opening brief states the "OSC 'afforded [him] written notice of the termination of the investigation[.]'" (ECF No. 220 at 11 (quoting ECF No. 212 at 14).) FERC apparently views this as an "implicit[] conce[ssion] that the OSC does not actually state Enforcement ha[d] terminated its investigation" and, therefore, Defendant Smith must be suggesting the OSC gave him "implied notice." (ECF No. 220 at 11.) Nowhere in the text of the Tolling Agreement does it require the use of particular words or that the "written notice" take a particular form in order to be effective. So, FERC's position cannot prevail unless the words "written notice" without more has some specialized meaning that requires either use of a particular form, particular words, or both. However, at the motion hearing, FERC's counsel acknowledged there are "no magic words that are required by the tolling agreement." (ECF No. 228 at 22:22–23.) The Court agrees. The Court's own research reveals no case by any Article III court that has held as a matter of federal common law applicable to contracts that the words "written notice" without more has a specialized meaning requiring the use of special words or that the notice take a particular form. Consequently, the Court's task in measuring whether "written notice" was given is to do so using the "common or normal meaning" of those words. *Hunt Wesson Foods, Inc.*, 817 F.2d at 77.

FERC's third argument cannot withstand close scrutiny. Indeed, it was not entirely clear what FERC's argument entailed from its opposition. As close as the opposition comes to explaining what its third argument means is as follows: (i) "[A] plain reading of the Tolling Agreement . . . requires '*written notice* to Mr. Smith that the investigation is terminated . . . come *from Enforcement* — not from the Commission that issued the OSC." (ECF No. 220 at 6 (emphasis retained).) (ii) "Enforcement did not issue the OSC, the Commission issued it." (ECF No. 220 at 12.) At first blush this seems to suggest that FERC's Office of Enforcement is legally distinct from FERC itself. However, at the motion hearing it was conceded by FERC's counsel that "they're not separate legal entities." (ECF No. 228 at 24:15–16.) Rather, at the hearing FERC suggested that effective "written notice . . . from [E]nforcement" as used in the Tolling Agreement should be interpreted to mean "written notice" from "a director of [E]nforcement and

7

the lead attorney in the investigation." (ECF No. 228 at 24:15–23.)  There is a fundamental

problem with this argument — the Tolling Agreement does not say this.  Those are the persons *to*

*whom Defendant Smith must send notice* if he elected to terminate the agreement.  (*See* ECF No.

45-1 at 10.)  Parties to contracts generally have wide latitude to set the terms of their agreements

*before* they are entered into.  There is nothing to prevent a party from negotiating for very

specific notice provisions.  *See, e.g.*, *United States Postal Serv. v. Ester*, 836 F.3d 1189, 1197 (9th

Cir. 2016) (observing the contract at issue did not specify "whether the notice of exercise [of an

option under that contract] must be delivered by hand service or certified mail; whether it can be

delivered to an agent, attorney, or employee; whether [the recipient] must personally sign the

delivery receipt; or that the name-and-address box on the form notice must accurately state the

names and legal role of each and every [recipient]").  Where a party has not negotiated such

specific notice provisions, that party is not free — *after the fact* — to unilaterally impose those

provisions on the other party to the contract.  *Id.*  ("It only says that written notice must be 'given

in writing to the Lessor.'  A reasonable interpretation of the word 'given' does not imply the

degree of punctiliousness Bellevue insists is required.").  This is precisely what FERC attempts to

do here.

The implication of FERC's third argument is that Enforcement staff was somehow caught

by surprise when Defendant Smith received the OSC (including the Staff R&R).  This is

irreconcilable with FERC's pleading in this case and FERC's own policy.  That pleading

"expressly adopted and incorporated by reference" the Staff R&R and the Assessment Order.

(ECF No. 1 at ¶¶ 40, 44.)  The former contains a recommendation from Enforcement "staff" that

FERC make the Staff R&R "*public*."  (ECF No. 1-2 at 69 (emphasis added).)  The latter describes

Enforcement staff as the "proponent of the Order to Show Cause."  (ECF No. 1-1 at 12.)

Moreover, FERC's Revised Policy Statement on Enforcement, 123 FERC ¶ 61156, 62014 (2008),

makes clear that if FERC "determines . . . an Order to Show Cause is appropriate" it will "issue

the Order to Show Cause with Enforcement staff's report attached."

Having dispensed with each of FERC's arguments, the Court now turns to whether the

OSC provided Defendant Smith "written notice" that the investigation into his conduct had

terminated as required by the Tolling Agreement.

###### iii. *Whether the OSC provided Defendant Smith with "Written Notice"*

There can be no reasonable contention that the OSC is not "written" or a writing. Therefore, the question is whether the text of the OSC provided Defendant Smith "notice" that the investigation into his alleged conduct had terminated. This turns on the common or normal meaning of the word "notice." "Notice" in the "everyday, common meaning of the term" means a "formal or informal warning or intimation of something: announcement." *United States v. Young*, 458 F.3d 998, 1007 (9th Cir. 2006) (quoting *Webster's Third New International Dictionary* 1544 (3d ed. 1986). Similarly, "[u]nderstood in its 'ordinary and popular sense,' . . . 'notify' means, in relevant part, 'to give notice of or report the occurrence of.'" *Metro Sales, Inc. v. Core Consulting Grp., LLC*, No. CV 15-3233 (DWF/SER), 2017 WL 3190561, at *6 (D. Minn. July 26, 2017) (citing Merriam-Webster, http://www.merriam-webster.com/dictionary/notify).

Whether Defendant Smith received "notice" does not turn on whether Defendant Smith subjectively concluded that he had been given notice the investigation was over. Similarly, it does not turn on whether FERC subjectively wanted to terminate the Tolling Agreement. Nor does the Tolling Agreement provide that it will end only if Defendant Smith is notified that the investigation terminated with a particular outcome, i.e., the investigation terminated with FERC concluding Defendant Smith's conduct did not warrant a penalty. Perhaps that was FERC's unexpressed intent, but the "unexpressed, subjective unilateral intent of one party is insufficient to bind the other contracting party[.]" *Firestone Tire & Rubber Co. v. United States*, 444 F.2d 547, 551 (Ct. Cl. 1971); *see also Rock v. McHugh*, 819 F. Supp. 2d 456, 467 (D. Md. 2011) (explaining that "federal . . . contract law appl[ies] the objective theory of contracts"). Similarly, the Tolling Agreement might have provided a termination option for FERC that mirrored Defendant Smith's — the "tolling of the statute of limitations shall continue until [FERC] elects to terminate the agreement by providing sixty (60) days written notice[.]" (*See* ECF No. 45-1 at 10.) But it does not.

An example will help show why the text of the OSC would have given a reader notice that its investigation had terminated. Assume that the Court included one or both of the following

sentences in a hypothetical order resolving the instant motion: (i) "Prior to drafting this Order, the Court *conducted* its examination of the OSC and *concluded* the OSC gave Mr. Smith the required notice." (ii) "Prior to drafting this Order, the Court *conducted* a hearing on this motion and *concluded* FERC could not satisfactorily explain why the text of the OSC would not give a person reading it the required notice." In the case of the second sentence, no ordinary person who reads English proficiently would think the "hearing" was ongoing. The same is true of the "examination" in the first. The use of the past tense "concluded" only bolsters that plain meaning.

Here, the OSC describes the Enforcement staff's investigation as having been "*conducted*." (OSC at 2 (emphasis added).) The executive summary of the Staff R&R begins with: "The Office of Enforcement . . . has *concluded* that Barclays . . . and its individual traders[, which included Mr. Smith,] manipulated the electricity markets in and around California from November 2006 to December 2008 in violation of 18 C.F.R. § 1c.2." (ECF No. 1-2 at 4 (emphasis added).) It bears repeating the final three lines quoted earlier in this Order from the OSC — this time with emphasis:

> "[Enforcement s]taff has *concluded* that Barclays intentionally manipulated the settlement of daily indices to benefit financial swap positions through [your] trading." (ECF No. 1-2 at 42 (emphasis added).) "[Enforcement s]taff *concludes* that [you] w[ere] an active participant in Barclays' manipulation." (ECF No. 1-2 at 49 (emphasis added).) "Based on the above *conclusions of law and fact*, [Enforcement] *recommends* [FERC] issue . . . [you] an order to show cause . . . why [you] should not be subject to . . . [a] *$1 million civil penalty*." (ECF No. 1-2 at 69 (emphasis added).)

At the hearing the Court squarely asked whether a letter addressed to Defendant Smith "from Enforcement" with the six excerpted sentences (quoted in III.A.i.b of this Order) and nothing more would have given him the required "written notice." (ECF No. 228 at 25:13–26:8.) FERC was unable to satisfactorily explain why those words did not communicate clearly that the investigation had terminated. This may be because counsel for FERC was coming to the realization, as the Court does here, that the meaning of those words is inescapable. In any event, for the foregoing reasons, the Court finds the Tolling Agreement terminated on October 31, 2012.

///

B. <u>Whether the Statute of Limitations Has Run?</u>

With respect to the second question raised by this motion, Defendant Smith's position is straightforward. In his view, a plain reading of the applicable statute of limitations requires the conclusion the action against him is time-barred. Defendant Smith argues that more than five years passed from the last date of his alleged misconduct before FERC filed an action in this Court, after giving effect to the period of time the statute of limitations was tolled by the Tolling Agreement.

FERC, on the other hand, offers two reasons for concluding the statute of limitations was tolled from the date it issued the OSC. First, FERC contends the issuance of the OSC commenced a "proceeding" within the meaning of the applicable statute of limitations. (ECF No. 220 at 16–19.) In FERC's view, this Court has already held that this is the case. (*See e.g.*, ECF No. 220 at 6, 9, 17.) Second, FERC suggests tolling would be appropriate because the purpose underlying the statute of limitation is adequately served by issuing the OSC. (ECF No. 220 at 19.) This is because the OSC "attached the Staff [R& R]" thereby "provid[ing Mr. Smith with] detailed notice of this case's allegations[.]" (ECF No. 220 at 19.)

A preliminary discussion before addressing the parties' positions will streamline the Court's analysis. In that discussion the Court will first cover the text and structure of Section 31(d) of the FPA, 16 U.S.C. § 823b(d), followed by the text and history of the applicable statute of limitations, 28 U.S.C. § 2462.

i.     *Preliminary Discussion*

a.     <u>Text and Structure of 16 U.S.C. § 823b(d)</u>

FERC is authorized to assess civil penalties for violations of the FPA "after notice and an opportunity for public hearing." 16 U.S.C. § 823b(c). However, FERC may only issue an "order assessing [such] a civil penalty against any person" after it has "provide[d] to such person notice of the proposed penalty." 16 U.S.C. § 823b(d)(1). With an exception not relevant here, the required "notice" must "inform such person of his opportunity to elect" between two options for adjudicating whether a penalty should be assessed at all, and if it should, whether the amount FERC would have imposed is appropriate. 16 U.S.C. § 823b(d)(1)–(3). "Both [options] require

FERC to 'assess' penalties 'by order,' but they differ in how they direct FERC to arrive at the penalty order." *Fed. Energy Regulatory Comm'n v. Maxim Power Corp.*, 196 F. Supp. 3d 181, 189 (D. Mass. 2016). They also differ markedly on what is to be done "[o]nce a penalty is assessed." *See id*. The first option, which the Court will refer to as "Option 1" in this Order, is set out in § 823b(d)(2). "Option 2" — which Defendant Smith chose — is set out in § 823b(d)(3). The Court will discuss each in turn.

Option 1 requires an adjudication prior to FERC assessing a penalty. It provides as follows:

> [FERC] shall assess the penalty, by order, after a determination of violation has been made on the record after an opportunity for an agency hearing pursuant to [5 U.S.C. § 554] before an administrative law judge . . . . Such assessment order shall include the administrative law judge's findings and the basis for such assessment.
>
> Any person against whom a penalty is assessed under this paragraph may . . . institute an action in the United States court of appeals for the appropriate judicial circuit for judicial review of such order . . . . The court shall have jurisdiction to enter a judgment affirming, modifying, or setting aside in whole or in [p]art, the order of [FERC], or the court may remand the proceeding to [FERC] for such further action as the court may direct.

16 U.S.C. § 823b(d)(2)(A)–(B). In short, "Option 1 . . . describes a traditional form of judicial review of agency action, based on the record developed in an agency proceeding, which is familiar in administrative law." *Fed. Energy Regulatory Comm'n v. City Power Mktg., LLC*, 199 F. Supp. 3d 218, 230 (D.D.C. 2016).

On the other hand, if the accused elects Option 2, the statute provides as follows:

> [FERC] shall promptly assess such penalty, by order . . . .
>
> If the civil penalty has not been paid within 60 calendar days . . . [FERC] shall institute an action in the appropriate district court of the United States for an order affirming the assessment of the civil penalty. The court shall have authority to review de novo the law and the facts involved, and shall have jurisdiction to enter a judgment enforcing, modifying, and enforcing as so modified, or setting aside in whole or in [p]art such assessment.

16 U.S.C. § 823b(d)(3)(A)–(B).

As the court observed in *City Power*, this is "a less familiar path." *City Power Mktg.,*

*LLC*, 199 F. Supp. 3d at 230.  Indeed, it generated a spate of published opinions, including by this Court (ECF No. 203 ("March 30, 2017 Order")), examining how Option 2 should proceed once the provided-for action has been instituted in federal district court.  This Court concluded that "this action is governed by the Federal Rules of Civil Procedure" and expressed its "agreement with every other federal court that has expressly addressed this issue, that Defendants are entitled to conduct discovery under the Federal Rules of Civil Procedure."  (ECF No. 203 at 2, 27.)  As the Court made clear in its March 30, 2017 Order, "the statute is sufficiently clear that Congress intended Defendants to have a chance to defend themselves in a contested, adjudicatory setting, whether before the ALJ [provided for in Option 1] or in this Court."  (ECF No. 203 at 24.)

Of particular relevance to the instant motion, those same opinions each discussed what Congress required of FERC where Option 2 is selected in the period of time between when the accused wrongdoer is given notice under § 823b(d)(1) and the filing of the provided-for action in federal district court.  They all came to the same conclusion.  "Option 2 calls for FERC to 'promptly assess' penalties 'by order' and does not set out any required procedures for arriving at such order."  *Maxim Power Corp.*, 196 F. Supp. 3d at 189–90; *City Power Mktg., LLC*, 199 F. Supp. 3d at 231 (explaining that "Option 2 does not mandate any particular agency procedures" by FERC prior to assessing a penalty); *Fed. Energy Regulatory Comm'n v. Silkman* ("*Silkman II*"), 233 F. Supp. 3d 201, 219 (D. Me. 2017) ("Option 2 does not dictate the procedures the Commission should use to assess the civil penalties.  The only statutory directive is promptness."); (ECF No. 203 at 10 ("If defendants choose the district court route instead, FERC determines – *without obtaining any additional evidence or argument* – whether a violation exists, and if so, 'promptly' assesses the penalty and later, files the action in the district court.") (emphasis retained).)

That is, whatever procedures FERC employed between issuing notice and assessing the penalty "arose from FERC's own policies, and are not derived from the express language of the statute."  *Silkman II*, 233 F. Supp. 3d at 219.

///

///

13

b. <u>Text and History of 28 U.S.C. § 2462</u>

The statute of limitations applicable in this case, 28 U.S.C. § 2462, provides in relevant part as follows:

> "Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued . . . ."

This statute of limitations is not specific to the FPA or the Anti-Manipulation Rule. Rather, "it governs many penalty provisions throughout the U.S. Code." *Gabelli v. S.E.C.*, 568 U.S. 442, 445 (2013). "Congress did not delegate administrative authority to . . . any particular agency to administer this statute of limitations, which is generally applicable to all federal agencies." *DLS Precision Fab LLC v. U.S. Immigration & Customs Enf't*, 867 F.3d 1079, 1087 n.1 (9th Cir. 2017). Consequently, this Court does not "owe *Chevron* or other deference" to FERC "regarding the interpretation of § 2462." *Id.*

Section 2462's "origins date back to at least 1839, and it took on its current form in 1948." *Gabelli*, 568 U.S. at 445. For more than a century, § 2462's predecessors simply provided that "[n]o suit or prosecution for any penalty or forfeiture, pecuniary or otherwise, accruing under the laws of the United States, shall be maintained" unless it is brought within five years "from the time when the penalty accrued." *3M Co. (Minnesota Min. & Mfg.) v. Browner*, 17 F.3d 1453, 1458 (D.C. Cir. 1994). This history is of particular relevance here for the reasons explained in *3M*:

> The Reviser's Notes on the rewriting of § 2462's predecessor report: "Changes were made in phraseology." H. R .Rep. No. 308, 80th Cong., 1st Sess. A191 (1947).
>
> A long line of Supreme Court decisions compels the conclusion that the rewording did not render the new statute different in substance from the old. When the Reviser's Notes describe the alterations as changes in phraseology, the well-established canon of construction is that the revised statute means only what it meant before 1948.

*Id.* Irrespective of whether *3M*'s analysis of the drafting history is binding on us, the Court independently finds this analysis correctly states the law.[11] The Supreme Court has repeatedly

---

[11] *3M*'s "discuss[ion] of the drafting history of § 2462" has been cited with approval by the Ninth Circuit.

noted that it "does not presume that the 1948 revision worked a change in the underlying substantive law unless an intent to make such a change is clearly expressed." *See, e.g.*, *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 136 (2008) (internal quotation marks omitted). The Supreme Court has consistently looked to the Reviser's Notes for guidance. *See, e.g.*, *Wingo v. Wedding*, 418 U.S. 461, 469 n.9 (1974) ("Had any substantive change in the meaning . . . been intended, the Revisers' Notes would have called attention to the change."). It is well-settled what a Reviser's Note describing a change as one in phraseology signifies. As "William W. Barron, the Chief Reviser of the Code, explained . . . . '[m]ere changes of phraseology indicate no intent to work a change of meaning but merely an effort to state in clear and simpler terms the original meaning of the statute revised.'" *Id.* (quoting William W. Barron, *The Judicial Code*, 8 F.R.D. 439, 446 (1949)).

*3M* applied these principles in determining whether an "administrative proceeding under § 16(a)(2) of [the Toxic Substances Control Act ("TSCA")] is an 'action, suit or proceeding'" within the meaning of 28 U.S.C. § 2462. *3M*, 17 F.3d at 1457. The proceeding at issue in *3M* was the assessment of a civil penalty after a hearing presided over by an administrative law judge. *See id.* at 1455. As in the case of Option 1 under the FPA, § 16(b) of TSCA expressly incorporated the Administrative Procedure Act, 5 U.S.C. § 554, "which generally governs agency adjudications of civil penalties." *Id.* at 1456. The D.C. Circuit held that a TSCA proceeding was a "proceeding" within the meaning of § 2462 because it was tantamount to a "prosecution." *Id.* at 1455–57. Because the parties have advanced markedly different takes on *3M*'s holding, it will be helpful to provide *3M*'s explanation of its conclusion on this point, which is as follows:

> Civil penalty proceedings under TSCA emulate judicial proceedings: a complaint is brought, the defendant answers, motions and affidavits are filed, depositions are taken, other discovery pursued, a hearing is held, evidence is introduced, findings are rendered and an order assessing a civil penalty is issued. When that sequence of events takes place in a court, we have no trouble calling it a "prosecution," although the modern trend is to reserve the description for criminal cases. When the

---

*Fed. Election Comm'n v. Williams*, 104 F.3d 237, 240 (9th Cir. 1996). Moreover, the Ninth Circuit recently employed similar analysis in the case of textual alterations resulting from the 1948 revision of the Judicial Code where the Reviser's Note made clear the change was not intended to be substantive. *In re Application for Exemption from Elec. Pub. Access Fees by Jennifer Gollan & Shane Shifflett*, 728 F.3d 1033, 1038–39 (9th Cir. 2013).

same sequence of events plays out before an administrative agency, it too may be — and has been — designated a "prosecution."

*Id*. at 1456–57 (internal citations omitted).

> ii.     When a "proceeding" within the meaning of § 2462 commenced

The Court will now address FERC's first reason offered for tolling — FERC's contention a "proceeding" within the meaning of § 2462 commenced prior to filing of the instant action in this Court. There are two analytically distinct ways one could argue in support of this contention. The first way is to argue what preceded the filing of the instant action is itself a "proceeding" within the meaning of § 2462. The second way applies if what preceded the filing of the instant action *was not itself a "proceeding"* within the meaning of § 2462. This second way contends that the *instant action* — which is indisputably "an action, suit or proceeding" in the relevant sense — *"commenced" before it was filed* in this Court, i.e., with the issuance of the OSC.

The opposition seems to be taking the first approach. (*E.g.*, ECF No. 220 at 16–17 ("The Commission conducted a proceeding pursuant to FPA Section 31 in which it assessed a penalty by order after providing 'notice of the proposed penalty' as the statute requires.").) FERC confirmed this at the motion hearing. Mr. Heath, one of FERC's counsel, explained FERC's position as follows:

> . . . I think I understand the Court's question . . . . I think the position is that -- when the commission acts via order, which the statute, as Ms. Mechling was saying, does require, it requires a statutory notice of penalty, and a statutory election, *that is, itself, a proceeding*. And whether it's this -- what's happening in this court is a continuation of that proceeding or a separate proceeding, *there was, under the statute, a proceeding at the commission*. . . .
>
> . . . Section 31 does lay out the formal process which the commission must follow and act by order, *I think it's assumed within that . . . is a proceeding*. It may not be a court proceeding or a trial proceeding as in option one, *but it is a proceeding nonetheless that results in an order* . . . .
>
> Now, . . . we're talking about the order to show cause, but the notice of penalty is statutory. And just by commission practice over the years it has combined those two things into one, the notice of penalty and the order to show cause. But I think *it's unquestioned that the notice of penalty, the election and the order is statutory, and that constitutes a proceeding*.

(ECF No. 228 at 15:14–22, 16:1–13 (emphasis added).) This is consistent with the explanation

first provided by another of FERC's counsel, Ms. Mechling, describing what she referred to as the "administrative penalty assessment process." (ECF No. 228 at 14:23–28.) As Ms. Mechling explained it,

> The proceeding that FERC did provide to the defendant through the administrative penalty assessment process is a proceeding . . . that starts with a notice of proposed penalty, as provided for by the FPA, then moves on to an election, also provided for by the FPA, and culminates in an order assessing civil penalties."

(ECF No. 228 at 14:23–15:4.)

In short, FERC's position, as clarified in the motion hearing, is that the FPA provides for a proceeding in advance of the provided-for action in federal district court for persons electing Option 2. As FERC has done, the Court will refer to that as the "Administrative Penalty Assessment Process." The question is whether the Administrative Penalty Assessment Process constitutes a "proceeding" within the meaning of § 2462. [12] The Court will now address FERC's principal arguments on this point.

### a.  The meaning of "proceeding" as used in § 2462

FERC's arguments in support of its position that the Administrative Penalty Assessment Process is a "proceeding" in the relevant sense are as follows: First, "the procedures under which an agency 'seek[s] to impose civil penalties' are 'proceedings for the enforcement of penalties' under Section 2462." (ECF No. 220 at 18–19 (citing *3M*, 17 F.3d at 1458–59).) Second, Section

---

[12]    The Court does not understand FERC to be arguing that if this Court finds the Administrative Penalty Assessment Process, as provided for in the text of the FPA, does not constitute a "proceeding" within the meaning of § 2462 that FERC can transform the Administrative Penalty Assessment Process into a "proceeding" within the meaning of § 2462 by labelling it as such. Such an argument would require the conclusion that FERC may rewrite the Federal Rules of Civil Procedure regarding when the instant action commences. This it cannot do.

As discussed earlier, the Federal Rules govern the instant action. "Rule 3 . . . tells us when the action 'commences' for purposes of the statute of limitations." *Sain v. City of Bend*, 309 F.3d 1134, 1136, 1138 (9th Cir. 2002); *see also* 1 *Moore's Federal Practice*, § 3.05[1] (3d ed. 2011) ("In a federal action, if the relevant federal statute is silent regarding the tolling of the limitations period, Rule 3 is applicable.") The action is commenced when the action is filed. *Sain*, 309 F.3d at 1136, 1138. "This rule governs the commencement of all actions, including those brought by or against the United States or an officer or agency thereof . . . ." Fed. R. Civ. P. 3, Advisory Committee Note 2 to it 1937 Adoption.

Unless Congress otherwise provides, this Court may only refuse to apply one of the Federal Rules of Civil Procedure if that Rule "transgresses the terms of the Rules Enabling Act or the Constitution." *United States v. Orr Water Ditch Co.*, 391 F.3d 1077, 1082 (9th Cir. 2004) (quoting *Hanna v. Plumer*, 380 U.S. 460, 471 (1965)). As discussed in more detail *infra* in Section III.B.i.a of this Order, Congress has not otherwise provided. Even where an agency administers the statute at issue, where Congress has clearly spoken, the agency may not override Congress to better achieve "bureaucratic policy goals". *Util. Air Regulatory Grp. v. E.P.A.*, 134 S. Ct. 2427, 2445 (2014). This applies with more force here as FERC does not administer § 2462. *DLS Precision Fab LLC*, 867 F.3d at 1087 n.1.

17

2462 "does not require an 'adversarial' proceeding." (ECF No. 220 at 16.) Third, if an adversarial proceeding is required, the Court held in its May 22, 2015 Order that the Administrative Penalty Assessment Process was sufficiently adversarial. (ECF No. 220 at 17–19.) Fourth, nothing in this Court's March 30, 2017 Order "undo[es]" this holding, undercuts its reasoning, or is otherwise inconsistent with the conclusion reached on this point in the May 22, 2015 Order. (ECF No. 220 at 17–19.) The Court disagrees with FERC on each of the first three arguments. Consequently, the Court disagrees with the premise of FERC's fourth argument and will not address it on its own terms.

With respect to the first point, FERC's reliance on *3M* is misplaced. The D.C. Circuit made no such grand pronouncement — that any procedure or process whatsoever employed by an agency in connection with the imposition of a penalty is a "proceeding" within the meaning of § 2462. The entire thrust of *3M*'s analysis is to the contrary. As observed above, the D.C. Circuit only concluded the particular proceeding at issue there was a "proceeding" within the meaning of § 2462 because it was tantamount to a "prosecution." *3M*, 17 F.3d at 1456–57. More than that, as previously stated, the Court agrees with *3M*'s analysis of the drafting history. Consequently, the Court reaches the same conclusion with respect to the meaning of "proceeding" as it is used in § 2462.

With this the Court turns to FERC's second argument — that a "proceeding" within the meaning § 2462 need not be "adversarial." (ECF No. 220 at 16.) This cannot withstand close scrutiny. Tellingly, FERC neither cites authority nor offers legal analysis in support of this contention. The *3M* panel cited with approval the Second Circuit's statement that the "terms . . . 'action[s], suit[s] or proceeding[s]' [used in § 2462] implicate some adversarial adjudication, be it administrative or judicial." *3M*, 17 F.3d at 1459 n.11 (discussing *United States v. Capozzi*, 980 F.2d 872, 874 (2d Cir. 1992)). The Court agrees that statement is correct. It should come as no surprise that a "proceeding" within the meaning of § 2462 must involve an "adversarial adjudication" to be tantamount to a "prosecution." The very hallmark of our system of prosecution of criminal and civil offenses is that there must be an adversarial adjudication before a neutral decision-maker. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980); *United States v.*

*Thompson*, 827 F.2d 1254, 1258 (9th Cir. 1987).  As the Ninth Circuit explained in the context of a federal criminal prosecution,

> "The right of a criminal defendant to an adversary proceeding is fundamental to our system of justice. . . .  Our system is grounded on the notion that truth will most likely be served if the decisionmaker — judge or jury — has the benefit of forceful argument by both sides.  Inquisitorial proceedings, where the judge takes an active role in ferreting out the truth, may be the rule elsewhere in the world, but they are decidedly alien to our way of thinking."

*Thompson*, 827 F.2d at 1258 (internal citations omitted).  Likewise, the Supreme Court highlighted the centrality of having a neutral adjudicator in prosecutions, including an administrative prosecution seeking civil penalties:

> The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases.  This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process . . . .  The requirement of neutrality has been jealously guarded by this Court.

*Marshall*, 446 U.S. at 242 (internal citations omitted).

FERC's third argument warrants little discussion.  The partial sentence FERC repeatedly quotes in isolation from the May 22, 2015 Order plainly is not the sweeping holding that FERC suggests.  (*See* ECF No. 220 at 6, 9, 17.)  This is made clear when the full sentence is read, along with the immediately preceding sentence.  They read as follows:  "Defendants provide no response to these specific assertions [made by FERC in a footnote of its opposition regarding the quality of its process].  *Accordingly*, this Court does not find that the administrative process 'lacked the basic elements common to adversarial adjudication,' as Defendants argue."  (ECF No. 88 at 14 (emphasis added).)  The Court is not "required to address perfunctory and undeveloped arguments."  *Williams v. Eastside Lumberyard & Supply Co.*, 190 F. Supp. 2d 1104, 1114 (S.D. Ill. 2001).  In declining to do so in the May 22, 2015 Order, the Court made no grand pronouncement.  This should have been clear enough by the use of "accordingly," i.e., in the circumstances.  The Court now returns to the question at hand: whether the Administrative

19

Penalty Assessment Process constitutes a "proceeding" within the meaning of § 2462.

> b. <u>The Administrative Penalty Assessment Process is tantamount to a decision to prosecute rather than a "prosecution"</u>

"There is no escaping the fact that under Option 2 FERC must first determine at the agency level whether to assess the penalty." *City Power Mktg., LLC*, 199 F. Supp. 3d at 232. The question is what the nature of that determination was and FERC's role in making that assessment.

The Supreme Court has provided guidance on precisely this question in *Marshall*. There, the petitioner had been assessed civil penalties for child labor violations by an assistant regional administrator of the Employment Standards Administration ("ESA"). *Marshall*, 446 U.S. at 240. The ESA was the agency the Secretary of Labor had designated as responsible for enforcing the relevant child labor provisions. *Id*. The petitioner challenged the "constitutionality . . . [of] the civil penalty section" of the Fair Labor Standards Act. *Id*. at 245. The petitioner contended this section "violated the Due Process Clause of the Fifth Amendment by providing that civil penalties must be returned to the ESA as reimbursement for enforcement expenses and by allowing the ESA to allocate such fines to its various regional offices." *Id*. at 241. The petitioner argued "this provision created an impermissible risk and appearance of bias by encouraging the assistant regional administrator to make unduly numerous and large assessments of civil penalties." *Id*.

As quoted earlier in this Order, the Supreme Court acknowledged that it "jealously guarded" the Due Process right to an "impartial and disinterested tribunal in both civil and criminal cases." *Id*. at 242. However, the Supreme Court explained that the "rigid . . . requirements designed for officials performing judicial or quasi-judicial functions, are not applicable to those acting in a prosecutorial or plaintiff-like capacity." *Id*. at 248. To explain this conclusion, the Supreme Court analyzed the provision at issue in detail. "Under this provision for the assessment of civil penalties, the Secretary's determination of the existence of a violation and of the amount of the penalty is not final if the person charged with a violation enters an exception

within 15 days of receiving notice." *Id*. at 244. "In the event that such an exception is entered, the final determination is made in an administrative hearing conducted in accordance with the Administrative Procedure Act, 5 U.S.C. § 554." *Id*. This hearing was conducted by an administrative law judge who was "required to conduct a *de novo* review of all factual and legal issues." *Id*. at 244–45. That administrative law judge was able to "affirm, in whole or in part, the determination . . . of the occurrence of violations or . . . may find that no violations occurred, and shall order payment of a penalty in the amount originally assessed or in a lesser amount . . . or order that respondent pay no penalty, as appropriate." *Id*. at 244.

The Supreme Court explained "[t]he function of assessing a violation [in such a framework] is akin to that of a prosecutor or civil plaintiff." *Id*. at 247. The Supreme Court specifically noted that if the penalized person "excepts to a penalty — as he has a statutory right to do — he is entitled to a *de novo* hearing before an administrative law judge" and in the resulting "hearing the assistant regional administrator acts as the complaining party and bears the burden of proof on contested issues." *Id*.

At its essence, the provision at issue in *Marshall* is materially indistinguishable from Option 2. That the adjudicator conducting *de novo* review is an administrative law judge rather than a district court judge is a distinction without a difference. FERC's determination embodied in the Assessment Order was a decision to prosecute. It was not itself a prosecution.

This conclusion is entirely consistent with this Court's analysis in the March 30, 2017 Order, if not compelled by it. There, the Court explained that, "according to the statute, FERC's determination that Defendants violated the law is simply a mechanism for getting the case into district court." (ECF No. 203 at 26.) "There is nothing in the statute that requires that this determination be based upon a neutral adjudicative decision-making process." (ECF No. 203 at 26.) Rather, what FERC was tasked with doing was "decid[ing] whether to civilly prosecute Defendants." (ECF No. 203 at 25.)

The conclusions the March 30, 2017 Order reached were in response to arguments pressed by FERC, in particular, its contention that the action in this Court should be limited to reviewing what FERC liked to call "the administrative record." (*Cf*. ECF No. 203 at 15–16 (noting neither

21

"the applicable statute" nor "FERC's regulations, and its policy statements" make "mention of an 'administrative record'" and that FERC had "offered no explanation for why the one it claims to have compiled is a proper administrative record".) The Court explained that this argument "fail[ed] to acknowledge the *fundamentally different* position FERC was in when it was called upon to *decide whether to civilly prosecute* Defendants, and the position this Court is in, as *neutral decision-maker* of the conflict between FERC and Defendants." (ECF No. 203 at 25 (emphasis added).) A litigant's failure to acknowledge the substance of this Court's prior orders does not ordinarily require this Court to repeat those orders. However, the following bears repeating:

> FERC has identified nothing in any statute, regulation or policy statement that requires FERC to act as a neutral decision-maker when it was deciding whether to prosecute Defendants. Thus, as far as the Court can tell, FERC is not required to find by a preponderance of the evidence (or by any other standard) that the evidence warrants filing suit. To the contrary, FERC is charged by statute with *enforcing* and administering the law, not offering a neutral interpretation of it, or dispassionately hearing Defendants' arguments that they should not be sued. Accordingly, there is nothing prohibiting FERC from deciding to prosecute based entirely on evidence presented by its Enforcement staff, ex parte presentations made to it by Enforcement staff urging it to file suit, and even its own desire to "push the envelope" or to make new law on what constitutes market manipulation in the energy markets. In fact, according to the statute, FERC's determination that Defendants violated the law is simply a mechanism for getting the case into district court. There is nothing in the statute that requires that this determination be based upon a neutral adjudicative decision-making process.

(ECF No. 203 at 25–26 (emphasis retained) (footnote omitted).) This description of FERC's role and analysis supporting it are entirely consistent with *Marshall*. Nothing FERC has offered in its opposition to the instant motion calls any of the above-quoted portion of the March 30, 2017 Order into question.[13]

---

[13] This includes FERC's citation to *Fed. Energy Regulatory Comm'n v. Silkman* ("*Silkman I*"), 177 F. Supp. 3d 683, 700 (D. Mass. 2016). The *Silkman I* court found the Administrative Penalty Assessment Process did constitute a "proceeding" within the meaning of § 2462. In doing so, the *Silkman I* court stated that "FERC did more than decide to bring suit. It conducted an adjudication." *Silkman I*, 177 F. Supp. 3d at 700.

A lengthy discussion of *Silkman I* is not required to resolve this motion. As an initial matter, the Court does not find *Silkman I*'s analysis in support of the above-quoted statement persuasive. *See id.* Incidentally, after *Silkman I*, the case was transferred to the District of Maine. The *Silkman II* court (quoted *supra* in Section III.B.i.a of this Order), had a less rosy view of the same Administrative Penalty Assessment Process. *See Silkman II*, 233 F. Supp. 3d at 226 ("[T]he Court shares the Respondents' concerns that the Commission's procedures deprived the

Consequently, for the foregoing reasons, the Court holds that the Administrative Penalty Assessment Process does not constitute a "proceeding" within the meaning of § 2462.

### c. Whether providing Defendant Smith notice in the form of the OSC was sufficient to toll the statute of limitations

The Court now turns to FERC's suggestion that tolling might somehow be appropriate in Defendant Smith's case because the OSC "provided [him] with detailed notice of this case's allegations." (ECF No. 220 at 19.) In doing so, the Court is guided by the Supreme Court's recent statement in *Gabelli*, where it repeated what it "held long ago" — "the cases in which 'a statute of limitation may be suspended by causes not mentioned in the statute itself . . . are very limited in character, and are to be admitted with great caution; otherwise the court would make the law instead of administering it.'" *Gabelli*, 568 U.S. at 454. FERC's suggestion is directly contrary to the Supreme Court's admonition.

The reasons for this are particularly acute in this instance for reasons FERC — at least institutionally — must know all too well. FERC also has civil penalty authority under section 504(b)(6) of the Natural Gas Policy Act of 1978 ("NGPA"), 15 U.S.C. § 3414(b)(6). *See* Statement of Administrative Policy Regarding the Process for Assessing Civil Penalties, 117 FERC ¶ 61317, 62535 (2006). The process for assessing penalties under the NGPA is "similar to, but not the same as, the FPA process." *Id.* By way of similarities, both require FERC to provide the person with "notice of the proposed penalty" before FERC can assess the penalty. 15 U.S.C. § 3414(b)(6)(E); 16 U.S.C. § 823b(d)(1). Additionally, § 3414(b)(6) provides for judicial review in federal district court tracking § 823b(d)(3)(B) verbatim, except in ways that are not relevant here.[14]

---

Respondents of an adequate opportunity to present their case and defend against Enforcement's accusations"). Most importantly, *Silkman I* reached its conclusion without discussing *3M* or *Marshall*.

[14]    15 U.S.C. § 3414(b)(6) provides as follows:

> If the civil penalty has not been paid within 60 calendar days after the assessment order has been made under subparagraph (E), the Commission shall institute an action in the appropriate district court of the United States for an order affirming the assessment of the civil penalty. The court shall have authority to review de novo the law and the facts involved, and shall have jurisdiction to enter a judgment enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part, such assessment.

However, there are two differences worth mentioning here.  Where a person contests a penalty imposed on him, "[t]he NGPA does not provide for an on-the-record hearing before an" administrative law judge.  117 FERC at ¶ 62535.  That is, it does not provide an analog to Option 1.  The analog to Option 2 is the only option.  More importantly, the assessment paragraph of the NGPA contains its own statute of limitation.  The relevant part provides as follows: "[n]o person shall be subject to any civil penalty under this paragraph with respect to any violation occurring more than *3 years before the date on which such person is provided notice* of the proposed penalty under subparagraph (E)."  15 U.S.C. § 3414(b)(6)(D) (emphasis added).  It is worth noting that relevant language in the NGPA has been present since 1978.  Pub. L. 95-621, Title V, § 504, Nov. 9, 1978, 92 Stat. 3350, 3401.  Such language was not included when the FPA was amended in 1986 to add the enforcement section at issue in this case — Section 31, 16 U.S.C. § 823b.  Pub. L. 99-495, § 12, Oct. 15, 1986, 100 Stat. 1243, 1255.  Nor is it present now.

So, where Congress has provided for action in federal district court "review[ing] de novo the law and the facts involved" in connection with an agency's assessment of a civil penalty, Congress knows quite well how to provide that the statute of limitations tolls with the giving of statutorily required notice rather than the filing of the provided-for action.  However, this is not what Congress provided when it amended the FPA.  The Court has no more business finding that the FPA silently included the NGPA's tolling mechanism than the Court would have finding the FPA silently also included the NGPA's three-year limitation period.

**IV.  CONCLUSION**

For the reasons set forth above, Defendant Smith's Motion for Judgment on the Pleadings (ECF No. 212) is GRANTED.  Accordingly, IT IS HEREBY ORDERED that judgment is entered in favor of Defendant Smith and he is dismissed from this action.

IT IS SO ORDERED.

Dated: September 29, 2017

Troy L. Nunley
United States District Judge

24